**EXHIBIT 3**

JEFF FINE
Clerk of the Superior Court
By Ashley Hatch, Deputy
Date 04/12/2019 Time 14:50:03
| Description | Amount |
| --- | --- |
| ———— CASE# CV2019-006490 ———— | |
| CIVIL NEW COMPLAINT | 333.00 |
| TOTAL AMOUNT | 333.00 |
| Receipt# 27157048 | |

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Kraig J. Marton, #003816
KJM@jaburgwik.com

Jeffrey A. Silence, #029143
JXS@jaburgwik.com

Attorneys for Plaintiff

**SUPERIOR COURT OF ARIZONA**

**IN MARICOPA COUNTY**

| | |
| --- | --- |
| Christina M. Madsen, an individual, | Case No. CV 2019-006490 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| City of Phoenix, a municipal corporation and a governmental entity; Deborah Ostreicher, as an individual and in her official capacity; and Michael Graci, as an individual and in his official capacity, | |
| Defendants. | |

Plaintiff Christina M. Madsen ("Madsen") alleges:

**PARTIES AND JURISDICTION**

1.    Madsen is currently a citizen and resident of the State of North Carolina, but was at all relevant times was a citizen and resident of Maricopa County, Arizona.

2.    Defendant City of Phoenix (the "City") is a municipal corporation and a governmental entity of the State of Arizona. The City owns and operates the Phoenix Sky Harbor International, Goodyear and Deer Valley Airports (the "Airport").

20271-20271-00001\DNF\DNF\3445093.2

1    3.   Madsen is the former Deputy Director for Aviation Business and Properties
2  working for the City-owned Airport (the "Aviation Deputy Director").

3    4.   Defendant Deborah Ostreicher, as an individual and in her official capacity
4  acting on behalf of the City ("Ostreicher") is a citizen and resident of Maricopa County,
5  Arizona, who, at all relevant times, was the Assistant Aviation Director of the Airport
6  (the "Assistant Aviation Director").

7    5.   Defendant Michael Graci, as an individual and in his official capacity acting
8  on behalf of the City ("Graci") is a citizen and resident of Maricopa County, Arizona,
9  who, at all relevant times, was the Aviation Superintendent for Airline Affairs and Real
10 Estate of the Airport.

11    6.   All acts of the individual Defendants as alleged in this Complaint were
12 performed on some occasions as outside the scope of each's employment and on each
13 defendants' own behalf, and on other occasions were performed on behalf of the City
14 and in the course and scope of each's employment.

15    7.   Subject matter jurisdiction and venue are proper in this Court.

16                      **GENERAL ALLEGATIONS**

17    8.   Before she was forced to leave in January 2019, Madsen had been the
18 Deputy Director for Aviation Business and Properties working for the City at the
19 Airport for nearly three years, since January 4, 2016.

20    9.   During that time, Madsen excelled in every aspect of her work.

21    10.  Madsen was a model executive employee who consistently received high
22 marks and commendations for her work.

23    11.  Nevertheless, Madsen was disliked, obstructed and even harassed by her
24 superior, Defendant Ostreicher, the Airport's Assistant Aviation Director.

25    12.  Defendant Graci was hired by the City to work as Aviation Superintendent
26 for Airline Affairs and Real Estate on July 17, 2017.

2

1    13.  Madsen was appointed as Graci's direct supervisor.

2    14.  Upon information and belief, Ostreicher and Graci were good friends.

3    15.  Graci touted his acquaintance and friendship with Ostreicher to Madsen,
4    saying he had "a lot of friends" at the Airport, including Phoenix Aviation Advisory
5    Board member Pete Gorriaz, almost immediately after his first day on the job.

6    16.  Within a few months of Graci's first day on the job, it became apparent to
7    Madsen and others in the chain of command that his work performance was deficient,
8    untimely and of poor quality.

9    17.  There were well-documented, multiple times Graci was talked to, warned
10   about and reprimanded for his deficient performance and corrections of his work
11   product from nearly the day he was hired to June 7, 2018, the day he was terminated.

12   18.  The City was at all relevant times well aware of Graci's retaliatory claims
13   he made against the City and Madsen, including sex and sexual harassment and hostile
14   working environment claims.

15   19.  Graci made these retaliatory claims as a final "parting shot" at Madsen just
16   before he was terminated, as further set forth below.

17   20.  The City was at all relevant times also well aware of the circumstances and
18   facts that fueled Graci's retaliatory claims against the City and Madsen well before the
19   time he made them.

20   21.  This Complaint has been filed against Ostreicher, Madsen's superior, in part
21   because of the multiple incidents and actions Ostreicher took to obstruct and interfere
22   with her employment and apparent willingness to assist and protect Graci and the City's
23   decision, through Ostreicher, to ignore and fail to take any action to address or resolve
24   the formal complaints Madsen had previously made against Graci, including for sex
25   harassment, insubordination and the hostile work environment both he and Ostreicher
26   perpetuated.

3

1    22.   Ostreicher's interference and obstructive actions taken against Madsen or
2  with regard to the performance of her work and her supervision of Graci include, but are
3  not limited to the following events:

4          A.   During the course of Madsen's supervision of Graci, Graci targeted her
5  for a series of inappropriate, insubordinate and express or implied sexist remarks.

6          (1)   For example, on or about December 5, 2017, Madsen complained
7  informally and made two written reported complaints of Graci's conduct to the City's
8  HR Department and other executive employees in February and March 2018.

9          (a)   Despite having received her complaints, the City never took
10  any action against Graci or, to Madsen's knowledge, never conducted or even began an
11  appropriate or meaningful investigation of either of her reported complaints.

12          (b)   Upon information and belief, Ostreicher acted individually
13  and in her official capacity as Madsen's superior to "bury" these reported complaints
14  against Graci.

15          B.   Ostreicher protected and treated Graci differently and with deference in
16  all matters that pertained to him.

17          (1)   For another example, Graci was terminated on or about June 7,
18  2018, while he was on probationary status.

19          (a)   The termination process, however, was in process while he
20  was on probationary status until Ostreicher sabotaged the City's progressive discipline
21  process in order to allow him to make that claim as one of many against the City that he
22  would not have had absent the policy violation.

23          C.   On the day that Graci was terminated, Ostreicher did the following:

24          (1)   Ostreicher went to the City's HR offices and inappropriately, and
25  without any prior notice to Madsen, Graci's initial supervisor, demanded to know why

26
                                        4

1  she had not been consulted to approve the paperwork for his termination, thus in this
2  situation and others, undermining Madsen's authority in the matter.

3  (2)  Ostriecher took steps to make sure she had undermined Madsen's
4  authority by making demand in a loud voice to HR Manager Janice Pitts in an open area
5  where she could be sure many others would hear her.

6  (3)  Ostriecher made further false and defamatory comments to Ms.
7  Pitts to the effect that Madsen had not handled Graci's termination appropriately.

8  D.  Several days after Graci's termination, Ostreicher did the following:

9  (1)  Upon information and belief, Ostriecher made comments to
10  Madsen's direct supervisor, Charlene Reynolds, that, or with words to the effect that,
11  "this is not over," referring to Graci's termination.

12  (a)  Ostreicher's words were a threat aimed at Madsen.

13  (2)  Ostreicher sabotaged and interfered with the normal Airport chain
14  of command for the coordination of air service coordination projects and eliminated
15  conferring directly with Madsen about questions for board and council briefings.

16  (a)  For example, but without limitation, Ostreicher would often
17  coordinate multiple projects directly with Madsen, but, after Graci made his complaint
18  against the City and Madsen in early May 2018, she stopped that practice and retaliated
19  against Madsen by eliminating and going around her when making key decisions that
20  required her input.

21  (3)  Ostreicher further sabotaged, interfered with and retaliated against
22  Madsen in the performance of her duties to supervise and oversee all Air Service
23  Development Coordination.

24  (a)  For example, Ostreicher instructed Madsen's staff to only
25  talk to Tyler Maheu and, by necessary implication, to not talk to Madsen regarding Air
26  Service Development.

5

JABURG|WILK
Attorneys at Law

1        (4)    Ostreicher further sabotaged, interfered with and retaliated against
2    Madsen in the performance of her duties to supervise and oversee issues relating to
3    Planning and Environmental coordination.

4        (a)    Specifically, but without limitation, Jordan Feld, who was a
5    direct report to Ostreicher and a peer to Madsen, began giving directions to Madsen's
6    managers without her involvement.

7        (b)    Mr. Feld thereafter also became increasingly condescending
8    to Madsen.

9        (5)    Ostreicher further sabotaged, interfered with and retaliated against
10    Madsen in the performance of her duties to participate in and contribute to Board and
11    City Council briefings on Business and Properties Transactions.

12        (a)    Specifically, but without limitation, Ostreicher making calls
13    and sending text messages to Madsen had been a common and frequent occurrence.
14    Those frequent communications significantly diminished beginning in late February
15    2018, almost immediately after Madsen had begun to discipline Graci.

16        (6)    On October 19, 2018, in an Aviation Director staff meeting,
17    Ostreicher led the meeting.  During that meeting, Janice Pitts, HR Manager, said that
18    Victoria Torrihilon, Legal HR, was moving to a different legal section.

19        (a) At that moment, Ostreicher looked at Madsen and told
20    everyone in attendance that, or with words to the effect that, "Victoria needed a break
21    from HR issues."

22        (b) Ostreicher's words, as she smiled and chuckled, implied that
23    Madsen was the reason why Victoria needed a break.

24        23.  Graci's bullying, intimidation, sex discrimination and sexual harassment
25    that were directed at Madsen and/or created a hostile work environment include, but are
26    not limited to the following events:

6

JABURG|WILK
Attorneys at Law

1        A. On or about February 5, 2018, Beth Benton, the Airline Station
2 Manager for Spirit Airlines, an important Airport tenant, called Ostreicher to complain
3 about Graci rude and sexist treatment of her.

4        (1) Ostreicher referred the matter to Madsen and Tyler Maheu to
5 handle.

6        (2) When confronted, Graci told Madsen that he wanted to call Ms.
7 Benton and asked her (Madsen) to stay out of it.

8        (3) Madsen declined Graci's request and called Ms. Benton herself on
9 February 6, 2018.

10        (4) Ms. Benton complained that Graci had been condescending and
11 rude to her, had called her a liar, and had asked her to "do favors" for the other airlines.
12 She said she did not want to work with him anymore.

13        (5) Madsen conveyed her conversation with Ms. Benton to Graci.

14        (6) Graci denied what Ms. Benton had said about him and was upset
15 and loud.

16        (7) Graci called Ms. Benton a "bitch," a sexually derogatory insult.

17        (8) Madsen felt threatened and intimidated and was offended by his
18 words and behavior, and she told him so.

19        (9) Madsen reasonably viewed his words and behavior as harassing
20 and chauvinistic based on her gender with unwelcomed sexual overtones.

21        (10) Madsen reported the incident with Graci to Airport HR, but, to
22 her knowledge, HR did absolutely nothing about her complaint.

23        B. Graci's behavior toward Ms. Benton did not get any better as of May
24 7, 2018, when Ms. Benton again wrote to Madsen to again complain about it.

25        (1) Madsen referred the matter to HR, and, once again, to Madsen's
26 knowledge, HR did absolutely nothing about her complaint.

7

JABURG|WILK
Attorneys at Law

1            C.    On or about March 22, 2018, Madsen witnessed an incident in which
2 Graci made a rude and undeserved comment to Christy Gomez about changing meeting
3 rooms.

4                 (1)   Graci inexplicably was furious and yelled at Ms. Gomez in front
5 of Madsen and other Airport management and staff members.

6                 (2)   Madsen met with Graci in order to convey her conversation with
7 Ms. Gomez.

8                 (3)   Graci was rude to Madsen in that conversation.

9                 (4)   In that conversation, Madsen asked Graci about his relationship
10 with Ms. Fusco.

11                 (5)   Graci became angry and yelled at Madsen with words to the effect
12 that: "I knew you were going to do this! Nothing is going on and it is none of your
13 business what I do outside of work ... *none of your f***ing business!*"

14                 (6)   Graci also threatened Madsen, accusing her of using him as a
15 "recruiting tool and now I'm not as good as you!" or words to the effect.

16                 (7)   Graci screamed at Madsen with words to the effect that: "I'm
17 going to HR right now!" and stormed out of her office.

18                 (8)   Madsen felt threatened and intimidated and was offended by
19 Graci's words and afraid of his behavior, which she considered to be harassing and
20 chauvinistic based on her gender with unwelcomed sexual overtones.

21                 (9)   Madsen reported the incident to Airport HR, but, again, to her
22 knowledge, HR did absolutely nothing about her complaint.

23            D.    On or about March 27, 2018, Madsen met with Graci to continue
24 their discussion about his treatment of Christy Gomez.

25

26
8

JABURG|WILK
Attorneys at Law

1            (1) In that meeting, Graci accused Madsen of "protecting Christy,"
2  saying that, or with words to the effect that, he was "done with Christy" and that
3  Madsen was "threatening him."

4            (2) Graci also threatened Madsen with words to the effect that he had
5  "a lot of friends here" and, unbelievably, said Madsen was treating Ms. Gomez
6  differently because she was female.

7            (3) In this confrontation, when Madsen asked Graci about his long-
8  standing uncompleted projects, he snapped back at her that, or with words to the effect
9  that, "I owe you nothing!"

10            (4) Graci also accused Madsen with a condescending grin and
11  words to the effect that the incident between him and Ms. Gomez had occurred, "and
12  yet, [she] did nothing about it."

13            (5) Madsen told Graci she wanted to meet with him and Airport HR
14  about his behavior and threats.

15            (6) Graci told her that, or with words to the effect that, she was to
16  "come prepared, as I will be protecting myself."

17        E. On or about March 29, 2018, Madsen was so alarmed that she went
18  to Janice Pitts, the Airport HR Manager, to make a more formal discrimination and
19  harassment complaint against Graci.

20            (1) Madsen told Ms. Pitts she felt "uncomfortable" and "unsafe"
21  around Graci, that he was intimidating and threatening, that he created a hostile work
22  environment for her and other female staff and customers, and that she was concerned
23  about being alone with him.

24            (2) Madsen asked Ms. Pitts for an HR representative to accompany
25  her when she presented a long in-the-works PMG to him, but Pitts told her that, or with
26  words to the effect that, "HR doesn't do that."

9

JABURG|WILK
Attorneys at Law

1    (3)   Once again, to Madsen's knowledge, HR did absolutely nothing
2    about her complaint.

3            F.   On or about April 3, 2018, Madsen and Ms. Pitts met with Christy
4    Gomez and Graci to discuss the issues raised by Ms. Gomez about Graci's behavior
5    toward her.

6            (1)   Gomez repeated exactly what she had told Madsen.

7            (2)   Graci, on the other hand, did a complete 180 degree turn-around
8    of what he had told Madsen, now saying that Ms. Gomez was "very smart" and did a
9    "great job."

10           (3)   Graci continued his behavior and harassment against Madsen
11   by, as Ms. Pitts has acknowledged, lying about the incident and purposely making
12   Madsen and Ms. Gomez look foolish.

13           G.   On or about April 19, 2018, Tyler Maheu reported to Madsen that
14   Graci was complaining and bad mouthing her to him (Maheu) about her giving
15   directions to one of his (Graci's) staff members.

16           (1)   Maheu reported that Graci had screamed at him words, or
17   words to the effect that, "Why the fuck should I not go to Charlene Reynold's [Assistant
18   Aviation Director] office right now and complain about her?"

19           (2)   Madsen reported this incident to her supervisor, Ms. Reynolds,
20   that same day.

21           (3)   Ms. Reynolds directed Madsen to finalize the memo of
22   expectations for Graci and provide to her and HR for review.

23           (4)   Madsen completed the memo of expectation and provided a
24   copy to Ms. Reynolds and Ms. Pitts on or about April 30, 2018 for their review prior to
25   delivering to Graci.

26                                    10

JABURG|WILK
Attorneys at Law

JABURG|WILK
Attorneys at Law

1  (5)  On or about May 1, Ms. Pitts met with Ms. Ostreicher to review

2  the memo of expectations prior to delivery to Graci.

3  H.  On or about May 2, 2018, Graci went to Ms. Pitts to complain that

4  Madsen was sexually harassing him!

5  (1)  Graci told Ms. Pitts there was no issue with Christy Gomez and

6  that Madsen was bad mouthing Ms. Reynolds.

7  (2)  Graci's deception was all too transparent to Ms. Reynolds, as

8  she conveyed to Madsen at the time.

9  (3)  Ms. Reynolds informed Madsen she would remove Graci from

10  her (Madsen's) direct supervision to Tyler Maheu that day.

11  24.  After Graci submitted his May 2, 2018, complaint against her, Madsen

12  asked the City for a copy of his complaint because she wanted to make sure that HR

13  was adequately protecting her regarding her previous complaints.

14  25.  Ms. Reynolds told Madsen that she would provide a copy of the report

15  regarding Graci's complaint, but that she needed to check with HR first.

16  26.  The following day, Madsen asked for a copy of the report again and her

17  request was refused.

18  27.  Graci was eventually terminated for cause on June 7, 2018.

19  28.  Graci noticed claims against the City and Madsen on August 24, 2018,

20  including claims based on his sexual harassment claims against her.

21  29.  Graci's claims against Madsen are offensive (in both senses of that word),

22  discriminatory, retaliatory and without any possible merit.

23  30.  Nevertheless, Madsen has been wrongfully involved in Graci's threatened

24  lawsuit and, quite literally, has been shoved out the door by her employer due to the

25  City's repeated failure to act upon her repeated complaints about Graci's sex-based

26  words and behavior toward her and the hostile work environment and intolerable

11

1 working conditions she endured due to Graci and Ostreicher supporting him behind-the-
2 scenes and sabotaging her (Madsen's) efforts to supervise him.

**COUNT ONE**
**SEX DISCRIMINATION UNDER TITLE VII**
**(Against Defendant City of Phoenix)**

5    31.    Plaintiff alleges all prior allegations in this Complaint.

6    32.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Title
7 VII) provides that it unlawful for an employer to refuse to hire or otherwise discriminate
8 against an employee on the basis of sex. 42 U.S.C. § 2000e-2.

9    33.    The City was Madsen's "employer" as that term is defined by Title VII,
10 42 U.S.C. § 2000e(b).

11    34.    Under Title VII it is unlawful for an employer "to discharge any
12 individual, or otherwise to discriminate against any individual with respect to [her]
13 compensation, terms, conditions, or privileges of employment, because of such
14 individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

15    35.    Madsen belongs to a protected class (female) and has been subjected to
16 adverse employment actions in violation of Title VII, as alleged.

17    36.    The City discriminated against, and eventually constructively discharged,
18 Madsen because of her sex in various ways, including, without limitation:

19        A.    Through the words and actions of Graci, which the City failed to
20 abate or even investigate despite Madsen's repeated complaints about him.

21        B.    The City, through Ostreicher, expressly or by inaction or implication
22 approved of, condoned and/or perpetuated Graci's conduct and baseless claims against
23 Madsen.

24
25
26
                                            12

JABURG|WILK
Attorneys at Law

JABURG | WILK
Attorneys at Law

1    37.    The City discriminated against, and eventually constructively discharged,
2  Madsen by thus creating a hostile work environment, a Title VII claim that is actionable
3  in its own right.

4    38.    The City retaliated against Madsen for having complained about Graci
5  and Ostreicher's approval, condonation and perpetuation of his unlawful actions.

6    39.    The City knew, or should have known, about the unlawful discrimination,
7  the sexual harassment and the hostile work environment alleged, but, despite Madsen's
8  repeated complaints, failed and refused to take prompt and effective remedial action.

9    40.    The City is directly and/or vicariously liable for Graci's and Ostreicher's
10  acts and omissions alleged in this Complaint.

11    41.    As a direct and proximate result of the City's discriminatory acts and
12  omissions, Madsen has suffered damages that arise out of, without limitation, lost
13  wages, lost career and career advancement opportunities, attorney fees and costs of
14  defending herself from Graci's baseless claims made against her, and mental anguish,
15  emotional distress, pain and suffering, humiliation, harm to reputation, and loss of
16  enjoyment of life.

17    WHEREFORE, Plaintiff seeks judgment against Defendant the City as follows:

18        A.    Her damages in an amount to be proved at trial;

19        B.    An award of her attorney fees and costs; and

20        C.    Such other such relief as seems just and proper.

21                    **COUNT TWO**
    **SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983**
22                **(Against All Defendants)**

23    39.    Madsen incorporates by reference all above allegations as if fully set forth
24  herein.

25

26
                            13

1    40.    The City, by and through the conduct of Graci and Ostreicher, repeatedly
2  subjected Madsen to unlawful discrimination, harassment and retaliation, as well as a
3  hostile work environment, and failed and refused to act in response to her repeated
4  complaints about Graci's unabated words and actions in violation of the Fourteenth
5  Amendment of the United States Constitution.

6    41.    The City itself and Graci and Ostreicher as City employees, acted under
7  color of state law at all relevant times.

8    42.    As a direct and proximate result of Defendants' conduct, Madsen has been
9  damaged by being prevented from advancing her career and earning a higher salary than
10 she earns now upon mitigating her damages, has lost wages, benefits and prestige, and
11 has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to
12 her reputation and loss of enjoyment of life.

13    WHEREFORE, Madsen seeks judgment against Defendants the City and Ms.
14 Ostreicher, individually and in her official capacity, for the following relief:

15    A.    Entry of an Order granting appropriate injunctive relief, including,
16 without limitation:

17    . (1)    Ordering the City to expunge all negative references in
18 Madsen's personnel file or any other file or record that pertains to her performance of
19 her former employment with the City;

20    (2)    Ordering the City to give only favorable, or at a minimum
21 neutral, references regarding her performance of her former employment with the City
22 to any prospective employee of Madsen who asks;

23    (3)    Ordering the City to adopt meaningful and effective policies
24 against sex discrimination and harassment in the workplace that comply with the law;

25

26
                                              14

JABURG|WILK
Attorneys at Law

1    (4)    Ordering the City to meaningfully and effectively respond to
2    and investigate employee complaints about sex discrimination and harassment in the
3    workplace;

4    (5)    Ordering the City to provide meaningful and effective training
5    concerning sex discrimination and harassment in the workplace to all of its current and
6    prospective managers, supervisors and employees;

7    (6)    Enjoining the City and Ostreicher to cease and desist from
8    continuing to discriminate, harass or retaliate against Plaintiff or any other employee on
9    the basis of sex and from maintaining a hostile work environment;

10    B.    An award of her attorney fees and costs; and

11    C.    Such other such relief as seems just and proper.

## COUNT THREE
### SEX DISCRIMINATION IN VIOLATION OF A.R.S. A.R.S. § 41-1463(B)(1)
### (Against Defendant City of Phoenix)

14    43.    Madsen incorporates by reference all above allegations as if fully set forth
15    herein.

16    44.    The City, by and through the conduct of Graci and Ostreicher, repeatedly
17    subjected Madsen to unlawful discrimination, harassment and retaliation, as well as a
18    hostile work environment, and failed and refused to act in response to her repeated
19    complaints about Graci's unabated words and actions in violation of the Arizona Civil
20    Rights Act (the "ACRA").

21    45.    The ARCA provides in pertinent part:

22    B.    It is an unlawful employment practice for an employer:

23    1. To fail or refuse to hire or to discharge any
individual or otherwise to discriminate against any
24    individual with respect to the individual's
compensation, terms, conditions or privileges of
25    employment because of the individual's ... sex ....

26
15

JABURG|WILK
Attorneys at Law

1   A.R.S. § 41-1463(B)(1).

2      46.     The ACRA is modeled after, and is generally identical to and interpreted
3   and applied in conformity with, Title VII.

4      47.     As a direct and proximate result of Defendants' conduct, Madsen has been
5   damaged by being prevented from advancing her career and earning a higher salary than
6   she earns now upon mitigating her damages, has lost wages, benefits and prestige, and
7   has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to
8   her reputation and loss of enjoyment of life.

9      WHEREFORE, Madsen seeks judgment against Defendant City of Phoenix for
10   the following relief:

11      A.     Her damages in an amount to be proved at trial;

12      B.     An award of her attorney fees and costs; and

13      C.    Such other such relief as seems just and proper.

14                 **COUNT FOUR**
                **CONSTRUCTIVE DISCHARGE**
15              **(Against Defendant City of Phoenix)**

16      48.     Madsen incorporates by reference all above allegations as if fully set forth
17   herein.

18      49.     Due to the City's conduct alleged herein, Madsen was forced to work in a
19   hostile work environment because of, or perhaps despite, the discrimination, harassment
20   and retaliation, such that, because of such outrageous conduct and because the work-
21   place had become so difficult and unpleasant that no reasonable employee would have
22   tolerated it, she thus felt compelled to resign from her position with the City.

23      50.     Madsen has timely served the notice required by A.R.S. § 23-1502. The
24   City failed to remedy the intolerable conditions of her employment within the required
25   15-day period.

26

                      16

JABURG|WILK
Attorneys at Law

1    51.    Accordingly, by law, Madsen has been constructively discharged, and
2 therefore wrongfully terminated without cause under Arizona law and public policy,
3 from the City's employ as of January 4, 2019.

4    52.    As a direct and proximate result of the City's conduct, Madsen has been
5 damaged by being prevented from advancing her career and earning a higher salary than
6 she earns now upon mitigating her damages, has lost wages, benefits and prestige, and
7 has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to
8 her reputation and loss of enjoyment of life.

9    WHEREFORE, Madsen seeks judgment against Defendant City of Phoenix for
10 the following relief:

11        A.    Her damages in an amount to be proved at trial;

12        B.    An award of her attorney fees and costs; and

13        C.    Such other such relief as seems just and proper.

14                          **COUNT FIVE**
                **INTENTIONAL INTERFERENCE WITH CONTRACT**
15                    **AND CONTRATUAL RELATIONS**
                    **(Against Defendant Ostreicher)**
16

17    53.    Madsen incorporates by reference all above allegations as if fully set forth
18 herein.

19    54.    Madsen had a contractual employment relationship with the City.

20    55.    The existence of that relationship and contract was known to Ostreicher.

21    56.    By her actions described herein, Ostreicher intentionally interfered with
22 that relationship and contract, thus causing the City to breach her contract.

23    57.    Ostreicher's acts and omissions were improper, were accomplished for an
24 improper purpose, and were in no way justified.

25    58.    Ostreicher's acts and omissions were not only improper, they were
26 outrageous by current prevailing social standards and were motivated by spite, ill will,

17

1   hatred and evil intent, thus entitling Madsen to an award of punitive damages in such
2   amount as the Court or a jury may award at trial.

3       59.     As a direct and proximate result of the City's conduct, Madsen has been
4   damaged by being prevented from advancing her career and earning a higher salary than
5   she earns now upon mitigating her damages, has lost wages, benefits and prestige, and
6   has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to
7   her reputation and loss of enjoyment of life.

8       WHEREFORE, Madsen seeks judgment against Defendant Ostreicher for the
9   following relief:

10          A.      Her damages in an amount to be proved at trial;

11          B.      An award of punitive damages;

12          C.      An award of her attorney fees and costs; and

13          D.      Such other such relief as seems just and proper.

14                          **COUNT SIX**
                          **DEFAMATION**
15                      **(Against Defendant Graci)**

16      60.     Madsen incorporates by reference all above allegations as if fully set forth
17   herein.

18      61.     By her actions described herein, Graci published statements, insinuations
19   and innuendo to third persons including, without limitation, to the City, to Ostreicher
20   and to Madsen's fellow City employees.

21      62.     Graci's statements, insinuations and innuendo to third persons alleged
22   herein include, without limitation:

23          A.      On or about December 5, 2017, Madsen complained informally and
24   made two written reported complaints of Graci's conduct to the City's HR Department
25   and other executive employees in February and March 2018.

26                              18

1       (1)    The conduct Madsen complained to the City about included
2   Graci's statements and innuendos falsely made to Christy Gomez, Alice Bimrose,
3   Stephen Vital, Tom Ramson, Richard Russell, Melissa Ibarra, Keenan English, Edward
4   Faron, Ann Fusco, Clifton Looper, Kyle Binder, Mara Kelly, Deborah Ostreicher, Mike
5   Miller, Southwest Station Manager, David J. Anderson (DJ), American Airlines.

6       (2)    Such statements and innuendo included, without limitation, that,
7   or words to the effect that:

8           (a)  Madsen was not qualified to do the job of Deputy Aviation
9   Director;

10          (b)  Madsen was sexually harassing Graci; and

11          (c)  Madsen was improperly and inappropriately keeping Graci
12  late at work when others had left and she was improperly disciplining his performance.

13      B.   Upon information and belief, on or about March 22, 2018, Graci went
14  to Airport HR, as he threatened Madsen he would do, and conveyed to Clifton Looper
15  and Tyler Maheu, by statements and innuendo, that, or words to the effect that Madsen
16  was inappropriately, incompetently and/or unlawfully interfering with his relationship
17  with an Airport subordinate employee and falsely accused her of using him as a
18  "recruiting tool."

19      C.   On or about April 3, 2018, in a meeting with Madsen, Janice Pitts and
20  Christy Gomez, Graci conveyed to Ms. Pitts and Ms. Gomez, by statements and
21  innuendo, that, or words to the effect that, Madsen was lying about the prior Gomez
22  incident, which was the subject and purpose of the meeting.

23      D.   On or about April 19, 2018, as reported by Tyler Maheu, one of
24  Madsen's subordinates, Graci bad-mouthed Madsen to Maheu, telling Maheu that she
25  had inappropriately, incompetently and/or unlawfully given directions to one of Graci's

26                              19

1 │ staff members and that her purported infraction was serious enough for him to go to HR
2 │ about it.

3 │       E.   On or about May 2, 2018, Graci went to Janice Pitts to falsely accuse
4 │ Madsen of sexually harassing him.

5 │       (1)   In that meeting, Graci also falsely accused Madsen of:

6 │       (a)   Continuously bad-mouthing Deputy Directors;

7 │       (b)   Requesting and demanding information about subordinates'
8 │ personal lives;

9 │       (c)   Making "sexual" comments about Ostreicher;

10 │       (d)   Blocking him from leaving her office; and

11 │       (e)   Crying hysterically and telling Graci that she "needed" him
12 │ personally, not professionally.

13 │       F.   On or about June 7, 2018, Graci told Mara Kelly, that Madsen was a
14 │ bitch and was getting away with firing him for no reason.

15 │       G.   On or about August 24, 2018, Graci served a Notice of Claim on the
16 │ City and Madsen falsely accusing her of sexually harassing him.

17 │     63.   All such statements, insinuations and innuendo alleged herein were false
18 │ and defamatory, bringing Madsen into disrepute, contempt or ridicule.

19 │     64.   No such statement, insinuation or innuendo was privileged.

20 │     65.   Graci published all such statements, insinuations and innuendo knowing
21 │ that they were false, with reckless disregard of the truth or negligently in failing to
22 │ investigate and ascertain the truth.

23 │     66.   Each such statement, insinuation and innuendo alleged herein, singularly
24 │ or in combination, has impeached and continues to impeach the honesty, integrity and
25 │ reputation of Madsen.

26 │     67.   Graci is liable for presumed damages.

20

JABURG|WILK
Attorneys at Law

1    68.    All such statements, insinuations and innuendo were published by Graci
2 with actual malice and a deliberate indifference or recklessness as to the truth or falsity
3 of any such statement, insinuation or innuendo for the specific purpose of damaging
4 Madsen's good name, standing and reputation in the community. As such, Madsen is
5 entitled to an award of punitive damages in an amount sufficient to punish Graci and
6 deter others from engaging in the same or similar conduct.

7    69.    As a direct and proximate result of the Graci's conduct, Madsen has been
8 damaged by being prevented from advancing her career and earning a higher salary than
9 she earns now upon mitigating her damages, has lost wages, benefits and prestige, and
10 has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to
11 her reputation and loss of enjoyment of life.

12    WHEREFORE, Madsen seeks judgment against Defendant Graci, individually,
13 for the following relief:

14       A.    Her damages in an amount to be proved at trial;
15       B.    An award of punitive damages;
16       C.    An award of her attorney fees and costs; and
17       D.    Such other such relief as seems just and proper.
18                          **JURY TRIAL DEMAND**
19    Madsen demands a jury trial on all claims and issues set forth herein.
20    DATED this 12th day of April, 2019.

21                          **Jaburg & Wilk, P.C.**
22
23                          _____
                            Kraig J. Marton
24                          Jeffrey A. Silence
                            3200 N. Central Avenue, 20th Floor
25                          Phoenix, AZ 85012
                            Attorneys for Plaintiff
26
                                    21

JABURG|WILK
Attorneys at Law

**EXHIBIT 4**

CHRIS DEROSE, CLERK
BY
A. HATCH, FILED

19 APR 12 PM 2: 50

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000
Kraig J. Marton, #003816
kjm@jaburgwik.com
Jeffrey A. Silence, #029143
jxs@jaburgwilk.com
Attorneys for Plaintiff

**SUPERIOR COURT OF ARIZONA**

**IN MARICOPA COUNTY**

| | |
|---|---|
| Christina M. Madsen, an individual, | Case No. **CV 2019-006490** |
| Plaintiff, | |
| v. | **CERTIFICATE OF COMPULSORY ARBITRATION** |
| City of Phoenix, a municipal corporation and a governmental entity; Deborah Ostreicher, as an individual and in her official capacity; and Michael Graci, as an individual and in his official capacity, | |
| Defendants. | |

Pursuant to Rule 72(b), Arizona Rules of Civil Procedure, the largest award sought in this case, including punitive damages, excluding interest, attorney's fee and costs, does exceed the limits set by Maricopa County Local rule 3.10(a) governing compulsory arbitration. Accordingly, this case is **not subject** to compulsory arbitration.

DATED this 12th day of April, 2019.

Jaburg & Wilk, P.C.

Kraig J. Marton
Jeffrey A. Silence
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Plaintiff

20271-20271-00001\KJM\KMR\3463720.1

**EXHIBIT 5**

In the Superior Court of the State of Arizona
In and For the County of **Maricopa**

# CV2019-006430 —

**CIVIL COVER SHEET - NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorney **Kraig J. Marton**
**Jeffrey A. Silence**

Attorney Bar Number   **#003816 / #029143**

Is Interpreter Needed?   ☐ Yes   ☒ No

If yes, what language(s):

_____

_____

19 APR 12 PM 2: 51
A. HATCH, FILED
CHRIS DEROSE, CLERK

| Plaintiff's Name(s): (List all) | Plaintiff's Address: | Phone # | Email Address: |
|---|---|---|---|
| Christina M. Madsen | c/o JABURG & WILK, P.C. | (602) 248-1000 | kjm@jaburgwilk.com |
| | 3200 North Central Avenue, Suite 2000 | | jxs@jaburgwilk.com |
| | Phoenix, Arizona 85012 | | |

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All.)

City of Phoenix; Deborah Ostreicher, Michael Graci

(List additional defendants on page two and/or attach a separate sheet)

## RULE 26.2 DISCOVERY TIER OR MONETARY RELIEF CLAIMED:

**IMPORTANT: Any case category that has an asterisk (\*) MUST have a dollar amount claimed or Tier selected.** State the monetary amount in controversy or place an "**X**" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.

☒ Amount Claimed $  $250,000          ☐ Tier 1          ☒ Tier 2          ☐ Tier 3

## NATURE OF ACTION

Place an "**X**" next to the **one** case category that most accurately describes your primary case. Any case category that has an asterisk (\*) MUST have a dollar amount claimed or Tier selected as indicated above.

**100 TORT MOTOR VEHICLE:**

☐ 101 Non-Death/Personal Injury\*

☐ 102 Property Damage\*
☐ 103 Wrongful Death\*

20271-20271-00001\KJM\KMR\3463820.1

## 110 TORT NON-MOTOR VEHICLE:

☐ 111 Negligence*
☐ 112 Product Liability – Asbestos*
☐ 112 Product Liability – Tobacco*
☐ 112 Product Liability – Toxic/Other*
☐ 113 Intentional Tort*
☐ 114 Property Damage*
☐ 115 Legal Malpractice*
☐ 115 Malpractice – Other professional*
☐ 117 Premises Liability*
☐ 118 Slander/Libel/Defamation*
☐ 116 Other (Specify) _____*

## 120 MEDICAL MALPRACTICE:

☐ 121 Physician M.D.*      ☐ 123 Hospital*
☐ 122 Physician D.O*       ☐ 124 Other*

## 130 & 197 CONTRACTS:

☐ 131 Account (Open or Stated)*
☐ 132 Promissory Note*
☐ 133 Foreclosure*
☐ 138 Buyer-Plaintiff*
☐ 139 Fraud*
☐ 134 Other Contract (i.e. Breach of Contract)*
☐ 135 Excess Proceeds – Sale*
☐ Construction Defects (Residential/Commercial)*
　　☐ 136 Six to Nineteen Structures*
　　☐ 137 Twenty or More Structures *
☐ 197 Credit Card Debt (Maricopa County Only)*

## 150-199 OTHER CIVIL CASE TYPES:

☐ 156 Eminent Domain/Condemnation*
☐ 151 Eviction Actions (Forcible and Special Detainers)*
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment

☐ 158 Quiet Title*
☐ 160 Forfeiture*
☐ 175 Election Challenge
☐ 179 NCC-Employer Sanction Action (A.R.S. §23-212)
☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream Adjudication)*
☐ 187 Real Property*
☐ Special Action against Lower Courts
　　(See lower court appeal cover sheet in Maricopa)
☐ 194 Immigration Enforcement Challenge
　　(A.R.S. §§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

☐ Administrative Review
　　(See lower court appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
　　(All other tax matters must be filed in the AZ Tax
　　Court)
☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute – Other*
☐ 190 Declaration of Factual Innocence (A.R.S.§12-771)
☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)*
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain–Light Rail Only*
☐ 177 Interpleader– Automobile Only*
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☒ 183 Employment Dispute – Discrimination*

Case No. _____

☐ 185 Employment Dispute – Other*          ☐ 163 Other *
☐ 196 Verified Rule 45.2 Petition
☐ 195(a) Amendment of Marriage License                **(Specify)**
☐ 195(b) Amendment of Birth Certificate

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order     ☐ Provisional Remedy     ☐ OSC     ☐ Election Challenge

☐ Employer Sanction          ☐ Other (Specify) _____

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the commercial court under Rule 8.1, and plaintiff requests assignment of this case to the commercial court. More information on the commercial court, including the most recent forms, are available on the court's website at:

https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____

_____

**Additional Defendant(s):**

_____

_____

©Superior Court of Arizona in Maricopa County                    Page 3 of 3                    CV10f-010119
ALL RIGHTS RESERVED
20271-20271-00001\KJM\KMR\3463820.1

**EXHIBIT 6**

1

ORIGINAL

2

**Jaburg & Wilk, P.C.**
3 3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
4 602.248.1000

5 Kraig J. Marton, #003816
KJM@jaburgwik.com
6
Jeffrey A. Silence, #029143
7 JXS@jaburgwilk.com

8 Attorneys for Plaintiff

9 **SUPERIOR COURT OF ARIZONA**

10 **IN MARICOPA COUNTY**

11

12 Christina M. Madsen, an individual,

13 Plaintiff,

14 v.

15 City of Phoenix, a municipal corporation
and a governmental entity; Deborah
16 Ostreicher, as an individual and in her
official capacity; and Michael Graci, as
17 an individual and in his official capacity,

18 Defendants.

19

Case No. CV 2019-006490

**SUMMONS**

If you would like legal advice from a lawyer,
contact the Lawyer Referral Service at
602-257-4134
or
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

20 THE STATE OF ARIZONA TO DEFENDANT:

21 **CITY OF PHOENIX, a municipal corporation and government entity**

22 YOU ARE HEREBY SUMMONED and required to appear and defend, within
the time applicable, in this action in this Court. If served within Arizona, you shall
23 appear and defend within 20 days after the service of the Summons and Complaint upon
you, exclusive of the day of service. If served out of the State of Arizona--whether by
24 direct service, by registered or certified mail, or by publication--you shall appear and
defend within 30 days after the service of the summons and complaint upon you is
25 complete, exclusive of the day of service. Where process is served upon the Arizona
Director of Insurance as an insurer's attorney to receive service of legal process against
26 it in this state, the insurer shall not be required to appear, answer or plead until
expiration of 40 days after date of such service upon the Director. Service by registered

20271-20271-00001\KJM\KMR\3478849.1

JABURG|WILK
Attorneys at Law

1. or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the court. Service by publication is complete 30
2. days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the
3. affidavit of compliance and return receipt or officer's return. **RCP 4; A.R.S. §§20-222, 28-502, 28-503.**
4.
5. YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the complaint.
6.
7. YOU ARE CAUTIONED that in order to appear and defend, you must file an answer or proper response in writing with the clerk of this court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of
8. any answer or response upon the Plaintiff's attorney. **RCP 10(d); A.R.S. §12-311; RCP 5.**
9.
10. PURSUANT TO RULE 45(G), ARIZONA RULES OF CIVIL PROCEDURE; AMERICANS WITH DISABILITIES ACT, REQUESTS FOR REASONABLE ACCOMMODATIONS FOR PERSONS WITH DISABILITIES MUST BE MADE TO
11. THE DIVISION ASSIGNED TO THE CASE BY PARTIES AT LEAST (3) JUDICIAL DAYS IN ADVANCE OF A SCHEDULED COURT PROCEEDING.
12. The name and address of Plaintiff's attorney is:
13.
14. Kraig J. Marton
    Jeffrey A. Silence
    3200 N. Central Avenue, 20th Floor
15. Phoenix, AZ 85012

16. **ADA Notification**

17. Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

18. **Interpreter Notification**

19. Requests for an interpreter for persons with limited English proficiency must be made to
20. the office of the judge or commissioner assigned to the case by the parties at least ten (10) judicial days in advance of a scheduled court proceeding.

21.
22. SIGNED AND SEALED this date:_____APR. 1 2 2019_____

23.
24. **JEFF FINE, CLERK**
    CLERK OF THE SUPERIOR COURT
25. By:_____
    Deputy Clerk                    A. Hatch
26.                                  Deputy Clerk

2

JABURG|WILK
Attorneys at Law

**EXHIBIT 7**

CLERK OF THE
SUPERIOR COURT
FILED
A. RODRIGUEZ, DEP

2019 APR 25 AH 11: 33

JEFF FINE, CLERK

ORIGINAL

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Kraig J. Marton, #003816
KJM@jaburgwik.com

Jeffrey A. Silence, #029143
JXS@jaburgwik.com

Attorneys for Plaintiff

**JABURG|WILK**
Attorneys at Law

## SUPERIOR COURT OF ARIZONA

## IN MARICOPA COUNTY

CV 2019-006490

| Christina M. Madsen, an individual, | Case No. |
|---|---|
| Plaintiff, | **SUMMONS** |
| v. | |
| City of Phoenix, a municipal corporation and a governmental entity; Deborah Ostreicher, as an individual and in her official capacity; and Michael Graci, as an individual and in his official capacity, | If you would like legal advice from a lawyer, contact the Lawyer Referral Service at 602-257-4434 or www.maricopalawyers.org Sponsored by the Maricopa County Bar Association |
| Defendants. | |

THE STATE OF ARIZONA TO DEFENDANT:

**Deborah Ostreicher, as an individual and in her official capacity**

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona--whether by direct service, by registered or certified mail, or by publication--you shall appear and defend within 30 days after the service of the summons and complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered

20271-20271-00001\KJM\KMR\3478845.1

1 or certified mail without the State of Arizona is complete 30 days after the date of filing
the receipt and affidavit of service with the court. Service by publication is complete 30
2 days after the date of first publication. Direct service is complete when made. Service
upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the
3 affidavit of compliance and return receipt or officer's return. RCP 4; A.R.S. §§20-222,
28-502, 28-503.

4

    YOU ARE HEREBY NOTIFIED that in case of your failure to appear and
5 defend within the time applicable, judgment by default may be rendered against you for
the relief demanded in the complaint.

6

    YOU ARE CAUTIONED that in order to appear and defend, you must file an
7 answer or proper response in writing with the clerk of this court, accompanied by the
necessary filing fee, within the time required, and you are required to serve a copy of
8 any answer or response upon the Plaintiff's attorney. RCP 10(d); A.R.S. §12-311;
RCP 5.

9

    PURSUANT TO RULE 45(G), ARIZONA RULES OF CIVIL PROCEDURE;
10 AMERICANS WITH DISABILITIES ACT, REQUESTS FOR REASONABLE
ACCOMMODATIONS FOR PERSONS WITH DISABILITIES MUST BE MADE TO
11 THE DIVISION ASSIGNED TO THE CASE BY PARTIES AT LEAST (3)
JUDICIAL DAYS IN ADVANCE OF A SCHEDULED COURT PROCEEDING.

12

    The name and address of Plaintiff's attorney is:

13

14
        Kraig J. Marton
        Jeffrey A. Silence
        3200 N. Central Avenue, 20th Floor
15         Phoenix, AZ 85012

16                         **ADA Notification**

17 Requests for reasonable accommodation for persons with disabilities must be made to
the court by parties at least 3 working days in advance of a scheduled court proceeding.

18                         **Interpreter Notification**

19
Requests for an interpreter for persons with limited English proficiency must be made to
20 the office of the judge or commissioner assigned to the case by the parties at least ten
(10) judicial days in advance of a scheduled court proceeding.

21

22 SIGNED AND SEALED this date:_____**APR.1 2 2019**_____

                            **JEFF FINE, CLERK**

23               CLERK OF THE SUPERIOR COURT

24

25                By:
               Deputy Clerk        A. Hatch

26                              **Deputy Clerk**

                           2

JABURG|WILK
Attorneys at Law

**EXHIBIT 8**

Clerk of the Superior Court
*** Electronically Filed ***
T. Hays, Deputy
5/3/2019 3:12:00 PM
Filing ID 10421955

1

2

**Jaburg & Wilk, P.C.**

3   3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012

4   602.248.1000

5   Kraig J. Marton, #003816
KJM@jaburgwik.com

6
Jeffrey A. Silence, #029143

7   JXS@jaburgwik.com

8   Attorneys for Plaintiff

9                    **SUPERIOR COURT OF ARIZONA**

10                       **IN MARICOPA COUNTY**

11

12   Christina M. Madsen, an individual,          Case No. CV2019-006490

13                  Plaintiff,

                                                  **FIRST AMENDED COMPLAINT**
14   v.

15   City of Phoenix, a municipal corporation
and a governmental entity; Deborah
16   Ostreicher, as an individual and in her
official capacity; and Michael Graci, as
17   an individual and in his official capacity,

18                  Defendants.

19
        Plaintiff Christina M. Madsen ("Madsen") alleges:

20
                        **PARTIES AND JURISDICTION**

21
           1.   Madsen is currently a citizen and resident of the State of North Carolina, but

22   was at all relevant times was a citizen and resident of Maricopa County, Arizona.

23
           2.   Defendant City of Phoenix (the "City") is a municipal corporation and a

24   governmental entity of the State of Arizona. The City owns and operates the Phoenix

25   Sky Harbor International, Goodyear and Deer Valley Airports (the "Airport").

26

20271-20271-00001\DNF\DNF\3501132.1

1   3.   Madsen is the former Deputy Director for Aviation Business and Properties
2   working for the City-owned Airport (the "Aviation Deputy Director").

3   4.   Defendant Deborah Ostreicher, as an individual and in her official capacity
4   acting on behalf of the City ("Ostreicher") is a citizen and resident of Maricopa County,
5   Arizona, who, at all relevant times, was the Assistant Aviation Director of the Airport
6   (the "Assistant Aviation Director").

7   5.   Defendant Michael Graci, as an individual and in his official capacity acting
8   on behalf of the City ("Graci") is a citizen and resident of Maricopa County, Arizona,
9   who, at all relevant times, was the Aviation Superintendent for Airline Affairs and Real
10  Estate of the Airport.

11  6.   All acts of the individual Defendants as alleged in this Complaint were
12  performed on some occasions as outside the scope of each's employment and on each
13  defendants' own behalf, and on other occasions were performed on behalf of the City
14  and in the course and scope of each's employment.

15  7.   Subject matter jurisdiction and venue are proper in this Court.

16  8.   Plaintiff timely filed an EEOC charge for purposes of the Title VII claims
17  alleged below and expects to receive a right-to-sue letter within the next 30 to 60 days.

18  **GENERAL ALLEGATIONS**

19  9.   Before she was forced to leave in January 2019, Madsen had been the
20  Deputy Director for Aviation Business and Properties working for the City at the
21  Airport for nearly three years, since January 4, 2016.

22  10.  During that time, Madsen excelled in every aspect of her work.

23  11.  Madsen was a model executive employee who consistently received high
24  marks and commendations for her work.

25  12.  Nevertheless, Madsen was disliked, obstructed and even harassed by her
26  superior, Defendant Ostreicher, the Airport's Assistant Aviation Director.

2

JABURG|WILK
Attorneys at Law

1    13.   Defendant Graci was hired by the City to work as Aviation Superintendent

2  for Airline Affairs and Real Estate on July 17, 2017.

3    14.   Madsen was appointed as Graci's direct supervisor.

4    15.   Upon information and belief, Ostreicher and Graci were good friends.

5    16.   Graci touted his acquaintance and friendship with Ostreicher to Madsen,

6  saying he had "a lot of friends" at the Airport, including Phoenix Aviation Advisory

7  Board member Pete Gorriaz, almost immediately after his first day on the job.

8    17.   Within a few months of Graci's first day on the job, it became apparent to

9  Madsen and others in the chain of command that his work performance was deficient,

10  untimely and of poor quality.

11    18.   There were well-documented, multiple times Graci was talked to, warned

12  about and reprimanded for his deficient performance and corrections of his work

13  product from nearly the day he was hired to June 7, 2018, the day he was terminated.

14    19.   The City was at all relevant times well aware of Graci's retaliatory claims

15  he made against the City and Madsen, including sex and sexual harassment and hostile

16  working environment claims.

17    20.   Graci made these retaliatory claims as a final "parting shot" at Madsen just

18  before he was terminated, as further set forth below.

19    21.   The City was at all relevant times also well aware of the circumstances and

20  facts that fueled Graci's retaliatory claims against the City and Madsen well before the

21  time he made them.

22    22.   This Complaint has been filed against Ostreicher, Madsen's superior, in part

23  because of the multiple incidents and actions Ostreicher took to obstruct and interfere

24  with her employment and apparent willingness to assist and protect Graci and the City's

25  decision, through Ostreicher, to ignore and fail to take any action to address or resolve

26  the formal complaints Madsen had previously made against Graci, including for sex

1  harassment, insubordination and the hostile work environment both he and Ostreicher
2  perpetuated.

3      23.  Ostreicher's interference and obstructive actions taken against Madsen or
4  with regard to the performance of her work and her supervision of Graci include, but are
5  not limited to the following events:

6          A.  During the course of Madsen's supervision of Graci, Graci targeted her
7  for a series of inappropriate, insubordinate and express or implied sexist remarks.

8              (1)  For example, Madsen repeatedly complained informally and made
9  two written reported complaints about Graci's conduct to the City's HR Department and
10  other executive employees in February and March 2018, as set forth below.

11                  (a)  Despite having received her complaints, the City never took
12  any action against Graci or, to Madsen's knowledge, never conducted or even began an
13  appropriate or meaningful investigation of either of her reported complaints.

14                  (b)  Upon information and belief, Ostreicher acted individually
15  and in her official capacity as Madsen's superior to "bury" these reported complaints
16  against Graci.

17          B.  Ostreicher protected and treated Graci differently and with deference in
18  all matters that pertained to him.

19              (1)  For another example, Graci was terminated on or about June 7,
20  2018, while he was on probationary status.

21                  (a)  The termination process, however, was in process while he
22  was on probationary status until Ostreicher sabotaged the City's progressive discipline
23  process in order to allow him to make that claim as one of many against the City that he
24  would not have had absent the policy violation.

25          C.  On the day that Graci was terminated, Ostreicher did the following:

26
                                    4

1    (1)   Ostreicher went to the City's HR offices and inappropriately, and
2  without any prior notice to Madsen, Graci's initial supervisor, demanded to know why
3  she had not been consulted to approve the paperwork for his termination, thus in this
4  situation and others, undermining Madsen's authority in the matter.

5    (2)   Ostreicher took steps to make sure she had undermined Madsen's
6  authority by making demand in a loud voice to HR Manager Janice Pitts in an open area
7  where she could be sure many others would hear her.

8    (3)   Ostreicher made further false and defamatory comments to Ms.
9  Pitts to the effect that Madsen had not handled Graci's termination appropriately.

10    D.   Several days after Graci's termination, Ostreicher did the following:

11    (1)   Upon information and belief, Ostreicher made comments to
12  Madsen's direct supervisor, Charlene Reynolds, that, or with words to the effect that,
13  "this is not over," referring to Graci's termination.

14    (a)   Ostreicher's words were a threat aimed at Madsen.

15    (2)   Ostreicher sabotaged and interfered with the normal Airport chain
16  of command for the coordination of air service coordination projects and eliminated
17  conferring directly with Madsen about questions for board and council briefings.

18    (a)   For example, but without limitation, Ostreicher would often
19  coordinate multiple projects directly with Madsen, but, after Graci made his complaint
20  against the City and Madsen in early May 2018, she stopped that practice and retaliated
21  against Madsen by eliminating and going around her when making key decisions that
22  required her input.

23    (3)   Ostreicher further sabotaged, interfered with and retaliated against
24  Madsen in the performance of her duties to supervise and oversee all Air Service
25  Development Coordination.

26

5

1           (a)    For example, Ostreicher instructed Madsen's staff to only
2    talk to Tyler Maheu and, by necessary implication, to not talk to Madsen regarding Air
3    Service Development.

4           (4)    Ostreicher further sabotaged, interfered with and retaliated against
5    Madsen in the performance of her duties to supervise and oversee issues relating to
6    Planning and Environmental coordination.

7           (a)    Specifically, but without limitation, Jordan Feld, who was a
8    direct report to Ostreicher and a peer to Madsen, began giving directions to Madsen's
9    managers without her involvement.

10          (b)    Mr. Feld thereafter also became increasingly condescending
11   to Madsen.

12          (5)    Ostreicher further sabotaged, interfered with and retaliated against
13   Madsen in the performance of her duties to participate in and contribute to Board and
14   City Council briefings on Business and Properties Transactions.

15          (a)    Specifically, but without limitation, Ostreicher making calls
16   and sending text messages to Madsen had been a common and frequent occurrence.
17   Those frequent communications significantly diminished beginning in late February
18   2018, almost immediately after Madsen had begun to discipline Graci.

19          (6)    On October 19, 2018, in an Aviation Director staff meeting,
20   Ostreicher led the meeting.  During that meeting, Janice Pitts, HR Manager, said that
21   Victoria Torrihilon, Legal HR, was moving to a different legal section.

22          (a)    At that moment, Ostreicher looked at Madsen and told
23   everyone in attendance that, or with words to the effect that, "Victoria needed a break
24   from HR issues."

25          (b)    Ostreicher's words, as she smiled and chuckled, implied that
26   Madsen was the reason why Victoria needed a break.

6

JABURG|WILK
Attorneys at Law

JABURG|WILK
Attorneys at Law

1    24. Graci's bullying, intimidation, sex discrimination and sexual harassment

2  that were directed at Madsen and/or created a hostile work environment include, but are

3  not limited to the following events:

4              A.    On or about February 5, 2018, Beth Benton, the Airline Station

5  Manager for Spirit Airlines, an important Airport tenant, called Ostreicher to complain

6  about Graci rude and sexist treatment of her.

7                    (1)    Ostreicher referred the matter to Madsen and Tyler Maheu to

8  handle.

9                    (2)    When confronted, Graci told Madsen that he wanted to call Ms.

10  Benton and asked her (Madsen) to stay out of it.

11                    (3)    Madsen declined Graci's request and called Ms. Benton herself on

12  February 6, 2018.

13                    (4)    Ms. Benton complained that Graci had been condescending and

14  rude to her, had called her a liar, and had asked her to "do favors" for the other airlines.

15  She said she did not want to work with him anymore.

16                    (5)    Madsen conveyed her conversation with Ms. Benton to Graci.

17                    (6)    Graci denied what Ms. Benton had said about him and was upset

18  and loud.

19                    (7)    Graci called Ms. Benton a "bitch," a sexually derogatory insult.

20                    (8)    Madsen felt threatened and intimidated and was offended by his

21  words and behavior, and she told him so.

22                    (9)    Madsen reasonably viewed his words and behavior as harassing

23  and chauvinistic based on her gender with unwelcomed sexual overtones.

24                    (10)   Madsen reported the incident with Graci to Airport HR, but, to

25  her knowledge, HR did absolutely nothing about her complaint.

26
                                           7

1    B.    Graci's behavior toward Ms. Benton did not get any better as of May

2  7, 2018, when Ms. Benton again wrote to Madsen to again complain about it.

3         (1)  Madsen referred the matter to HR, and, once again, to Madsen's

4  knowledge, HR did absolutely nothing about her complaint.

5         C.    On or about March 22, 2018, Madsen witnessed an incident in which

6  Graci made a rude and undeserved comment to Christy Gomez about changing meeting

7  rooms.

8         (1)  Graci inexplicably was furious and yelled at Ms. Gomez in front

9  of Madsen and other Airport management and staff members.

10         (2)  Madsen met with Graci in order to convey her conversation with

11  Ms. Gomez.

12         (3)  Graci was rude to Madsen in that conversation.

13         (4)  In that conversation, Madsen asked Graci about his relationship

14  with Ms. Fusco.

15         (5)  Graci became angry and yelled at Madsen with words to the effect

16  that: "I knew you were going to do this!  Nothing is going on and it is none of your

17  business what I do outside of work ... *none of your f\*\*\*ing business!*"

18         (6)  Graci also threatened Madsen, accusing her of using him as a

19  "recruiting tool and now I'm not as good as you!" or words to the effect.

20         (7)  Graci screamed at Madsen with words to the effect that: "I'm

21  going to HR right now!" and stormed out of her office.

22         (8)  Madsen felt threatened and intimidated and was offended by

23  Graci's words and afraid of his behavior, which she considered to be harassing and

24  chauvinistic based on her gender with unwelcomed sexual overtones.

25         (9)  Madsen reported the incident to Airport HR, but, again, to her

26  knowledge, HR did absolutely nothing about her complaint.

8

JABURG|WILK
Attorneys at Law

JABURG|WILK
Attorneys at Law

1      D.    On or about March 27, 2018, Madsen met with Graci to continue
2   their discussion about his treatment of Christy Gomez.

3      (1)   In that meeting, Graci accused Madsen of "protecting Christy,"
4   saying that, or with words to the effect that, he was "done with Christy" and that
5   Madsen was "threatening him."

6      (2)   Graci also threatened Madsen with words to the effect that he had
7   "a lot of friends here" and, unbelievably, said Madsen was treating Ms. Gomez
8   differently because she was female.

9      (3)   In this confrontation, when Madsen asked Graci about his long-
10   standing uncompleted projects, he snapped back at her that, or with words to the effect
11   that, "I owe you nothing!"

12      (4)   Graci also accused Madsen with a condescending grin and
13   words to the effect that the incident between him and Ms. Gomez had occurred, "and
14   yet, [she] did nothing about it."

15      (5)   Madsen told Graci she wanted to meet with him and Airport HR
16   about his behavior and threats.

17      (6)   Graci told her that, or with words to the effect that, she was to
18   "come prepared, as I will be protecting myself."

19      E.    On or about March 29, 2018, Madsen was so alarmed that she went
20   to Janice Pitts, the Airport HR Manager, to make a more formal discrimination and
21   harassment complaint against Graci.

22      (1)   Madsen told Ms. Pitts she felt "uncomfortable" and "unsafe"
23   around Graci, that he was intimidating and threatening, that he created a hostile work
24   environment for her and other female staff and customers, and that she was concerned
25   about being alone with him.

26
9

1               (2)    Madsen asked Ms. Pitts for an HR representative to accompany
2  her when she presented a long in-the-works PMG to him, but Pitts told her that, or with
3  words to the effect that, "HR doesn't do that."

4               (3)    Once again, to Madsen's knowledge, HR did absolutely nothing
5  about her complaint.

6              F.    On or about April 3, 2018, Madsen and Ms. Pitts met with Christy
7  Gomez and Graci to discuss the issues raised by Ms. Gomez about Graci's behavior
8  toward her.

9               (1)    Gomez repeated exactly what she had told Madsen.

10              (2)    Graci, on the other hand, did a complete 180 degree turn-around
11 of what he had told Madsen, now saying that Ms. Gomez was "very smart" and did a
12 "great job."

13              (3)    Graci continued his behavior and harassment against Madsen
14 by, as Ms. Pitts has acknowledged, lying about the incident and purposely making
15 Madsen and Ms. Gomez look foolish.

16             G.    On or about April 19, 2018, Tyler Maheu reported to Madsen that
17 Graci was complaining and bad mouthing her to him (Maheu) about her giving
18 directions to one of his (Graci's) staff members.

19              (1)    Maheu reported that Graci had screamed at him words, or
20 words to the effect that, "Why the fuck should I not go to Charlene Reynold's [Assistant
21 Aviation Director] office right now and complain about her?"

22              (2)    Madsen reported this incident to her supervisor, Ms. Reynolds,
23 that same day.

24              (3)    Ms. Reynolds directed Madsen to finalize the memo of
25 expectations for Graci and provide to her and HR for review.

26

10

1        (4) Madsen completed the memo of expectation and provided a
2    copy to Ms. Reynolds and Ms. Pitts on or about April 30, 2018 for their review prior to
3    delivering to Graci.

4        (5) On or about May 1, Ms. Pitts met with Ms. Ostreicher to review
5    the memo of expectations prior to delivery to Graci.

6        H. On or about May 2, 2018, Graci went to Ms. Pitts to complain that
7    Madsen was sexually harassing him!

8        (1) Graci told Ms. Pitts there was no issue with Christy Gomez and
9    that Madsen was bad mouthing Ms. Reynolds.

10       (2) Graci's deception was all too transparent to Ms. Reynolds, as
11   she conveyed to Madsen at the time.

12       (3) Ms. Reynolds informed Madsen she would remove Graci from
13   her (Madsen's) direct supervision to Tyler Maheu that day.

14    25. After Graci submitted his May 2, 2018, complaint against her, Madsen
15   asked the City for a copy of his complaint because she wanted to make sure that HR
16   was adequately protecting her regarding her previous complaints.

17    26. Ms. Reynolds told Madsen that she would provide a copy of the report
18   regarding Graci's complaint, but that she needed to check with HR first.

19    27. The following day, Madsen asked for a copy of the report again and her
20   request was refused.

21    28. Graci was eventually terminated for cause on June 7, 2018.

22    29. Graci noticed claims against the City and Madsen on August 24, 2018,
23   including claims based on his sexual harassment claims against her.

24    30. Graci's claims against Madsen are offensive (in both senses of that word),
25   discriminatory, retaliatory and without any possible merit.

26

JABURG|WILK
Attorneys at Law

1    31.    Nevertheless, Madsen has been wrongfully involved in Graci's threatened

2  lawsuit and, quite literally, has been shoved out the door by her employer due to the

3  City's repeated failure to act upon her repeated complaints about Graci's sex-based

4  words and behavior toward her and the hostile work environment and intolerable

5  working conditions she endured due to Graci and Ostreicher supporting him behind-the-

6  scenes and sabotaging her (Madsen's) efforts to supervise him.

7                              **COUNT ONE**
                   **SEX DISCRIMINATION UNDER TITLE VII**
8                      **(Against Defendant City of Phoenix)**

9    32.    Plaintiff alleges all prior allegations in this Complaint.

10   33.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Title

11  VII) provides that it unlawful for an employer to refuse to hire or otherwise discriminate

12  against an employee on the basis of sex.  42 U.S.C. § 2000e-2.

13   34.    The City was Madsen's "employer" as that term is defined by Title VII,

14  42 U.S.C. § 2000e(b).

15   35.    Under Title VII it is unlawful for an employer "to discharge any

16  individual, or otherwise to discriminate against any individual with respect to [her]

17  compensation, terms, conditions, or privileges of employment, because of such

18  individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

19   36.    Madsen belongs to a protected class (female) and has been subjected to

20  adverse employment actions in violation of Title VII, as alleged.

21   37.    The City discriminated against, and eventually constructively discharged,

22  Madsen because of her sex in various ways, including, without limitation:

23          A.    Through the words and actions of Graci, which the City failed to

24  abate or even investigate despite Madsen's repeated complaints about him.

25

26
                                    12

JABURG|WILK
Attorneys at Law

1    B.    The City, through Ostreicher, expressly or by inaction or implication
2    approved of, condoned and/or perpetuated Graci's conduct and baseless claims against
3    Madsen.

4    38.    The City discriminated against, and eventually constructively discharged,
5    Madsen by thus creating a hostile work environment, a Title VII claim that is actionable
6    in its own right.

7    39.    The City retaliated against Madsen for having complained about Graci
8    and Ostreicher's approval, condonation and perpetuation of his unlawful actions.

9    40.    The City knew, or should have known, about the unlawful discrimination,
10    the sexual harassment and the hostile work environment alleged, but, despite Madsen's
11    repeated complaints, failed and refused to take prompt and effective remedial action.

12    41.    The City is directly and/or vicariously liable for Graci's and Ostreicher's
13    acts and omissions alleged in this Complaint.

14    42.    As a direct and proximate result of the City's discriminatory acts and
15    omissions, Madsen has suffered damages that arise out of, without limitation, lost
16    wages, lost career and career advancement opportunities, attorney fees and costs of
17    defending herself from Graci's baseless claims made against her, and mental anguish,
18    emotional distress, pain and suffering, humiliation, harm to reputation, and loss of
19    enjoyment of life.

20    WHEREFORE, Plaintiff seeks judgment against Defendant the City as follows:

21        A.    Her damages in an amount to be proved at trial;

22        B.    An award of her attorney fees and costs; and

23        C.    Such other such relief as seems just and proper.

24    **COUNT TWO**
       **UNLAWFUL RETALIATION UNDER TITLE VII**
25    **(Against Defendant City of Phoenix)**

26
                                      13

1    43.    Plaintiff alleges all prior allegations in this Complaint.

2    44.    Title VII also provides that it unlawful for an employer to retaliate against
3    an employee for engaging in a protected activity.  42 U.S.C. § 2000e-3(a).

4    45.    Madsen was engaged in a protected activity when she complained to the
5    City about Graci's unlawful discrimination, harassment and behavior at various times,
6    including her informal and formal complaints made to HR in February and March 2018.

7    46.    The City retaliated against Madsen for engaging in such protected activity
8    by, without limitation:

9           A.    Failing and refusing to abate or even investigate her complaints about
10   Graci's unlawful conduct and the hostile work environment she complained about and
11   continued to endure;

12          B.    Expressly or by inaction or implication, approving of, condoning and/
13   or perpetuating Graci's unlawful conduct and the baseless claims he was allowed, and
14   even encouraged, to make against Madsen; and

15          C.    Eventually terminating her through a constructive discharge.

16   47.    The City is directly and/or vicariously liable for Graci's and Ostreicher's
17   acts and omissions alleged in this Complaint.

18   48.    As a direct and proximate result of the City's unlawful retaliatory acts and
19   omissions, Madsen has suffered damages that arise out of, without limitation, lost
20   wages, lost career and career advancement opportunities, attorney fees and costs of
21   defending herself from Graci's baseless claims made against her, and mental anguish,
22   emotional distress, pain and suffering, humiliation, harm to reputation, and loss of
23   enjoyment of life.

24          WHEREFORE, Plaintiff seeks judgment against Defendant the City as follows:

25          A.    Her damages in an amount to be proved at trial;

26          B.    An award of her attorney fees and costs; and
                                    14

1    C.    Such other such relief as seems just and proper.

2                              **COUNT THREE**
     **SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983**
3                          **(Against All Defendants)**

4    49.    Madsen incorporates by reference all above allegations as if fully set forth
5    herein.

6    50.    The City, by and through the conduct of Graci and Ostreicher, repeatedly
7    subjected Madsen to unlawful discrimination, harassment and retaliation, as well as a
8    hostile work environment, and failed and refused to act in response to her repeated
9    complaints about Graci's unabated words and actions in violation of the Fourteenth
10   Amendment of the United States Constitution.

11   51.    The City itself and Graci and Ostreicher as City employees, acted under
12   color of state law at all relevant times.

13   52.    As a direct and proximate result of Defendants' conduct, Madsen has been
14   damaged by being prevented from advancing her career and earning a higher salary than
15   she earns now upon mitigating her damages, has lost wages, benefits and prestige, and
16   has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to
17   her reputation and loss of enjoyment of life.

18         WHEREFORE, Madsen seeks judgment against Defendants the City and Ms.
19   Ostreicher, individually and in her official capacity, for the following relief:

20         A.    Entry of an Order granting appropriate injunctive relief, including,
21   without limitation:

22               (1)    Ordering the City to expunge all negative references in
23   Madsen's personnel file or any other file or record that pertains to her performance of
24   her former employment with the City;

25

26
                                      15

1          (2)    Ordering the City to give only favorable, or at a minimum

2  neutral, references regarding her performance of her former employment with the City

3  to any prospective employee of Madsen who asks;

4          (3)    Ordering the City to adopt meaningful and effective policies

5  against sex discrimination and harassment in the workplace that comply with the law;

6          (4)    Ordering the City to meaningfully and effectively respond to

7  and investigate employee complaints about sex discrimination and harassment in the

8  workplace;

9          (5)    Ordering the City to provide meaningful and effective training

10  concerning sex discrimination and harassment in the workplace to all of its current and

11  prospective managers, supervisors and employees;

12          (6)    Enjoining the City and Ostreicher to cease and desist from

13  continuing to discriminate, harass or retaliate against Plaintiff or any other employee on

14  the basis of sex and from maintaining a hostile work environment;

15       B.     An award of her attorney fees and costs; and

16       C.     Such other such relief as seems just and proper.

17                         **COUNT FOUR**

**SEX DISCRIMINATION IN VIOLATION OF A.R.S. A.R.S. § 41-1463(B)(1)**

18                       **(Against Defendant City of Phoenix)**

19     53.    Madsen incorporates by reference all above allegations as if fully set forth

20  herein.

21     54.    The City, by and through the conduct of Graci and Ostreicher, repeatedly

22  subjected Madsen to unlawful discrimination, harassment and retaliation, as well as a

23  hostile work environment, and failed and refused to act in response to her repeated

24  complaints about Graci's unabated words and actions in violation of the Arizona Civil

25  Rights Act (the "ACRA").

26

1    55.    The ARCA provides in pertinent part:

2          B.  It is an unlawful employment practice for an employer:

3                    1. To fail or refuse to hire or to discharge any
                     individual or otherwise to discriminate against any
4                    individual with respect to the individual's
                     compensation, terms, conditions or privileges of
5                    employment because of the individual's ... sex ....

6    A.R.S. § 41-1463(B)(1).

7    56.    The ACRA is modeled after, and is generally identical to and interpreted

8    and applied in conformity with, Title VII.

9    57.    As a direct and proximate result of Defendants' conduct, Madsen has been

10   damaged by being prevented from advancing her career and earning a higher salary than

11   she earns now upon mitigating her damages, has lost wages, benefits and prestige, and

12   has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to

13   her reputation and loss of enjoyment of life.

14   WHEREFORE, Madsen seeks judgment against Defendant City of Phoenix for

15   the following relief:

16         A.    Her damages in an amount to be proved at trial;

17         B.    An award of her attorney fees and costs; and

18         C.    Such other such relief as seems just and proper.

19                          **COUNT FIVE**
                **INTENTIONAL INTERFERENCE WITH CONTRACT**
20                 **AND CONTRATUAL RELATIONS**
                   **(Against Defendant Ostreicher)**
21

22   58.    Madsen incorporates by reference all above allegations as if fully set forth

23   herein.

24   59.    Madsen had a contractual employment relationship with the City.

25   60.    The existence of that relationship and contract was known to Ostreicher.

26
                                    17

JABURG|WILK
Attorneys at Law

JABURG|WILK
Attorneys at Law

1    61.    By her actions described herein, Ostreicher intentionally interfered with
2  that relationship and contract, thus causing the City to breach her contract.

3    62.    Ostreicher's acts and omissions were improper, were accomplished for an
4  improper purpose, and were in no way justified.

5    63.    Ostreicher's acts and omissions were not only improper, they were
6  outrageous by current prevailing social standards and were motivated by spite, ill will,
7  hatred and evil intent, thus entitling Madsen to an award of punitive damages in such
8  amount as the Court or a jury may award at trial.

9    64.    As a direct and proximate result of the City's conduct, Madsen has been
10  damaged by being prevented from advancing her career and earning a higher salary than
11  she earns now upon mitigating her damages, has lost wages, benefits and prestige, and
12  has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to
13  her reputation and loss of enjoyment of life.

14    WHEREFORE, Madsen seeks judgment against Defendant Ostreicher for the
15  following relief:

16         A.    Her damages in an amount to be proved at trial;

17         B.    An award of punitive damages;

18         C.    An award of her attorney fees and costs; and

19         D.    Such other such relief as seems just and proper.

20                    **COUNT SIX**
                    **DEFAMATION**
21              **(Against Defendant Graci)**

22    65.    Madsen incorporates by reference all above allegations as if fully set forth
23  herein.

24    66.    By his actions described herein, Graci published through various means
25  statements, insinuations and innuendo to third persons including, without limitation, to

26
                         18

1 the City, to Ostreicher and to Madsen's fellow City employees, including, without
2 limitation, as follows:

3          A.  On or about December 5, 2017, Madsen complained informally and
4 made two written reported complaints of Graci's conduct to the City's HR Department
5 and other executive employees in February and March 2018.

6          (1)    The conduct Madsen complained to the City about included
7 Graci's statements and innuendos falsely made to Christy Gomez, Alice Bimrose,
8 Stephen Vital, Tom Ramson, Richard Russell, Melissa Ibarra, Keenan English, Edward
9 Faron, Ann Fusco, Clifton Looper, Kyle Binder, Mara Kelly, Deborah Ostreicher, Mike
10 Miller, Southwest Station Manager, David J. Anderson (DJ), American Airlines.

11          (2)    Such statements and innuendo included, without limitation, that,
12 or words to the effect that:

13                 (a)    Madsen was not qualified to do the job of Deputy Aviation
14 Director;

15                 (b)    Madsen was sexually harassing Graci; and

16                 (c)    Madsen was improperly and inappropriately keeping Graci
17 late at work when others had left and she was improperly disciplining his performance.

18          B.  Upon information and belief, on or about March 22, 2018, Graci went
19 to Airport HR, as he threatened Madsen he would do, and conveyed to Clifton Looper
20 and Tyler Maheu, by statements and innuendo, that, or words to the effect that Madsen
21 was inappropriately, incompetently and/or unlawfully interfering with his relationship
22 with an Airport subordinate employee and falsely accused her of using him as a
23 "recruiting tool."

24          C.  On or about April 3, 2018, in a meeting with Madsen, Janice Pitts and
25 Christy Gomez, Graci conveyed to Ms. Pitts and Ms. Gomez, by statements and

26
                                          19

JABURG|WILK
Attorneys at Law

1  innuendo, that, or words to the effect that, Madsen was lying about the prior Gomez
2  incident, which was the subject and purpose of the meeting.

3  D.  On or about April 19, 2018, as reported by Tyler Maheu, one of
4  Madsen's subordinates, Graci bad-mouthed Madsen to Maheu, telling Maheu that she
5  had inappropriately, incompetently and/or unlawfully given directions to one of Graci's
6  staff members and that her purported infraction was serious enough for him to go to HR
7  about it.

8  E.  On or about May 2, 2018, Graci went to Janice Pitts to falsely accuse
9  Madsen of sexually harassing him.

10  (1)  In that meeting, Graci also falsely accused Madsen of:

11  (a)  Continuously bad-mouthing Deputy Directors;

12  (b)  Requesting and demanding information about subordinates'
13  personal lives;

14  (c)  Making "sexual" comments about Ostreicher;

15  (d)  Blocking him from leaving her office; and

16  (e)  Crying hysterically and telling Graci that she "needed" him
17  personally, not professionally.

18  F.  On or about June 7, 2018, Graci told Mara Kelly, that Madsen was a
19  bitch and was getting away with firing him for no reason.

20  G.  On or about August 24, 2018, Graci served a Notice of Claim on the
21  City and Madsen falsely accusing her of sexually harassing him.

22  67.  All such statements, insinuations and innuendo alleged herein were false
23  and defamatory, bringing Madsen into disrepute, contempt or ridicule.

24  68.  No such statement, insinuation or innuendo was privileged.

25

26
20

1      69.     Graci published all such statements, insinuations and innuendo knowing
2 that they were false, with reckless disregard of the truth or negligently in failing to
3 investigate and ascertain the truth.

4      70.     Each such statement, insinuation and innuendo alleged herein, singularly
5 or in combination, has impeached and continues to impeach the honesty, integrity and
6 reputation of Madsen.

7      71.     Graci is liable for presumed damages.

8      72.     All such statements, insinuations and innuendo were published by Graci
9 with actual malice and a deliberate indifference or recklessness as to the truth or falsity
10 of any such statement, insinuation or innuendo for the specific purpose of damaging
11 Madsen's good name, standing and reputation in the community. As such, Madsen is
12 entitled to an award of punitive damages in an amount sufficient to punish Graci and
13 deter others from engaging in the same or similar conduct.

14      73.     As a direct and proximate result of the Graci's conduct, Madsen has been
15 damaged by being prevented from advancing her career and earning a higher salary than
16 she earns now upon mitigating her damages, has lost wages, benefits and prestige, and
17 has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to
18 her reputation and loss of enjoyment of life.

19      WHEREFORE, Madsen seeks judgment against Defendant Graci, individually,
20 for the following relief:

21           A.     Her damages in an amount to be proved at trial;

22           B.     An award of punitive damages;

23           C.     An award of her attorney fees and costs; and

24           D.     Such other such relief as seems just and proper.

25

26

JABURG|WILK
Attorneys at Law

1     **JURY TRIAL DEMAND**

2     Madsen demands a jury trial on all claims and issues set forth herein.

3     DATED this 3rd day of May, 2019.

4             **Jaburg & Wilk, P.C.**

5             s/ Kraig J. Marton

               Kraig J. Marton

6             Jeffrey A. Silence

               3200 N. Central Avenue, 20th Floor

7             Phoenix, AZ 85012

               Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JABURG|WILK
Attorneys at Law

**EXHIBIT 9**

DL Investigations & Attorney Support LLC
7501 N. 16th Street, Suite 200
Phoenix, AZ 85020
(602) 285-9901



CLERK OF THE
SUPERIOR COURT
FILED
K. NORTON, DEP

Inv. #

**132012**

# SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

2019 APR 22 AM 11: 18

**CHRISTINA M. MADSEN**

**Plaintiff / Petitioner,**

vs.

**CITY OF PHOENIX; et al.**

NO. **CV2019-006490**

**Defendant / Respondent.**

CERTIFICATE OF SERVICE

---

**Tina Nemeth**_____, the undersigned certifies under penalty of perjury: That I am fully qualified pursuant to RCP 4 (d), 4 (e), 45 (b) and/or ARS 13-4072, to serve process in this case, and received for service the following documents in this action:
**SUMMONS & COMPLAINT, CERTIFICATE OF ARBITRATION**

from _____**Kraig Marton c/o Jaburg & Wilk, P.C.**_____ on ____**4/17/19**____ ;
that I personally served copies of these documents on those named below in the manner and time and place shown; and except where noted, all services were made in Maricopa County, Arizona.

**NAME:** **CITY OF PHOENIX, c/o Phoenix City Clerk**

**DATE & TIME:** 4/17/19 12:38pm
**PLACE &** 200 W. WASHINGTON STREET 15TH FLOOR PHOENIX, AZ 85003, which is his/her place of business.
**MANNER:** By serving Connie Haesloop, Records Clerk, a person authorized to accept such service on their behalf, in person.

Description of the Named: Female, Age: 50's, Ht: 5' 3in., Wt: 155, Eyes: brown, Hair: brown, Ethnicity: Hisp., Other: glasses

**Statement of Costs**
| | |
|---|---|
| Services | $16.00 |
| Mileage | $24.00 |
| Sp. Handl. | |
| Witness | |
| Advances | |
| Cert. Prep | $15.00 |
| Other | |
| **Total** | **$55.00** |

**Affiant - Registered in**
**Maricopa County**

The above is covered by A.R.S. as amended 41-314 & 11-45 and Rules 4, 5 and 45.

**EXHIBIT 10**

DL Investigations & Attorney Support LLC
7501 N. 16th Street, Suite 200
Phoenix, AZ 85020
(602) 285-9901

 ORIGINAL



CLERK OF THE
SUPERIOR COURT
FILED
A. ROORIGUEZ, DEP
2019 APR 25 AM 11: 33

Inv. #
**132013**

**SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

**JEFF FINE, CLERK**

**CHRISTINA M. MADSEN**

Plaintiff / Petitioner,

vs.

**CITY OF PHOENIX; et al.**

Defendant / Respondent.

NO. *CV2019-006490*
CERTIFICATE OF SERVICE

Geoffrey Roberts , the undersigned certifies under penalty of perjury: That I am fully qualified pursuant to RCP 4 (d), 4 (e), 45 (b) and/or ARS 13-4072, to serve process in this case, and received for service the following documents in this action:

**SUMMONS & COMPLAINT, CERTIFICATE OF ARBITRATION**

from **Kraig Marton c/o Jaburg & Wilk, P.C.** on 4/17/19 ; that I personally served copies of these documents on those named below in the manner and time and place shown; and except where noted, all services were made in Maricopa County, Arizona.

**NAME:** **DEBORAH OSTREICHER, as an individual and in her official capacity**

**DATE & TIME:** 4/22/19 2:50pm
**PLACE &** 2485 E. BUCKEYE ROAD PHOENIX, AZ 85034, which is his/her place of business.
**MANNER:** In person.

4/17/19@12:15pm 2485 E. Buckeye Road, Phoenix, 85034 I was told that Deborah Ostreicher was not in at this time and that the Phoenix City Clerk should be served for her. I called the client and updated. Description of the Named: Female, Age: 50's, Ht: 5' 4in., Wt: 140, Eyes: brown, Hair: brown, Ethnicity: Cauc.

**Statement of Costs**
| | |
|---|---|
| Services | $16.00 |
| Mileage | $24.00 |
| Sp. Handl. | |
| Witness | |
| Advances | |
| Cert. Prep | $15.00 |
| Other | |
| **Total** | **$55.00** |

Affiant Registered in

Maricopa County

The above is covered by A.R.S. as amended 41-314 & 11-45 and Rules 4, 5 and 45.

**EXHIBIT 11**

Clerk of the Superior Court
*** Electronically Filed ***
M. King, Deputy
4/19/2019 2:51:00 PM
Filing ID 10374682

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000
Kraig J. Marton, #003816
kjm@jaburgwik.com
Jeffrey A. Silence, #029143
jxs@jaburgwik.com
Attorneys for Plaintiff

# SUPERIOR COURT OF ARIZONA

## IN MARICOPA COUNTY

| | |
|---|---|
| Christina M. Madsen, an individual, | Case No. CV2019-006490 |
| Plaintiff, | **ACCEPTANCE OF SERVICE** |
| v. | |
| City of Phoenix, a municipal corporation and a governmental entity; Deborah Ostreicher, as an individual and in her official capacity; and Michael Graci, as an individual and in his official capacity, | |
| Defendants. | |

I, Brad Schleier, state as follows:

1.      I am an Arizona licensed attorney.

2.      I currently represent Michael Graci and I have been authorized to accept service on his behalf.

3.      On behalf of Michael Graci, I hereby accept service of Summons, Complaint, and Certificate of Compulsory Arbitration.

20271-20271-00002\KJM\KMR\3481671.1

4.    My acceptance is as if Michael Graci had been personally served on the below date.

5.    Counsel for Plaintiff Christina Madsen and Defendant Michael Graci have conferred and agreed that Defendant Graci shall have up to and including May 20, 2019 to Answer or otherwise respond to Plaintiff's Complaint.

DATED this _19_ day of April, 2019.

Bradley H. Schleier
SCHLÉIER LAW OFFICES, P.C.
3101 N. CENTRAL AVENUE
SUITE 1090
Phoenix, Arizona 85012

JABURG|WILK
Attorneys at Law

2