**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue, Suite1090
Phoenix, Arizona 85012
Telephone:  (602) 277-0157
Facsimile:  (602) 230-9250

TOD F. SCHLEIER, ESQ. #004612
Tod@SchleierLaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Brad@SchleierLaw.com
*Attorneys for Cross-Claimant/Counter-Claimant Michael Graci*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Christina M. Madsen, an individual,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, a municipal corporation and a governmental entity; Deborah Ostreicher, as an individual and in her official capacity; and Michael Graci, as an individual and in his official capacity,<br><br>Defendants.<br>_____<br>Michael Graci,<br><br>Cross-Claimant;<br>Counter-Claimant,<br><br>v.<br><br>City of Phoenix,<br><br>Cross-Defendant,<br>and<br><br>Christina Madsen,<br><br>Counter-Defendant.<br>_____ | No. CV-19-3182-PHX-GMS<br><br>**CROSS/COUNTER-CLAIMANT MICHAEL GRACI'S CROSSCLAIMS AGAINST THE CITY OF PHOENIX AND COUNTERCLAIMS AGAINST CHRISTINA M. MADSEN** |

By reason of Plaintiff's original action and First Amended Complaint as well as Rule 13 Federal Rules of Civil Procedure, this Court has jurisdiction over Defendant/Cross-Claimant/Counterclaimant Michael Graci's (hereinafter "Graci") claims against Defendant/Cross-Defendant City of Phoenix (hereinafter "City") and Plaintiff/Counterdefendant Christina Madsen (hereinafter "Madsen").   Graci alleges the following:

**PARTIES, JURISDICTION AND VENUE**

1.    Graci was and is currently a citizen and resident of Maricopa County, Arizona and at all times relevant herein was employed with the City as its Aviation Superintendent for Airline Affairs and Real Estate of the Airport.

2.    The City is a municipal corporation and a governmental entity of the State of Arizona.  The City owns and operates the Phoenix Sky Harbor International, Goodyear and Deer Valley Airports.

3.    Madsen is a married woman and currently a resident of the State of North Carolina. At all times relevant herein Madsen was the former Deputy Director for the City's Aviation Business and Properties working for the City-owned Airport and resided in Arizona.

4.    All actions alleged herein by Madsen were performed on her own personal behalf and/or behalf of her marital community. The actions alleged herein were done while Madsen was employed with the City, during the course of her employment with the City, and under the color of law.

5.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 as this matter involves a federal question under Graci's claims of sexual harassment, hostile work environment and termination for opposing sexual harassment against the City were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et. seq.* ("Title VII").the Rehabilitation Act.

- 2 -

6.     This Court has supplemental jurisdiction over Graci's state law claims because said claims are so related to the federal claims alleged by Madsen and Graci and they form part of the same case or controversy pursuant to 28 U.S.C. §1367.

7.     The unlawful practices described herein were committed within Maricopa County, State of Arizona by the City and Madsen.  Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

8.     A Notice of Claim pursuant to A.R.S. §12-341.01 was served upon the City and Madsen on August 24, 2018.  Sixty (60) day have passed since the Notice was served.

9.     Graci also filed a charge of discrimination on the basis of sex and retaliation with the Arizona Civil Rights Division/Equal Employment Opportunity Commission on about August 8, 2018, Charge No. P18-0263; 35A-2018-00533.

10.    On June 3, 2019, Graci received the U.S. Department of Justice's Notice of Right to Sue dated May 23, 2019.

11.    Graci has complied fully with all prerequisites for jurisdiction in this Court under the Title VII.

12.    Jurisdiction of this Court is proper under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et. seq. ("Title VII").

13.    Graci is also pursuing other claims under federal law for violations of Title VII against the City of Phoenix as well as a claim under 42 U.S.C. §1983 against the Madsen for retaliating against Graci for his complaints of discriminatory behavior.

**FACTUAL BACKGROUND**

14.    Graci was hired by the City on or about July 17, 2017, as an Aviation Superintendent for Airline Affairs and Real Estate and worked through June 7, 2018.

15.    Graci came to work with the City after spending nearly twenty-five (25) years in the Aviation industry working for airlines such as JetBlue Airways, U.S. Airways, and America West Airlines.

16.     At the City, Graci reported directly to  Madsen  the City's Deputy Director for Aviation Business and Properties.

17.     Madsen had worked for the City of Phoenix at the Airport since January 4, 2016.

18.     At no time prior to Graci's reporting of sexual harassment or discriminatory behavior by his supervisor Madsen, was Graci made aware of any performance issues or placed on any performance improvement plans.

19.     Madsen subjected Graci, her subordinate, to sexual harassment soon after his hire, and Madsen continued to do so through the early part of 2018.

20.     Throughout Graci's one year of employment with the City, Madsen subjected Graci to sexual harassment, retaliation, and attempts of intimidation creating a hostile work environment for Graci.  Examples of Ms. Madsen's inappropriate conduct include:

a.     During a meeting on November 30, 2017, held in the Directors conference room, Madsen was giving Graci odd looks throughout the meeting making Graci uncomfortable.   Also in attendance was Ms. Debra Ostreicher, Sr. Executive in the Aviation Department, Ms. Charlene Reynolds, Assistant Director and several others.  After the meeting while in Madsen's office, Ms. Debra Ostreicher texted Graci.  When Madsen asked if the text was from Ms. Ostreicher, Graci replied in the affirmative.  Madsen then stated, "I'll bet she wants you up in her office," warned Graci that he should "watch himself" around Ms. Ostreicher and told him that Ms. Ostreicher "wanted" Graci (in a sexual manner).  Madsen then told Graci that "she's a woman and knows when a woman looks at a man with desire."  Graci felt uncomfortable with Madsen's inappropriate comments, which were completely unfounded.   Graci did meet with Ms. Ostreicher and nothing occurred.

b.     On various occasions from about August 2017 through December 2017, Madsen often kept Graci late at work after the staff had left for the evening.  She would regularly request that they meet after regular office hours for hours at a time.  Graci found that these meetings always discussed matters that could be discussed during regular business hours and

- 4 -

sometimes Madsen, instead used the time to engage in conversations about personal matters with Graci.

c.      Madsen's warped sense of reality was shown at a retirement party held at Graci's residence for a retiring subordinate employee.  Madsen and other work employees were invited to the party.  When Madsen arrived, Graci's spouse approached Madsen and introduced herself.  She then asked Madsen to help take care of Graci with all the extra work he was given, starting a new job, and in light of the fact  that Graci's son had recently passed away.  Instead of accepting Graci's spouse heartfelt words of concern for her husband, Madsen appeared offended and replied, "I can't take care of you husband, I already have a husband to take care of."  Surprised by the response, Graci's spouse replied she didn't mean it that way, she meant it as professional support for her husband. Ms. Madsen, just turned her head and walked away.

d.      In early January 2018, Madsen invited Graci to go out with her for a pedicure, which he also rejected.

e.      During this same time period, Madsen would not allow Graci to hire additional qualified female employees.  Madsen told Graci she was "putting her foot down" and would not allow Graci to hire Ms. Ann Fusco a candidate for a vacant Project Manager position.  Graci had interviewed and confirmed Ms. Fusco's qualifications, excellent performance reviews, reference checks and high recommendations for the position, and told Madsen of his decision to hire Ms. Fusco.  When Madsen "put her foot down" preventing Graci from hiring Ms. Fusco, Graci offered his resignation to Madsen due to her unsupportive and obstructive conduct.  Madsen started crying, walked to the door so Graci could not leave and asked Graci to stay.  Madsen told Graci she "would not be able to make it" without him, that she had "grown very fond" of him," and said  "don't make me beg you."  Madsen's conduct made Graci very uncomfortable and he contemplated going to Human Resources.

21.     On or around December 27, 2017, Ms. Janie Sue Bailey, from Human Resources and Ms. Charlene Reynolds separately met with Graci soon after the incident relating to the hiring of Ms. Fusco.

22.     With Ms. Bailey, Mr. Graci discussed the hiring situation and  Madsen's inappropriate overall behavior towards him. Ms. Bailey stated that she would discuss the issues with Ms. Reynolds.

23.     Later that day, Graci met Ms. Reynolds, the focus of the meeting was  a follow-up to the Bailey meeting and was primarily directed toward Ms. Madsen's actions in interfering with his efforts to hire his team.

24.      They both also asked Graci to stay employed with the City and also discussed Madsen not allowing Graci to hire Ms. Fusco.  Ms. Reynolds told Graci that she would speak with Madsen.

25.     Concerned about his job, Graci pled with Ms. Reynolds not to talk to Madsen and expressed his concern about Madsen retaliating against him if Madsen believed Graci was complaining about her.   Ms. Reynolds assured Graci that she would keep Graci's name out of the conversation, which in reality seemed like an impossibility.

26.     On January 1, 2018, Madsen completed Graci's three-month performance review which was filled with glowing superlatives regarding his performance.  In fact, at no time prior to this date had Madsen been critical of Graci's performance.

27.     Subsequently, in mid-January 2018, Madsen met with Graci and informed him that she had talked with Ms. Reynolds about the situation with Ms. Fusco and that he could hire Ms. Fusco for the job.

28.     Almost immediately after Ms. Reynolds spoke with Madsen, Madsen's attitude towards Graci changed.

29.     In late January 2018, Ms. Beth Benton from Spirit Airlines, one of the City's vendors, allegedly complained to Madsen about Graci not moving fast enough on the removal of some vending machines.

30.     When Madsen spoke to Graci about Ms. Benton's complaint, she was not concerned about the vending machine issue as much as telling Graci how Ms. Benton's complaint could turn into a sexual harassment complaint.

1    31.    Immediately, Graci felt Madsen was trying to intimidate him with a threat of

2    a sexual harassment complaint.  Also, Madsen's tone throughout the conversation was

3    condescending.

4    32.    On or about February 28, 2018, Graci was approached by a Public Relations

5    Manager, Jason Gitkin, who advised that Madsen had "uninvited" him to an afterhours PR

6    event with his airline customer, Southwest Airlines.  Graci asked if the meeting was

7    cancelled or simply his attendance was removed.  He replied to Graci that Madsen took

8    him off the list to the event which was just hours away.  At no time had Madsen informed

9    Graci that he was no longer invited to the event.

10    33.    Graci's concerns about Madsen came to fruition in late March 2018 when

11    Madsen accused Graci of harassing her Administrative Manager, Ms. Christy Gomez. The

12    claim was completely unfounded.

13    34.    Madsen told Graci that Ms. Gomez could "slap" Graci "with a sexual

14    harassment charge" because of Graci's demeanor.  However, when Ms. Gomez and Graci

15    met with Ms. Janice Pitts, Human Resources, it was Ms. Gomez who apologized to Graci

16    for her behavior and asked Graci for his forgiveness.  Graci again felt Madsen was

17    orchestrating and creating issues to threaten and intimidate Graci.

18    35.    Additionally, during the same time period in February 2018, Madsen

19    removed the real estate portfolio from Graci's portfolio allegedly because Graci had too

20    large a workload.  Graci disagreed with the decision explaining that he had been working

21    without a project manager for nearly six months and that he had finally hired a new project

22    manager which would alleviate the fact that he had been performing many of the project

23    manager responsibilities.  Madsen ignored Graci's request.

24    36.    Madsen's retaliation towards Graci continued into April 2018, when Madsen

25    provided Graci his six-month performance review on April 19, 2018, which was

26    approximately three months late.  Madsen designated six areas where Madsen claimed

Graci did not meet expectations. This was much different from Graci's review just three months earlier where he met expectations in all categories and was being lauded for his effort. In his written response, Graci pointed out that the alleged deficiencies were unsupported by the facts. Additionally, at no time prior to the review had Madsen discussed any of the alleged deficiencies.

37.     Additionally, throughout April 2018, Madsen criticized Graci about not completing certain tasks when in fact Graci had documented evidence demonstrating his tasks had been completed.

38.     Graci also learned in April 2018 that he had not been invited to the Business Summit which was held for all Aviation Management personnel. Several other employees, many of which held lower level positions than Graci were invited and repeatedly asked Graci why he was not in attendance.

39.     Following the negative review, and after providing a response to Madsen, Graci contacted Ostreicher since he had received no response from either Madsen or Ms. Reynolds. Graci felt like he was being treated wrongfully and felt he needed to resign or file a complaint with HR. Ostreicher stated that Graci should not resign, that he had accomplished a great deal in his tenure, and should just file a complaint.

40.     On Friday April 20, 2018, Graci received an email from Madsen's Administrative Assistant, Julissa Sosa, stating "effective May 21st, I am moving yor 1:1's (private meetings one-on-on) with Chris to 4-5 p.m." Graci asked Ms. Sosa who directed these meetings to be moved to late in the day. Sosa replied that Madsen gave her direction to change Graci's meeting times to the end of the day. Graci asked Sosa if all Madsen's direct reports 1:1's were changed as well. She replied in the negative, and noted that only his were moved.

41.     Based on these events, Graci once again met with Janice Pitts from HR on May 1, 2018 and reported Madsen's ongoing harassment and reported Madsen's comments and actions were sexual in nature.

42.     On May 2, 2018, Graci summarized the issues and submitted a written formal sexual harassment complaint against Madsen.

43.     Graci also met with the Equal Opportunity Department (EOD) Representative on May 7, 2018, and made the same report of sexual harassment against Madsen.

44.     Following Graci's reports, Madsen apparently had a conversation with Ms. Beth Benton, from Spirit Airlines and in follow-up to their conversation, on May 7, 2018 at 7:07 p.m., Ms. Benton emailed Madsen and Ms. Reynolds and complained that Graci acted unprofessionally towards her.

45.     The next day on May 8, 2017, Graci learned from his subordinate, Mr. Clifton Looper, Program Manager, that Madsen directed Mr. Looper to investigate Ms. Benton's complaint against Graci.

46.     On May 10, 2018, Ms. Reynolds informed Graci that she would be conducting the investigation into Ms. Benton's complaint.

47.     In light of the prior issue with Ms. Benton that somehow appeared to be orchestrated by Madsen, Graci was not surprised by hearing about Ms. Benton's complaint.   Consequently, Graci checked with employees that were present at his interactions with Ms. Benton and they all indicated that Graci did nothing inappropriate.

48.     Graci continued to feel harassed by Madsen and on May 15, 2018 he again reported Madsen's ongoing misconduct in his email to Ms. Pitts in HR, and copied Ms. Karen Zinn, Equal Opportunity Specialist.   Graci also attached Ms. Benton's alleged complaint for their review to demonstrate the baseless claims.

49. Incredibly within only a couple weeks of reporting the sexual harassment, Graci received two write ups from Madsen, both of which he disputed.

50. First, On May 16, 2018, Madsen issued Graci a five (5) page extensive "Memo of Expectations," (the "Memo") outlining alleged performance issues, which Graci disputes. Coincidentally, the Memo was predated May 1, 2018, the same day Graci initially reported the sexual harassment against Madsen, and most notably the Memo was written by Madsen.

51. In her Memo, Madsen provides Graci a laundry list of performance concerns from October 6, 2017 up to April 29, 2018. However, as of January 2018, Graci had received excellent performance reviews and Madsen had not brought these alleged performance issues to Graci's attention.

52. Additionally, Madsen's Memo re-hashed events previously addressed including the hiring of Ms. Fusco, the retaliatory removal of Graci's real estate duties in February, and Ms. Christy Gomez and Graci's meeting with Ms. Pitts, in HR, wherein Ms. Gomez apologized to Graci.

53. Graci wrote a rebuttal and corrections to the Memo of Expectations but was never afforded the opportunity to submit this as this was followed by the Notice of Inquiry and soon after termination.

54. At the same time, on May 16, 2018, Graci was scheduled to attend a meeting with the newly appointed FAA inspector assigned to Sky Harbor Airport. This was a mandated meeting and documented on Graci's calendar. As Graci was climbing the stairs to attend this mandatory meeting, Madsen was waiting for him and directed him to not attend this critical meeting as would not be needed. Graci did not attend the mandatory meeting as commanded by Madsen.

1    55.    Graci received a Notice of Inquiry (NOI) on May 29, 2018 about Graci's

2    non-attendance at the Condor Airlines Press Event, which was held at least eleven (11)

3    days earlier on May 18, 2018.

4    56.    Graci believed the NOI was completely unfounded and quickly submitted

5    his written explanation on May 31, 2018 in response to the NOI.

6    57.    Graci explained that in fact on the day of the press event on May 18, 2018 at

7    8:00 a.m. Graci was meeting with and hosting Mr. Maik Zerahn, a visiting Condor

8    Airlines Official, reviewing last minute matters and having Mr. Zerahn meet the City's

9    Public Relations (PR) team before going to the airport for arrival of the inaugural flight

10   and press event.  Mr. Zerahn had many questions about Security Deposit, Agreements, and

11   other planned PR and Media events.

12   58.    Graci also explained that as a result of Graci and Mr. Zerahn's pre-event

13   meeting taking longer, Graci had to reschedule a meeting with Mr. Peter Ospitale, a

14   Director with ASPTEA, The City's trade Association for administrative workers seeking

15   legal representation regarding the Memo of Expectations.

16   59.    Graci explained he had received the Memo only 48 hours earlier and was

17   extremely concerned about his job, and that his meeting with Mr. Ospitale further put

18   Graci behind schedule.

19   60.    Graci explained that he did attend the press event but arrived late and that he

20   "badged" back into the Corporate Office Building (COB).  Additionally, Graci noted that

21   the event was more of a social event than a substantive event in light of the fact that he had

22   already spent hours with Mr. Zerahn handling the business issues.

23   61.    The City of Phoenix terminated Mr. Graci on June 7, 2018, citing

24   performance issues and the NOI.

25   62.    Following his good faith reports of sexual harassment against his supervisor

26   Madsen, Graci was disciplined  and then terminated just 37 days later on June 7, 2018.

63.     At no time prior to his termination or thereafter had Graci been contacted to be interviewed for his May 1, 2018 Complaint of sexual harassment.  Moreover, during the month of May, he was unaware of any investigation performed by the City.

**COUNT ONE**
**VIOLATION OF TITLE VII**
**(Hostile Work Environment Sexual Harassment – Against Cross-Defendant City)**

64.     Graci incorporates by reference all above allegations as if fully set forth herein.

65.     The City discriminated against Graci in the terms and conditions of his employment on the basis of his sex in violation of Title VII as a result of the sexually hostile work environment.

66.     Graci was subjected to unwelcome sexual harassment.

67.     Graci reported his supervisor's ongoing sexual harassment and hostile work environment to the City on multiple occasions and the City failed to take any corrective action to stop the sexual harassment and protect him from the continued abuse even though reports started as early as December 2017.

68.     There was no evidence that the City took any action to investigate Graci's complaints of sexual harassment.

69.     The City instead terminated Graci on June 7, 2018, just 37 days following his last report of sexual harassment on May 1, 2018.

70.     The City's action constitutes a violation of Title VII.

71.     As a direct and proximate result of the City's violation of Title VII referenced herein, Graci has suffered lost wages and the value of benefits.

72.     As a direct and proximate result of the City's violation of Title VII described herein with regard to sexual harassment, Graci has suffered mental and emotional distress, pain and suffering, anger, depression, anxiety, humiliation and embarrassment.

**COUNT TWO**
**VIOLATION OF TITLE VII**
**(Retaliation – Against Cross-Defendant City)**

73.     Graci incorporates by reference all above allegations as if fully set forth herein.

74.     Graci engaged in protected activity when he opposed practices that violated Title VII of the Civil Rights Act of 1964.

75.     Graci reported sexual harassment and discrimnatory conduct as early as December 2017 and made his last report a mere 37 days prior to his termination.

76.     The City discriminated and retaliated against Graci in the terms and conditions of his employment when he was disciplined and terminated as a result of his opposition to practices that he believed to be gender discrimination and sexual harassment in violation of Title VII.

77.     As a direct and proximate result of the City's retaliation referenced herein, Graci has suffered lost wages and the value of benefits.

78.     As a direct and proximate result of the City's retaliation referenced herein, Graci has sustained damages in the form of emotional distress including but not limited to depression, anxiety, sleeplessness, and such other damages which may be proven at trial.

**COUNT THREE**
**INTENTIONAL INTERFERENCE WITH CONTRACT**
**AND CONTRACTUAL RELATIONSHIP**
**(Against Counter-Defendant Christina Madsen)**

79.     Graci incorporates by reference all above allegations as if fully set forth herein.

80.     A valid employment contractual relationship or business expectancy existed between Graci and the City.

81.     Madsen had knowledge of the employment relationship or business expectancy between Graci and the City.

82.     Madsen intentionally interfered inducing or causing a breach or termination of the employment contractual relationship or expectancy between Graci and the City with regard to her actions regarding Madsen's false allegations of about Graci's job

- 13 -

1    performance and workplace conduct that eventually led to the termination of Graci's
2    employment relationship with the City.

3          83.    As a direct and proximate result of Madsen's interference, Graci has
4    sustained economic damages in the form of loss of wages and the value of job benefits in
5    an amount to be proven at trial.

6          84.    As a direct and proximate result of Madsen's intentional interference, Graci
7    has also suffered damages in the form of emotional distress, anxiety, depression,
8    sleeplessness, loss of self-worth, loss of reputation in the community, his career, and
9    employment with the City.

10         85.    Madsen's conduct was willful, malicious and evidenced an evil mind and
11   Graci is, therefore, entitled to recover punitive and exemplary damages arising from
12   Madsen's tortious conduct.

13

14                               **COUNT FOUR**
15   **42 U.S.C. § 1983 – VIOLATION OF GRACI'S FOURTEENTH AMENDMENT**
     **RIGHT TO BE FREE FROM SEX DISCRIMINATION**
16               **(Against Counter-Defendant Christina Madsen)**

17         86.    Graci incorporates by reference all above allegations as if fully set forth herein.

18         87.    Individuals have a clear right, protected by the Fourteenth Amendment, to be
19   free from discrimination on the basis of sex in public employment. *See Davis v.*
20   *Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

21         88.    Madsen violated Graci's Fourteenth Amendment right to be free from
22   discrimination on the basis of sex in his public employment with the City when Graci was
23   terminated from his employment following his complaints of sexual harassment,
24   retaliation, and discrimination.

25         89.    Madsen participated in, directed, set in motion, acquiesced in, was consulted
26   about, knew of, ratified or approved the termination of Graci's employment relationship

with the City and therefore had direct personal participation in the deprivation of Graci's constitutional right of freedom from sex discrimination guaranteed by the   Fourteenth Amendment.

90.     Madsen's conduct constitutes a violation of 42 U.S.C. § 1983.

91.     As a direct and proximate result of Madsen's violation of Graci's constitutional rights, Graci has sustained economic damages in the form of loss of wages and the value of job benefits in an amount to be proven at trial.

92.     As a direct and proximate result of Madsen's violation of Graci's constitutional rights, Graci has also suffered damages in the form of emotional distress, anxiety, depression, sleeplessness, loss of self-worth, loss of reputation in the community, his career, and employment with the City.

93.     In addition, Graci is entitled to recover their attorneys' fees pursuant to 42 U.S.C. § 1988.

94.     In committing the acts alleged above, Madsen, in her individual capacity, acted maliciously and/or was guilty of a wanton and reckless disregard of Graci's constitutional rights, and by reason thereof, Graci is entitled to exemplary and punitive damages in an amount to be proven at trial.

WHEREFORE, Graci requests that judgment be entered against the City of Phoenix and Christina M. Madsen, jointly and severally, as follows:

1.     Declaring the acts and practices complained of herein are in violation of Title VII;

2.     General and Special damages to be proven at time of trial;

3.     Compensatory damages to be proven at the time of trial;

4.     Punitive damages pursuant to  42 U.S.C. §1983 against Madsen only;

5.     Prejudgment and post-judgment interest;

6.     Attorneys' fees and costs of suit; and

1    7.    For such other relief this Court deems just.

2                                  **JURY TRIAL DEMAND**

3         Pursuant to Rule 38 of the Federal Rules of Procedure, Cross/Counter Claimant

4    Michael Graci hereby demands a jury trial.

5         DATED this 6th day of June, 2019.

6                                              **SCHLEIER LAW OFFICES, P.C.**

7
                                               /s/Bradley H. Schleier
8                                              Bradley H. Schleier
                                               3101 North Central Ave., Suite 1090
9                                              Phoenix, Arizona 85012
                                               Brad@SchleierLaw.com
10                                             *Attorneys for Cross-Claimant/Counter-Claimant*
11                                             *Michael Graci*

12
                                **MAILING CERTIFICATE**
13         I hereby certify that on this 6th day of June, 2019, I electronically filed the foregoing
14   **CROSSCLAIMS AND COUNTERCLAIMS** with the U.S. District Court Clerk using the
     CM/ECF system, which shall send notification of such filing to the following:
15
16   Robert D. Haws, #012743
     rhaws@gustlaw.com
17   Megan E. Ritenour, #034677
     mritenour@gustlaw.com
18   GUST ROSENFELD, PLC
19   One East Washington St., Suite #1600
     Phoenix, Arizona 85004-2553
20   *Attorneys for Defendant Michael Graci*

21
     Kraig J. Marton, #003816
22   KJM@jaburgwilk.com
     Jeffrey A. Silence, #029143
23   JXS@jaburgwilk.com
24   JABURG & WILK, P.C.
     3200 North Central Avenue, 20th Floor
25   Phoenix, Arizona 85012
     *Attorneys for Plaintiff Christina M. Madsen;*
26   *Counter-Defendant Christina M. Madsen*

- 16 -

1   Debora L. Verdier, Bar #018676
2   dlv@manningllp.com
    Fatima M. Badreddine, Bar #030402
3   gmb@manningllp.com
4   MANNING & KASS ELLROD,
    RAMIREZ, TRESTER, LLP
5   3636 N. Central Ave., 11th Floor
    Phoenix, Arizona 85012
6   *Attorneys for Defendant City of Phoenix;*
7   *Cross-Defendant City of Phoenix*

8   Kathleen L. Wienke, Bar #011139
9   Kwieneke@wienekelawgroup.com
    Christina Retts, Bar #0237989
10  cretts@wienekelawgroup.com
11  WIENEKE LAW GROUP, PLC
    1095 West Rio Salado Parkway, Suite 209
12  Tempe, Arizona 85281
    *Attorneys for Defendant Deborah Ostreicher*
13

14
    /s/ Mary H. Portillo
15

16

17

18

19

20

21

22

23

24

25

26

                                 - 17 -