**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina M Madsen, | No. CV-19-03182-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |
| Michael Graci, | |
| Cross-Claimant, | |
| v. | |
| City of Phoenix, | |
| Cross-Defendant. | |

Pending before the Court is Defendant/Cross-Defendant City of Phoenix's ("Defendant") Motion for Summary Judgment Against Plaintiff Christina Madsen ("Madsen"). (Doc. 159.) Also before the Court is Defendant/Cross-Defendant's Motion for Summary Judgment as to Cross-Claimant Michael Graci ("Graci"). (Doc. 161.) For the following reasons, Defendant's Motion against Madsen is granted in part and denied in part and Defendant's Motion against Graci is granted.

/ / /

# BACKGROUND

Madsen was the Deputy Director of Business and Properties ("B&P") for Defendant's Aviation Department. (Doc. 158 ¶ 1.) Madsen reported to Charlene Reynolds and worked alongside Deborah Ostreicher, who worked in a separate division. (*Id.* ¶¶ 2, 5.) Beginning in July 2017, Graci worked as the Assistant Superintendent in B&P and reported directly to Madsen. (*Id.* ¶¶ 3–4.)

Madsen and Graci both assert that the other harassed them during their working relationship. Madsen claims that she began reporting Graci's alleged sex-based comments in December 2017. (Doc. 160-2, Ex. 4 at 8.) After she allegedly reported Graci's conduct, Madsen asserts that Ostreicher, alleged to be a friend of Graci's, began communicating information essential to Madsen's job only to Madsen's male subordinates and that Ostreicher instructed her direct report, Jordan Feld, to be condescending towards Madsen. (Doc. 167 ¶¶ 5, 16, 19.)

On May 1, 2018, Graci complained to Aviation HR Supervisor Janice Pitts about Madsen's conduct. (Doc. 158 ¶ 33.) On May 3, Reynolds removed Madsen as Graci's supervisor and assigned Graci to Tyler Maheu. (*Id.* ¶ 35.) Later, during a June 1 meeting, Maheu claims he made the decision to terminate Graci's employment. (*Id.* ¶ 44.) On June 7, Maheu terminated Graci's employment. (*Id.* ¶ 45.)

Following Graci's termination, Madsen continued working for Defendant. In September 2018, Madsen emailed Reynolds about how Feld and Ostreicher's behavior was creating a hostile work environment for her. (*Id.* ¶ 48.) On December 18, 2018, the City Manager sent out a memo announcing that Ostreicher would be transferred to the Mayor's Office in January 2019, which Madsen testified seeing. (*Id.* ¶ 49.) On December 20, Madsen issued a Notice of Claim and Notice of Constructive Discharge to Defendant. (*Id.* ¶ 50.) Following Ostreicher's first day at the Mayor's office on January 2, 2019, Madsen resigned from her employment with Defendant on January 4. (*Id.* ¶¶ 51–52.)

Madsen brought suit against Defendant, and other defendants who have since been terminated, on April 12, 2019. Graci also asserts a crossclaim against Defendant.

Defendant now moves for summary judgment on Madsen's claims and Graci's crossclaims.

**DISCUSSION**

### I. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

### II. Analysis[1]

#### A. Hostile Work Environment

To state a claim for hostile work environment under Title VII, a plaintiff must show: "(1) that he [or she] was subjected to verbal or physical conduct because of his [or her sex];

---

[1] Madsen and Graci both filed their controverting statements of facts and objections to Defendant's statement of facts in separate documents. Their statements of facts exceed the ten-page limit required by the Court. *See* (Doc. 46 ¶ 8(c)). Accordingly, with the exception of checking the record citation for any necessary facts, the Court only considers the first ten pages of Madsen and Graci's statements of facts. (Docs. 167, 170.)

(2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (internal citations and quotations omitted). In determining whether a work environment is sufficiently hostile, a court examines the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not create a hostile work environment. *Id.* (quoting *Faragher*, 524 U.S. at 788). The plaintiff must show that the work environment was both subjectively and objectively hostile. *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871–72 (9th Cir. 2001).

To hold an employer liable, a plaintiff must demonstrate that the employer knew or should have known about the conduct and did not take sufficient steps to address it. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1119 (9th Cir. 2004).

### 1. Madsen

#### A. Because of Sex

A reasonable juror could find that the conduct forming Madsen's hostile work environment claim is based on sex. Madsen presents evidence that Graci often acted angry towards her and sometimes scared her. (Doc. 167 ¶ 11.) Evidence in the record, such as Maheu's testimony that Graci's angry temperament seemed to come out more against females, supports Madsen's argument that Graci's aggression towards her was based on sex. (*Id.* ¶¶ 12–13.)[2]

/ / /

---

[2] Madsen also bases her hostile work environment claim on Graci's alleged sex-based comments, Ostreicher only communicating with Madsen's male subordinates, and Feld's condescending behavior. (Doc. 166 at 9–10.) This conduct is not nearly severe or pervasive enough to establish a hostile work environment claim. Accordingly, the Court only focuses on whether Graci's angry temperament creates a sufficient jury question.

- 4 -

### B. Severe or Pervasive

Madsen testified that when she had conversations with Graci about disciplinary actions or his behavior, he would become angry, insubordinate, and sometimes scary. (Doc. 167-2, Ex. 1 at 37.) For instance, when Madsen told Graci that certain comments he made to an individual were inappropriate, Graci allegedly leaned towards her with an "angry and intimidating demeanor" and said that the individual was a bitch and a liar. (Doc. 160-2, Ex. 2 at 37–39.) On another occasion, Graci allegedly screamed at Madsen and used vulgar language. (*Id.* at 84-85.) Madsen asserts that Graci's conduct made her afraid of him. (Doc. 167 ¶ 32.) Because of his conduct, Madsen asserts that her health suffered. (*Id.* ¶¶ 15, 63.) Taken together, a reasonable jury could find that Graci's alleged aggression was sufficiently severe or pervasive as to alter the conditions of Madsen's employment. *See, e.g.*, *E.E.O.C. v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 843–47 (9th Cir. 2005) (finding conduct sufficiently severe where an employee exhibited a "pattern of verbal and physical intimidation").

### C. Employer Liability

Finally, a reasonable juror could find that Defendant is liable. Madsen presents evidence that she reported that she was afraid of meeting with Graci alone. (Doc. 167 ¶¶ 29, 31.) Although it is not clear whether Madsen tied her report about being afraid of Graci to her sex, Madsen's alleged reports of Graci's sex-based comments, (*id.* ¶ 8,) and HR Representative Janie Sue Bailey's testimony that Madsen may have mentioned to her that Graci was "chauvinistic" and not "kind to women," (Doc. 160-2, Ex. 6 at 182) allow the reasonable inference that Defendant had notice that Graci's conduct was based on sex. To the extent Reynolds and other HR representatives deny that Madsen reported harassment based on sex, that is a question of fact for the jury.

Madsen also presents evidence that Defendant failed to appropriately respond to her complaints. Madsen's assertion that Defendant did not investigate her complaints is supported by evidence that HR did not interview relevant witnesses, such as Reynolds and Graci, (Doc. 167 ¶ 35,) and Madsen presents evidence that HR refused to supervise her

1  meetings with Graci.  (*Id.* ¶ 28.)  Accordingly, Defendant's motion to dismiss Madsen's
2  hostile work environment claim is denied.

### 2. Graci

Graci alleges that he was subjected to a hostile work environment due to sex based on the following conduct: (1) Madsen told Graci that Ostreicher desired him; (2) Madsen told Graci that he should be cautious around certain other employees because they could sue him for sexual harassment; (3) Madsen told Graci that another employee thought he was cute; and (4) Madsen stayed after work hours with Graci in her office with the door closed.  (Doc. 169 at 18.)

Graci fails to establish his hostile work environment claim.  First, Graci fails to show that Madsen requiring Graci to stay after work in her office was based on sex.  *See Aoyagi v. Straub-Clinic & Hosp., Inc.*, 140 F. Supp. 3d 1043, 1057–58 (D. Haw. 2015) (dismissing a hostile work environment claim where the defendant's statements could not be linked to the plaintiff's race).  Second, under the paucity of circumstances presented by Plaintiff, no reasonable juror could find that warning another about sexual harassment suits is *itself* sexual harassment.  Finally, although the comments about Ostreicher and the employee thinking Graci is cute are arguably based on sex, these two isolated incidents are not nearly severe enough to create a hostile work environment.  *See, e.g.*, *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2003) (finding two derogatory comments about Hispanics not enough to support a hostile work environment claim); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1031 (9th Cir. 1990) (finding no hostile work environment despite allegations that the employer made racially offensive slurs and posted a racially offensive cartoon).  Accordingly, Graci's hostile work environment claim is dismissed.

### B. Disparate Treatment

To establish a prima facie case of discrimination, a plaintiff must prove, in part, that "the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802 (1973)). To be similarly situated, the comparator must "have similar jobs and display similar conduct." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (internal quotation marks and citation omitted).

Madsen identifies Graci as the comparator for her disparate treatment claim but provides no argument on how Graci is a similarly situated employee. As Madsen fails to carry her burden, Madsen's disparate treatment claim is dismissed.

### C. Retaliation

Title VII prohibits retaliation against an employee because he or she has opposed an unlawful employment practice. 24 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that (1) she or he engaged in a protected activity; (2) she or he suffered an adverse employment decision; and (3) there was a causal link between the two. *Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997).

#### 1. Madsen

At the prima facie stage, "[t]he causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Poland v. Chertoff*, 494 F.3d 1174, 1180 n.2 (9th Cir. 2007) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). Temporal proximity between the protected activity and the negative employment action can support a finding of a causal link. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). In addition to proximity in time, "the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

Madsen fails to show that Graci or Ostreicher retaliated against her because of protected activity. First, Madsen does not identify how Graci retaliated against her. Second, Madsen does not present sufficient evidence for a reasonable juror to find that Ostreicher knew about Madsen's complaints against Graci or herself. That Ostreicher and Graci were friends and that Ostreicher looked at Madsen while discussing "HR issues" is

insufficient evidence of knowledge. (Doc. 166 at 15–16.) Accordingly, Madsen's retaliation claim is dismissed.

### 2. Graci

"An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013). The reasonableness of an employee's belief is assessed according to an objective standard with "due allowance . . . for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." *Moyo v. Gomez*, 32 F.3d 1382, 1385–86 (9th Cir. 1994). Sexual harassment is actionable under Title VII only if it is "so severe or pervasive as to alter the conditions of [the victim's] employment[;]" simple teasing, offhand comments, or isolated incidents do not suffice. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001) (internal quotations and citation omitted). Graci reported the following alleged harassment to Pitts: (1) Madsen told Graci one time that Ostreicher "wanted" him; (2) Madsen warned Graci about other employees potentially filing sexual harassment suits against him; (3) Madsen treated Graci harshly in meetings; (4) Graci was not invited to the Aviation Business Summit; (5) Madsen subjected Graci to a "vile and vicious one-on-one meeting;" and (6) Madsen required Graci to work late in closed-door meetings. (Docs. 169 at 12; 170 ¶¶ 5, 40.)

No reasonable person could believe that the conduct detailed above violated Title VII. Graci fails to show that the conduct alleged in (3), (4), (5), or (6) is based on sex or that a warning about sexual harassment lawsuits is itself sexual harassment. Finally, no reasonable person could find that Graci's singular comment about Ostreicher "wanting" him is "so severe or pervasive as to alter the conditions of [Graci's] employment." *Breeden*, 523 U.S. at 270. Accordingly, as Graci's report to Pitts was not protected activity, Graci's retaliation claim is dismissed.

/ / /

/ / /

### D. Constructive Discharge

Constructive discharge occurs where "the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (internal quotations and citation omitted). To demonstrate constructive discharge, Madsen must point to facts from which a jury could infer "conditions so intolerable that a reasonable person would leave the job." *Id.* There must be "aggravating factors, such as a continuous pattern of discriminatory treatment." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990) (internal quotations and citation omitted).

Madsen bases her constructive discharge claim on Graci's alleged sex-based comments, Defendant's "differential treatment" of her complaints versus Graci's complaints, and Ostreicher's "retaliation." (Doc. 166 at 17.) At the time of Plaintiff's resignation on January 4, 2019, however, Defendant had already terminated Graci's employment more than six months prior and moved Ostreicher to the Mayor's office. Madsen fails to show that her working conditions, as of January 4, were sufficiently intolerable. With no evidence that Ostreicher had physically hurt or threatened Madsen in the past, Ostreicher's mere return to Madsen's work following her removal would not lead a reasonable person to leave their job. Therefore, Madsen's constructive discharge claim is dismissed.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant City of Phoenix's Motion for Summary Judgment Against Plaintiff Christina Madsen (Doc. 159) is **GRANTED** in part and **DENIED** in part. Madsen's disparate treatment, retaliation, and constructive discharge claims are dismissed. Madsen's hostile work environment claim remains.

/ / /

/ / /

**IT IS FURTHER ORDERED** that Cross-Defendant City of Phoenix's Motion for Summary Judgment as to Cross-Claimant Michael Graci (Doc. 161) is **GRANTED**.

Dated this 21st day of September, 2021.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge