**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina M. Madsen, | No. CV-19-03182-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

Before the Court is Defendant's Daubert Motion to Exclude Plaintiff's Expert, Sue Ellen Bullock (Doc. 236). For the following reasons, Defendant's motion is granted in part and the opinion testimony of Sue Ellen Bullock, LICSW is excluded in part.

**BACKGROUND**

This case arises out of Christina Madsen's ("Plaintiff") employment by, and ultimate departure from, the Aviation Department of the City of Phoenix. The relevant facts and procedural history are recounted in the Court's summary judgment order. *See Madsen v. City of Phoenix*, No. CV-19-3182-PHX-GMS, 2021 WL 4305967, at *1 (D. Ariz. Sept. 22, 2021). Plaintiff indicates she intends to call two expert witnesses at trial: Laura Ingegneri ("Ms. Ingegneri"), to offer her opinion on HR practices;[1] and Sue Ellen Bullock, LICSW ("Ms. Bullock") to testify on "her diagnosis and treatment of [Plaintiff]'s

---

[1] The Court has already found Ms. Ingegneri's expert testimony admissible at trial. *See Madsen v. City of Phoenix*, No. CV-19-3182-PHX-GMS, 2020 WL 5057652, at *2–4 (D. Ariz. Aug. 27, 2020).

mental and emotional conditions." (Doc. 246 at 2.) Ms. Bullock is a licensed clinical social worker who met with Plaintiff across six appointments in 2019 and 2020 before drafting her report. (Doc. 236-1 at 2.) Defendant moves to exclude Ms. Bullock's testimony, arguing that (1) she is not qualified to diagnose Plaintiff or opine on her medical conditions, (2) her opinions were formed without the use of any methodology and are not reliable, (3) her testimony would uncritically vouch for the truth of Plaintiff's allegations, and (4) she is unable to testify on the cause of Plaintiff's diagnosis. (Doc. 236 at 2.)

**DISCUSSION**

**I.	Legal Standard**

Pursuant to Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Court acts as a gatekeeper to ensure the proffered testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). The Court is afforded broad discretion when acting in its gatekeeper role. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–53 (1999). However, "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 588). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

## II.     Analysis

Defendant challenges Ms. Bullock's qualifications on several grounds: (1) that she is not qualified to diagnose Plaintiff, (2) that she is not qualified to offer opinions on the relationship between psychological stress and physical symptoms, (3) that she is not qualified to opine on Plaintiff's physical ailments, and (4) that she is not qualified to offer an opinion on whether Plaintiff's reputation has been harmed. (Doc. 236 at 9–11.) Plaintiff argues Ms. Bullock is qualified to diagnose Plaintiff's mental health conditions based on her thirty years as a licensed social worker, and that she does not intend to offer Ms. Bullock's opinions on several issues identified by Defendant. (Doc. 246 at 10–11.)

Rule 702 endorses experts who qualify based on "knowledge, skill, experience, training, or education." Plaintiff proffers Ms. Bullock as a licensed clinical social worker credentialled in North Carolina and Alabama[2] with twenty-seven years of experience as "an administrator, case manager, clinician, and teacher to diverse populations." (Doc. 236-6 at 51); (Doc. 236-1 at 6.) She has a master's degree in social work from Tulane University with a certificate in gerontology, and has worked as a therapist since at least 1998. (Doc. 236-1 at 7.) In her deposition, she indicated that she first sought training on the treatment of trauma in 2002, but that she was retrained "six or eight years later" because she "really felt like [she] was not proficient enough." (Doc. 236-2 at 39.) She further represented that she took 181 units of continuing education between 2019 and 2020, when only 40 units were required under Alabama law to maintain her licensure. (Doc. 236-6 at 53.) Some of these units of continuing education were related to trauma, but she did not specify how many. *Id.* at 54–55. She also indicated in her deposition that she belongs to an interdisciplinary group of mental health professionals who discuss recent developments in treating trauma. *Id.* at 56. Neither her training on the treatment of trauma, nor her units of continuing education, nor her affiliation with the interdisciplinary group are reflected on her CV.

---

[2] Ms. Bullock's CV does not state that she is licensed in either state, nor does it indicate when she obtained these licenses. (Doc. 236-1 at 6.)

As a preliminary matter, Plaintiff is correct that as a licensed clinical social worker, Ms. Bullock would be entitled to diagnose patients in North Carolina.[3] Under North Carolina law, licensed clinical social workers are entitled to diagnose patients as part of their practice. 21 N.C. Admin. Code 63.0102(11) (2022). Diagnosis is defined as "the process of distinguishing . . . among. . . mental, emotional, addictive, behavioral, or developmental disorders and conditions within a psychosocial framework on the basis of their similar and unique characteristics consistent with American Psychiatric Association or World Health Organization classification systems." *Id.* 63.0102(12).

However, licensure in social work alone does not establish that an individual is qualified to offer opinion testimony on diagnoses of emotional and mental disorders based on their education, training, and experience: Courts generally require the proponent of the expert to also establish that the expert has experience forming the applicable diagnoses. *See, e.g.*, *Lee v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 10-cv-392-CWR-LRA, 2012 WL 92363, at *3 (D. Miss. Jan. 11, 2012) (finding licensed clinical social worker did not have qualification to offer expert opinion that plaintiff was diagnosed with PTSD despite entitlement to diagnose under Louisiana law because the sole indication of his expertise in diagnosing PTSD was a single 15-hour continuing education course); *State v. Gamez*, 745 S.E.2d 876, 879–80 (N.C. Ct. App. 2013) (holding that North Carolina-licensed social worker was qualified by way of her knowledge, skill, experience, training, or education to diagnose the victim with PTSD when social worker testified that she made "mental health diagnoses as part of her treatment model" and was familiar with and "routinely made mental health diagnoses using the DSM-IV"); *Smith v. City of the Dalles*, No. 16-cv-1771-SI, 2021 WL 2251845, at *3 (D. Or. May 13, 2021) (finding licensed social worker qualified to testify about the "experiences and trauma suffered by Plaintiff" when social worker held a master's degree in social work and had "worked extensively in positions involving the diagnosis and treatment of mental trauma").

---

[3] Licensed clinical social workers in Alabama are not expected to diagnose patients but are permitted to form "diagnostic impression[s]." Ala. Admin. Code r. 850-X-2-.01 (2021).

Ms. Bullock is entitled under North Carolina law to diagnose patients with mental health disorders, and has experience treating and assessing patients. (Doc. 236-1 at 6.) As such, she has met the minimum threshold to show she is qualified to testify about her treatment of Plaintiff and the diagnoses she formed in the course of treatment that were properly disclosed in her report.[4]  Ms. Bullock may offer testimony on these limited grounds.

However, Ms. Bullock is not qualified to testify on the remaining grounds identified by Defendant.  Plaintiff has not identified any basis for Ms. Bullock's qualifications to testify on (1) any link between Plaintiff's mental health and her physical condition, (2) issues of causation linking Plaintiff's employment for Defendant to her diagnoses, or (3) or the harm to Plaintiff's reputation that she suffered.  Ms. Bullock is precluded from giving testimony those grounds.

## CONCLUSION

Ms. Bullock's proposed testimony is excluded in part.  She may testify as to her treatment and diagnosis of Plaintiff, but may not testify as to any issues of causation, connections between Plaintiff's mental health and her physical condition, or harm to Plaintiff's reputation.

**IT IS THEREFORE ORDERED** that Defendant's Daubert Motion to Exclude Plaintiff's Expert, Sue Ellen Bullock (Doc. 236) is **GRANTED in part and DENIED in part.**

Dated this 14th day of April, 2022.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge

---

[4] Ms. Bullock is precluded from giving testimony on the issue of "brain changes," as this topic was not included in her expert report.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them").