

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Alden A. Thomas, #031900
aat@jaburgwilk.com
Thomas S. Moring #021247
tsm@jaburgwilk.com
Maria Crimi Speth (012574)
mcs@jaburgwilk.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina M. Madsen<br><br>                Plaintiff,<br>v.<br><br>City of Phoenix,<br><br>                Defendants. | Case No. 2:19-cv-03182-GMS<br><br>**PLAINTIFF CHRISTINA MADSEN'S MOTION FOR ATTORNEY FEES AND RELATED NON-TAXABLE EXPENSES** |

Pursuant to Rule 54(d)(2), Fed.R.Civ.P., and LRCiv 54.2, Plaintiff Christina Madsen ("Madsen") respectfully moves for an award of her attorney fees and related non-taxable expenses incurred in prosecuting this action against the City of Phoenix. This Motion is supported by the following Memorandum of Points and Authorities and supporting documentation required by LRCiv 54.2(d)(1)-(4), including a statement of consultation, client fee agreement, itemized statement of fees and expenses, and declarations of moving counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Pursuant to FRCP Rule 54(d)(2), LRCiv 54.2, and 42 U.S.C. § 2000e-5(k), Madsen respectfully requests that this Court enter an Order awarding her reasonable

attorney fees and costs incurred in prosecuting her claims against the City of Phoenix. After removing those itemized entries that relate solely to Madsen's claims against Defendants Ostreicher and Graci as individuals and claims Graci asserted against Madsen, Madsen has calculated her attorney fees to be $480,770 and non-taxable expenses to be $21,608.45. *See* Declaration of Alden Thomas, attached hereto as **Exhibit "A"** and Declaration of Maria Crimi Speth, attached hereto as **Exhibit "B"** incorporated by reference.

## II.   Eligibility

LRCiv 54.2(1) requires a fee applicant to specify the judgment and cite the applicable statutory authority upon which the movant seeks an award of attorneys' fees and related non-taxable expenses. This section also must set forth a description of the nature of the case and must identify the claims as to which the party prevailed and the claims or defenses as to which the party did not prevail.

Madsen seeks her attorney fees and non-taxable costs under 42 U.S.C. § 2000e-5(k), which provides that a court "in its discretion, may allow the prevailing party... reasonable attorney's fees (including expert fees) as part of the costs." Non-taxable costs include out-of-pocket litigation expenses "that would normally be charged to a fee paying client" that do not fall within the categories listed in 28 U.S.C. § 1920 (defining taxable costs). *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005); *Harris v. Marhoefer*, 24 F. 3d 16, 19 (9th Cir. 1994). Although not an exhaustive list, recoverable non-taxable costs include expenses for: service of summons and complaint, service of trial subpoenas, postage, investigators, hotel bills, meals, traveling and parking, messengers, records and copying, etc. *Id.*; *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1046 (C.D. Cal. 2012).

Madsen filed a complaint against the City of Phoenix on April 12, 2019, alleging violations of Title VII, 42 U.S.C. § 1983, and other Arizona state laws arising out of the

workplace conduct of Michael Graci toward Madsen. Madsen seeks her fees based on the judgment in her favor in the amount of $510,000. (Doc. 316).

On July 14, 2020, the Parties filed a Joint Stipulation to Dismiss Count Three (42 U.S.C. § 1983 claims against all Defendants), Count Five (Intentional Interference with Contract and Contractual Relations against Defendants Ostreicher), and Count Six (Defamation against Defendant Graci). After the Court granted the stipulation, only Madsen's Title VII and Arizona Civil Rights Act ("ACRA") claims against the City remained. The Court granted the City's Motion for Summary Judgment, in part, dismissing Madsen's Title VII retaliation claim and her alternative theories for discrimination under Title VII, including constructive discharge. Madsen tried her Title VII hostile work environment ("HWE") claim, and the jury returned a $510,000 verdict in her favor.

### A. Claims Against and by Individuals

Madsen does not seek recovery of fees she incurred solely related to claims she asserted against individual Defendants Ostreicher and Graci and claims Graci asserted against Madsen. Madsen has undertaken her best efforts to identify and remove fee and cost entries incurred solely related to those claims and defenses. *See* Exhibit "B."

### B. Claims Related to the Hostile Work Environment Claim

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *See Hensley v. Eckerhart*, 461 U.S. 424, 35, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). "A plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). "The prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar*, 506 U.S. at 113.

In *Hensley*'s wake, the Ninth Circuit has directed district courts to follow a two-part analysis in those cases where plaintiffs achieved only partial success. *Schwartz v. Sec. of Health & Human Services*, 73 F. 3d 895, 901 (9th Cir. 1995). At the first step,

the court must determine whether the unsuccessful claims were related to the successful claims. If the claims are related, the court must then evaluate the significance of the results obtained in relation to the hours expended. *Id.*

"[R]elated claims involve a common core of facts *or* are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (*citing Hensley,* 461 U.S. at 435, 103 S.Ct. 1933). Madsen seeks fees on claims related to her HWE claim that involved a common core of facts: Madsen's employment at the City, the discriminatory conduct she was subjected to (including Graci's use of gender-based defamatory statements and hostility), the City's failure to remedy her concerns, and the harm Madsen suffered as a result *See Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (claims related when they "arose out of a common core of facts and common course of conduct: Plaintiff's arrest, detention, and prosecution"); *Rudebusch v. Ariz.*, No. 95-CV-1313-PCT-RCB, 2007 WL 2774482, at *6 (D. Ariz. Sept. 21, 2007) (claims related when they arose from forty-three professors' employment at a university).

Furthermore, these claims arose from related legal theories. Her Title VII, ACRA and 42 U.S.C. § 1983 claims (Counts One-Four) all arise from the gender-based discrimination, harassment, and/or retaliation Madsen experienced while employed by the City. *See Ariz. v. ASARCO LLC*, 773 F.3d 1050, 1061 (9th Cir. 2014) (affirming attorney fee award when plaintiff prevailed only on her gender discrimination claim, but not her retaliation and constructive discharge claims); *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 518 (9th Cir. 2000) (declining to reduce attorney fee award when plaintiff prevailed on her Title VII retaliation claim, but not her claims for discrimination and injunctive relief).

"However, a determination that certain claims are not related does not automatically bar an award of attorney's fees associated with those unrelated claims; work performed in pursuit of the unrelated claims may be inseparable from that performed in furtherance of the related or successful claims." *Thomas v. City of*

4

*Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005); *Webb v. Sloan*, 330 F.3d 1158, 1169 (court "should exclude the hours spent on [unrelated] claim only if those hours can be isolated"); *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 518 (9th Cir. 2000) (holding Title VII retaliation claim was inextricably intertwined with plaintiff's discrimination claims and time spent on discrimination claim contributed towards success on retaliation claim).

Here, except for the claims against and by the individuals, there is a common core of facts as well as related legal theories, and counsel's time was "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley,* 461 U.S. at 435. In such a case the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Id.*

### III.   **Entitlement**

LRCiv 54.2(2) requires a movant to discuss the applicable factors deemed relevant in determining whether attorneys' fees and related non-taxable expenses should be allowed, with citations to the relevant legal authority. Under Title VII, the Court may award attorney's fees and costs to the prevailing party. 42 U.S.C. § 2000e-5(k). Plaintiffs who prevail under Title VII are entitled to attorneys' fees in "all but special circumstances." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978). "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12, (1992). This includes when a plaintiff obtains a judgment "forcing [the defendant] to pay an amount of money [it] otherwise would not have paid." *Id.* at 113.

LRCiv 54.2(2) also requires that if the moving party claims she is entitled to fees for preparing the motion and memorandum for award of attorneys' fees and related non-taxable expenses, she should cite the applicable authority supporting the request. Requires. Awards should include the fees incurred in connection with the fee application, *Rosenfeld v. Southern Pacific Co.*, 519 F. 2d 527, 530-31 (9th Cir. 1975), as well as fees incurred on post-trial motions. *Dailey v. Société Générale*, 915 F. Supp. 1315, 1333 (S.D.N.Y. 1996). In addition, out-of-pocket disbursements which constitute non-taxable costs are also included. *Harris*, 24 F. 3d at 19.

### IV.   Reasonableness of the Requested Award

In determining whether requested attorneys' fees are reasonable, courts apply the lodestar method. *See, e.g., Reed v. Purcell*, No. CV-10-2324-PHX-JAT, 2011 WL 5128142 at *4 (D. Ariz. Oct. 31, 2017). The lodestar approach consists of two steps. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "First, the court establishes a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate," excluding from the requested amount "any hours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal citation omitted). Then, in rare cases, "the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Id.* (internal citation omitted).

At the heart of this inquiry is whether Plaintiff's "accomplishments in this case justify the fee amount requested." *Thomas v. City of Tacoma*, 410 F.3d 644, 650 (9th Cir. 2005) (reversing denial of attorney's fees to plaintiff who prevailed on only one claim). Here, Madsen received a unanimous jury verdict for $510,000, which exceeded the relief she requested by $10,000.

The total amount of fees and expenses requested by Madsen is reasonable. When calculating the amount of attorney fees to be awarded in litigation, the district court applies the lodestar method, multiplying the number of hours reasonably expended by a

6

reasonable hourly rate. *Hensley*, 461 U.S. at 433. "By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he [or she] was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.2008).

In calculating the lodestar, the court should consider any of the relevant factors listed in LRCiv 54.2(c)(3) and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975). See *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1264 n. 11 (9th Cir.1987) (noting that the Ninth Circuit no longer requires that the district court address every factor listed in *Kerr*). The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70. "The court considers only those Kerr factors it deems relevant to the present circumstances." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1221-22 (W.D. Wash. 2014).

Analyzing the factors identified in *Kerr* and Local Rule 54.2(c)(3), it is evident that the attorneys' fees sought here are reasonable and should be awarded to Madsen.

1.  Time and Labor Required of Counsel

Counsel expended significant time and effort in pursuing Madsen's claims. *See* Exhibit "A". The specific task-based and itemized statement of fees and expenses is attached to the Declaration of Ms. Speth at Exhibit "B", and reflects that the time spent and expenses incurred were reasonable and necessary under the circumstances. *Id*.

As the Court is aware from the sheer number of entries on the docket (316) as well as the nature of those entries, this was a hard-fought case with significant

7

discovery, substantial motion practice, and a trial. Twelve witnesses were deposed, and some witnesses were deposed over several days (including Madsen, Reynolds, and Maheu) or were deposed twice (Bailey). There were numerous written discovery requests/responses and MIDP disclosures. The City also filed numerous motions to which Madsen responded (or otherwise opposed) and the Court denied, including:

- Motion to Extend the Deadline to Participate in Good Faith Settlement Discussions (Doc. 55)[1];
- Motion for Cost Bond (Doc. 115);
- *Daubert* Motion to Exclude Laura Ingegneri (Doc. 135);
- Request to Extend Deadline to Submit Status Report to Court (Doc. 181);
- Status Report (again requesting an extension of the deadline to submit the court-ordered status report related to a witness alleging she was told to lie at her deposition) (Doc. 183);
- *Daubert* Motion to Exclude Sue Ellen Bullock (Doc. 263)[2];
- Motion for Judgment as a Matter of Law (Doc. 278-1).

Contrastingly, Madsen was judicious and filed substantially fewer motions.

Madsen's counsel has exercised good billing judgment in the course of billing time in this matter and in making this Motion. *See* Exhibit "A". As noted previously, Madsen has attempted to cull all time entries addressing solely claims raised against the individual defendants. Madsen also has endeavored to exclude time that may be

---

[1] The Court denied this motion before Madsen's response deadline. (Doc. 57). Thus she did not have an opportunity to file a formal response opposing the motion.

[2] When the parties met and conferred before the City filed this motion, the undersigned agreed to Bullock testifying only to her treatment and diagnosis of Madsen and that she would not testify about issues of causation (with respect to her conditions being caused by the City) or harm to Madsen's reputation. The City nevertheless filed the motion, and the Court limited Bullock's testimony in the exact same fashion as the undersigned proposed when the parties met and conferred about the motion. (Doc. 269). Thus, the City needlessly forced Madsen to expend resources responding to the motion just to arrive at the same result the undersigned proposed.

8

misconstrued as excessive, redundant, or otherwise unnecessary. *Id.*; *see The Sierra Club v. United States Envtl. Prot. Agency*, 75 F. Supp. 3d 1125, 1151 (N.D. Cal. 2014). Indeed, the fee application reflects discounts and many "no-charge" items that were not billed to the client and are not sought in this fee application. *See* Exhibit "A" and "B".

  2. <u>Novelty and Difficulty of Questions Involved</u>

Employment law is an area of law that requires specific knowledge and experience in discrimination laws. While this case did not present novel questions, the City's litigation tactics, needless motion practice, and attempts to avoid liability increased the fees expended.

  3. <u>Skill Requisite to Perform the Legal Service Properly</u>

This is an area to be determined based upon the Court's observations of counsel's work product, preparation and "general ability before the court." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974).

  4. <u>Preclusion of Other Employment by Counsel Because of the Acceptance of the Action.</u>

Since Alden Thomas became involved in this matter in August 2019, nearly 21% of the hours she has billed for her work were on this case. This figure increased to nearly 24% in 2020, when the parties completed extensive discovery, and in 2022, when the parties completed pre-trial disclosures and motions, tried the case, and briefed post-verdict motions. As a result of the substantial amount of time she spent litigating this case, she was forced to turn away other cases that presented themselves while this case was being litigated.

  5. <u>Customary Fee Charged</u>

In assessing a reasonable hourly rate for the lodestar figure, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895–96 and n. 11 (1984). The relevant community for purposes of determining the

9

prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990).

Alden Thomas is a partner at Jaburg Wilk and co-chairs the firm's Labor & Employment Department. Her current hourly rate is $350. However, throughout the pendency of this litigation, she charged a reduced hourly rate of $275. Thomas Moring is a partner at Jaburg Wilk. His hourly rate is $400 per hour. Maria Crimi Speth is a shareholder at Jaburg Wilk. Although her current hourly rate is $475, she charged a reduced rate of $450 while assisting with post-verdict motion practice in this matter. Each of their fees charged is at or below their customary charges and are reasonable and appropriate for their level of experience, the type of skills involved, and the practice of law in Phoenix, Arizona. (Exhibit "A"); *See Finton v. Cleveland Indians Baseball Co. LLC*, No. CV-19-02319-PHX-MTL, 2022 WL 2665927, at *3 (D. Ariz. July 11, 2022) (holding an hourly fee in the range of $300 to $400 in an employment case to be reasonable); *Gualotuna v. Estrella Gymnastics LLC*, No. CV-16-00597-PHX-DLR, 2016 WL 8669298, at *2 (D. Ariz. Oct. 28, 2016) (hourly rates of $475 and $375 were reasonable in employment dispute); *Brad Hall & Assocs. Inc. v. Elkotb*, No. CV-22-00155-TUC-RM, 2022 WL 3082527, at *2 (D. Ariz. Aug. 3, 2022) (attorney rate of $625 per hour was reasonable in case where plaintiff obtained a default judgment).

### 6. Fixed/Hourly Fee Agreement

The initial fee arrangement executed between Madsen and her attorneys was at an hourly rate. In March of 2019, Madsen and Jaburg Wilk entered into a modified contingency arrangement that Madsen would pay 50% of the normal hourly rates of the attorneys working on the matter and would additionally pay a percentage of her gross

recovery. On July 13, 2022, Madsen and Jaburg Wilk entered into a full contingency fee agreement, wherein, from July 1, 2022 forward, Jaburg Wilk will be paid only a percentage of Madsen's recovery.

"The determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel." *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732F.2d 495, 504 (6th Cir. 1984). Some courts have allowed an increase to the determination of the reasonable hourly rate based on the serious risk of pursuing a case on a contingency fee. *Cooper v. Singer*, 719 F.2d 1496, 1502–03 (10th Cir.1983) (en banc ) ("Prevailing parties receive an attorney's fee award calculated at the market billing rate for hours reasonably spent in advancing the successful claims, including an allowance for the contingent risks assumed by an attorney.").

7. <u>Any time limitations imposed by the client or circumstances</u>. There were no particular time limitations imposed in this case, except that even at 50% of normal hourly rates, Madsen's budget required efficiency.

8. <u>Amount of Money or Value of Rights Involved, and Results Obtained</u>

Madsen obtained a substantial victory. The jury found the City liable for discriminating against Madsen by subjecting her to a gender-based hostile work environment. It also determined the City should pay $510,000 for violating Madsen's federal rights.

9. <u>Experience, Reputation, and Ability of Counsel</u>

The experience, reputation and ability of counsel further supports the fees being sought here by Madsen. Alden Thomas has been licensed for nearly eight years. *See* Exhibit "A". She practices primarily in the area of labor and employment law and co-chairs Jaburg Wilk's Labor and Employment Section. She has been recognized as a top labor and employment attorney by *Super Lawyers*, *Best Lawyers*, and *Phoenix Magazine*. She is a frequent speaker and contributor at the Arizona Employment

11

1 Lawyers Association's Annual Convention, including presenting on pertinent
2 employment law topics in 2020 and 2022. In 2022, she co-chaired the Labor &
3 Employment Section's programming at the Arizona State Bar Convention.

4      Kraig Marton practiced from 1974 until his passing this year. His practice
5 emphasis for thirty-five years was employment law and he actively litigated hundreds of
6 employment cases. He was a Founding Member and past President of the Arizona
7 Employment Lawyers Association (AzELA) and past Chair of its Amicus Committee.
8 Mr. Marton was a longtime member of the State Bar's Employment and Labor law
9 section, and past member of its Executive Committee. He was one of the editors and an
10 author of two chapters (and supplements) of the ARIZONA EMPLOYMENT LAW
11 HANDBOOK published by the Arizona State Bar. He was listed in Woodward &
12 White's Publication, "*Best Lawyers in America*" in employment law, continuously for
13 over fifteen years, named in "*Southwest Super Lawyers*" in "Civil Rights and
14 Employment Litigation," and an invited Fellow of the Litigation Counsel of America.
15 He was a 15-year member of the Arizona State Bar Civil Jury Instruction Committee
16 and one of the cooperating drafters of the Employment law RAJI's now in use. He
17 authored law review articles published in the Phoenix Law Review (2010 and 2012) and
18 ABA Tort & Insurance Law Journal (1998), spoke often on employment issues to
19 lawyers at bar conventions, and in 2018 was named *Employment Lawyer of the Year* by
20 the Labor and Employment law Section of the Arizona State Bar. *See* Exhibit "A."

21      Tom Moring has practiced in complex civil cases since being admitted to the Bar
22 in 2001. He has served as first chair in over 20 jury trials and more than 25 bench trials,
23 in addition to numerous arbitrations and administrative proceedings. Mr. Moring is
24 often called upon to assist clients and other lawyers when cases are set for trial. He is
25 often asked to work with critical witnesses to prepare them for deposition and trial and
26 has established a strong reputation as a lawyer with an ability to help clients and

witnesses provide the necessary information to help a jury find in his clients' favor. *See* Exhibit "A."

Maria Crimi Speth, has been a licensed attorney for 34 years, and has been licensed in Arizona for 33 years. *See* Exhibit "B". For the past 20 years, she has practiced primarily in federal court. *Id*. She has an "AV/Preeminent" rating with Martindale-Hubbell, and was named in Best Lawyers in America in the area of Copyright Law, Trademark Law, and Information and Technology Law in 2014 through 2022. *Id*.

Each of the attorneys involved in this litigation for Madsen is of good standing with the Arizona Supreme Court and State Bar, has the requisite level of experience and necessary skills for the particular services performed in this matter, and maintains a stellar reputation in the legal community.

### 10. The Undesirability of the Case

Jaburg Wilk accepted this engagement despite expecting that the City, being a governmental entity using taxpayer money to fund the litigation, would likely be (and was) aggressive in its defense and resistant to settlement.

### 11. Nature and Length of Attorney-Client Relationship

Jaburg Wilk has represented Madsen since August 2018. She filed her notice of claim against the City in December 2018 and filed suit in April 2019.

### 12. Awards in Similar Actions

Title VII cases result in wide variations in damages and fees awarded depending on many factors. In the instant matter, Madsen's damages and requested fees and costs are in line with other gender discrimination actions. *See, e.g., Gualotuna v. Estrella Gymnastics LLC*, No. CV-16-00597-PHX-DLR, 2016 WL 8669298, at *2 (D. Ariz. Oct. 28, 2016) (upholding verdict of $301,000 and $350,902.75 award for attorney's fees and costs); *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 518 (9th

Cir. 2000) (affirming award of $1 million in compensatory and emotional distress damages and $580,414 in attorney's fees and costs).

13. <u>Additional Consideration – Settlement Efforts</u>

Settlement efforts are not one of the factors identified under *Kerr*, *supra*, or LRCiv 54.2. However, LRCiv 54.2(c)(3) permits consideration of additional factors "bearing on the reasonableness of the requested attorneys' fee award." To the extent the Court believes settlement negotiations, which are directly related to the time and labor required of counsel, are relevant to the requested fee award, Madsen offers the following settlement background.

Throughout the course of this litigation, the City of Phoenix refused to be reasonable in settlement negotiations. In July 2019, Madsen offered to settle all claims against all defendants in exchange for $225,000. In August 2019, the City offered to settle for $32,500. After several proposals, Madsen ultimately reduced her demand to $150,000, which the City declined. The City later reduced its offer to $25,000 and attempted to skirt the Court's order requiring the Parties to engage in good faith settlement discussions by December 2019. (Exhibit "A")

In November 2019, the City filed a Motion to Extend the Deadline to Participate in Good Faith Settlement Discussions, which Madsen opposed. (Doc. 55 at 3:19-21). The Court denied the motion before Madsen could file her response. (Doc. 56).

During Court-ordered settlement discussions, Brad Holm, the City's then General Counsel, attempted to intimidate Madsen into dismissing her claims against the individual defendants by indicating the City would "take the $25,000 offer off the table and never put it up again" and by proclaiming, without any valid basis whatsoever, the Court would eventually order Madsen to pay the City's attorney's fees. Madsen is the primary breadwinner for her family and has limited means while the City's 2019-2020 budget was over $4.55 billion. (Doc. 119 at 6:9-18). The City used its superior financial position in an attempt to strongarm Madsen into compliance.

14

The City's aggressive tactics did not end there. In April 2020, the City filed its Motion for Cost Bond, asking the Court to order Madsen to pay a cost bond amounting to over 20% of her gross annual income. (Doc. 115). In its reply filed in support of the motion, the City conceded it was requesting a $20,000 bond when it had incurred only approximately $6,000 in costs because Madsen "refused to narrow her claims." (Doc. 122 at 7:22-25). The City utilized the threat of imposing financial hardship upon Madsen to force her into complying with the City's demand that she dismiss her claims against the individual defendants. Indeed, she ultimately agreed to do so, which the Court acknowledged in its order denying the motion. (Doc. 157:22-25).

In April 2020, the City again offered Madsen $25,000 to settle her claims. It never extended a higher settlement offer throughout the remainder of this litigation. Instead, the City occasionally re-extended the same $25,000 offer, including shortly before it filed its Motion for Summary Judgment.

Madsen obtained a verdict of $510,000, which is 20.4 times greater than the City's most recent offer. Importantly, *every* offer Madsen extended to the City before trial was well below the jury's verdict. The highest settlement offer Madsen ever extended was for $225,000 in July 2019, nearly three and a half years ago. However, this offer was for a global release of all claims against all defendants, and Madsen did not indicate it was a "best and final" offer. Instead, every settlement offer she extended after this was for a lower sum.

In August 2022, after the City's Motion for Judgment as a Matter of Law had been fully briefed, Madsen again extended a settlement offer to the City. The City declined to respond to her offer.

In October of 2022, after the Court's denial of the City's Motion for Judgment as a Matter of Law and as part of the meet and confer process required by LRCiv 54.2, Madsen again extended a settlement offer to the City, specifically that the City would pay Madsen $300,000 plus attorney fees, reduced as submitted herewith. The City

15

rejected the proposal and has indicated its intention to "exhaust its options for handling the judgment."

## V. CONCLUSION

For the foregoing reasons, Plaintiff Madsen requests that the Court grant her Motion for Attorney Fees and Costs against the City of Phoenix in the total amount of $502,378.45 ($480,770.00 in fees and $21,608.45 in non-taxable costs).

DATED this 1st day of November, 2022.

**Jaburg & Wilk, P.C.**

/s/Alden A. Thomas
Alden A. Thomas
Thomas S. Moring
Maria Crimi Speth
3200 North Central Avenue, 20th Floor
Phoenix, Arizona 85012

*Attorneys for Plaintiff Christina Madsen*

*Certificate of Service*

I hereby certify that on this 1st day of November, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF participants:

Debora L. Verdier
Chrisanne M. Gultz
THE CAVANAGH LAW FIRM, P.A.
1850 North Central Avenue, Suite 2400
Phoenix, Arizona 85004
DVerdier@cavanaghlaw.com
CGultz@cavanaghlaw.com
*Attorneys for Defendant City of Phoenix*

Les S. Tuskai
Assistant Chief Counsel
Office of the Phoenix City Attorney
Cris Meyer, City Attorney
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
les.tuskai@phoenix.gov
*Co-Attorneys for Defendant City of Phoenix*

16

Tod F. Schleier
Bradley H. Schleier
SCHLEIER LAW OFFICES, P.C.
3101 North Central Avenue, Ste. 1090
Phoenix, AZ  85012
tod@schleierlaw.com
brad@schleierlaw.com
*Attorneys for Michael Graci*

/s/Debra Gower

17

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Alden A. Thomas, #031900
aat@jaburgwilk.com
Thomas S. Moring #021247
tsm@jaburgwilk.com
Maria Crimi Speth (012574)
mcs@jaburgwilk.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina M. Madsen, <br><br> Plaintiff, <br><br> v. <br><br> City of Phoenix, <br><br> Defendants. | Case No. 2:19-cv-03182-GMS <br><br> **STATEMENT OF CONSULTATION** |

Pursuant to LRCiv. 54.2(d)(1), I, Alden A. Thomas, declare:

1. I am an attorney of record for Christina Madsen. This Declaration is made of my own personal knowledge and is submitted in support of Madsen's Application for Attorney Fees and Related Non-Taxable Expenses (the "Motion") in this matter.

2. On October 21, 2022, I emailed Debora Verdier and Chrisanne Gultz, counsel for the City of Phoenix, to request a teleconference to discuss the Motion pursuant to LR 54.2(d)(1).

3. On October 21, 2022, Ms. Verdier responded that the City has authorized her to file multiple additional post-trial motions and that the City "will not be agreeing

20271-20271-00002\\MCS\\MCS\\5283795.1

1 to pay any fees until it has exhausted its options for handling the judgment." She ended
2 the email with an invitation that if we still felt the need for a call, we can set one up.

3     4. On October 21, 2022, I responded that the local rules require a
4 consultation.

5     5. On October 26, 2022, Maria Crimi Speth and I had a teleconference with
6 Ms. Gultz (Ms. Verdier did not attend). During that call, Ms. Speth emailed Ms. Gultz
7 an accounting of Madsen's fees up to October 20, 2022.

8     6. Also during that call, Ms. Speth proposed a settlement, specifically that
9 the City would pay Madsen $300,000 plus reduced fees as reflected in the spreadsheet
10 emailed to Ms. Gultz. Ms. Gultz immediately rejected the proposal.

11     7. On October 31, 2022, Ms. Gultz sent an email following up on the
12 October 26, 2022 call. She conveyed that the City's position on the Motion is that "the
13 attorney fee award should be reduced to reflect that the City was the prevailing party on
14 the majority of her claims."

15     8. Ms. Gultz attached a highlighted version of Madsen's accounting to
16 reflect all of the entries to which the City objects.

17     9. Ms. Speth and I reviewed the highlights and made additional
18 adjustments. However, for the reasons stated in the Motion, Madsen disagrees with the
19 City's position that the attorney fee award should be reduced by any entries that relate
20 to the Title VII claims.

21     10. In summary, after a telephonic consultation and follow up emails, the
22 parties were unable to satisfactorily resolve the parties' disputes related to the fee award
23 Motion.

24 . . . .
25 . . . .
26 . . . .
27
28

2

1  I certify that the foregoing is true and correct.

2  DATED this 1st day of November, 2022.

**Jaburg & Wilk, P.C.**

/s/Alden. A. Thomas
Alden A. Thomas
Thomas S. Moring
Maria Crimi Speth
3200 North Central Avenue, 20th Floor
Phoenix, Arizona 85012

*Attorneys for Plaintiff Christina Madsen*

3