# EXHIBIT A

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Alden A. Thomas, #031900
aat@jaburgwilk.com
Thomas S. Moring #021247
tsm@jaburgwilk.com
Maria Crimi Speth (012574)
mcs@jaburgwilk.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina M. Madsen | Case No. 2:19-cv-03182-GMS |
| Plaintiff, | |
| v. | **DECLARATION OF ALDEN THOMAS IN SUPPORT OF MADSEN'S MOTION FOR ATTORNEY FEES AND RELATED NON-TAXABLE EXPENSES** |
| City of Phoenix, | |
| Defendants. | |

I, Alden Thomas, declare as follows:

1.      I am an Arizona attorney, lead counsel for Plaintiff, and I offer this declaration in support of Plaintiff Christina Madsen's Motion for Attorney Fees and Non-Taxable Costs.

**A. Background**

2.      Following is a brief description of the relevant qualifications, experience and case-related contributions of each attorney for whom fees are claimed.

3.      I have been licensed for nearly eight years. I practice primarily in the area of labor and employment law, and I co-chair Jaburg Wilk's Labor and Employment practice group.

4.    I have been recognized as a top labor and employment attorney by *Southwest Super Lawyers*, *Best Lawyers in America*, and *Phoenix Magazine*.

5.    I am a frequent speaker and contributor at the Arizona Employment Lawyers Association's ("AzELA") Annual Convention, including presenting on pertinent employment law topics in 2020 and 2022. In 2022, I co-chaired the Arizona State Bar Labor & Employment Section's programming at the Annual State Bar Convention.

6.    Before entering private practice, I clerked for the Honorable Patricia A. Orozco at the Arizona Court of Appeals from 2014-2015.

7.    I was trained by and brought into this case by Kraig J. Marton.

8.    Kraig J. Marton practiced law from 1974 until his passing this year.

9.    Mr. Marton's practice emphasis for thirty-five years was employment law, and he actively litigated hundreds of employment cases.[1]

10.    Mr. Marton was a Founding Member and past President of AzELA and past Chair of its Amicus Committee.

11.    Mr. Marton was a longtime member of the State Bar's Employment and Labor law section and past member of its Executive Committee. He was one of the editors and an author of two chapters (and supplements) of the ARIZONA EMPLOYMENT LAW HANDBOOK published by the Arizona State Bar.

12.    Mr. Marton was listed in Woodward & White's Publication, *Best Lawyers in America*, in employment law continuously for over fifteen years, named in *Southwest Super Lawyer* in "Civil Rights and Employment Litigation," and an invited Fellow of the Litigation Counsel of America.

---

[1] I obtained information in this section from a declaration Kraig Marton executed and filed in an unrelated case.

2

13.     Mr. Marton was a 15-year member of the Arizona State Bar Civil Jury Instruction Committee and one of the cooperating drafters of the Employment Law RAJI's now in use.

14.     Mr. Marton authored law review articles published in the Phoenix Law Review (2010 and 2012) and ABA Tort & Insurance Law Journal (1998), spoke often on employment issues to lawyers at bar conventions, and in 2018 was named Employment Lawyer of the Year by the Labor and Employment law Section of the Arizona State Bar.

15.     Thomas S. Moring is a partner at Jaburg Wilk who co-chaired the trial in this matter.

16.     Mr. Moring has practiced in complex civil cases since being admitted to the Bar in 2001.

17.     Mr. Moring has served as first chair in over 20 jury trials and more than 25 bench trials, in addition to numerous arbitrations and administrative proceedings.

18.     Mr. Moring is often called upon to assist clients and other lawyers when cases are set for trial.  He is often asked to work with critical witnesses to prepare them for deposition and trial and has established a strong reputation as a lawyer with an ability to help clients and witnesses provide the necessary information to help a jury find in his clients' favor.

19.     David N. Farren assisted Mr. Marton in writing the early pleadings in this matter and assisted with writing motions and in trial preparation later in the case.

20.     Mr. Farren is a partner at Jaburg & Wilk and has over 36 years of litigation experience in Arizona, with an emphasis in complex and contract litigation, civil rights and employment law.

21.     Jeffrey Silence is a partner at Jaburg & Wilk and co-chairs the firm's Labor and Employment Law practice group with me.

22.     Mr. Silence assisted in early evaluation of the case and in trial preparation.

3

23.    Mr. Silence has ten years of experience in employment law. He is admitted to practice in the United States District Court for the District of Arizona, as well as the United States Courts of Appeals for the Ninth Circuit.

24.    Mr. Silence graduated from the Sandra Day O'Connor College of Law in May 2011. From August 2011 through August 2012, he served as a law clerk for the Honorable Patrick Irvine at the Arizona Court of Appeals. When Judge Irvine left the Court midway through his clerkship, he remained at the Court and wrote decisions for almost all of the Arizona Court of Appeals Judges before eventually clerking for the Honorable Samuel A. Thumma for the remaining three months of his clerkship.

25.    Each of the attorneys involved in this litigation for Madsen is of good standing with the Arizona Supreme Court and State Bar, has the requisite level of experience and necessary skills for the particular services performed in this matter, and maintains a stellar reputation in the legal community.

**B. Reasonableness of Rate**

26.    Following is a brief discussion of the terms of the written fee agreements with Christina Madsen a statement of fees and expenses Ms. Madsen has paid, the nature of the services, the time involved in those services, and the identity of the persons performing such services. This section also discusses the method by which the customary charges were established and the comparable prevailing community rate.

27.    The initial fee arrangement executed between Madsen and Jaburg Wilk was at an hourly rate. (Exhibit A1)

28.    In March of 2019, Madsen and Jaburg Wilk entered into a modified contingency arrangement that Madsen would pay 50% of the normal hourly rates of the attorneys working on the matter and would additionally pay a percentage of her gross recovery. (Exhibit A2)

29.     On July 13, 2022, Madsen and Jaburg Wilk entered into a full contingency fee agreement, wherein, from July 1, 2022 forward, Jaburg Wilk will be paid only a percentage of Madsen's recovery. (Exhibit A3)

30.     The services provided were employment related legal services pertaining to the lawsuit at issue.

31.     The time involved in providing services to Madsen is detailed in Exhibit B1.

32.     The attorney timekeepers performing services on this matter were Kraig Marton (KJM), David Farren (DNF), Jeffrey Silence (JXS), Alden Thomas (AAT), Thomas Moring (TSM), and Maria Crimi Speth (MCS).

33.      My current hourly rate is $350. However, throughout the pendency of this litigation, I charged a reduced hourly rate of $275 (and during the time of the modified contingent fee arrangement, 50% of that amount).

34.     Mr. Moring's hourly rate is $400 per hour.

35.     Mr. Marton's hourly rate was $450 per hour.

36.     Ms. Speth's hourly rate is $475, but she charged a reduced rate of $450 while assisting with post-verdict motion practice in this matter.

37.     Jeffrey Silence's hourly rate his $400, but he charged a reduced rate of $300 in this matter.

38.     David Farren's hourly rate is $325.

39.     The paralegals and law clerks performing services on this matter were Meagan C. Holmes (MCH) and, and Grace Taskinsoy (GXT). Meagan Holmes' received her associate degree from the Arapahoe Community College Paralegal Program in 2014. Her hourly rate is $150. Grace Taskinsoy clerked at Jaburg Wilk after completing one year of law school at the Sandra Day O'Connor College of Law at Arizona State University.  Her hourly rate is $100.

5

40.    Each timekeeper's fees were charged at or below their customary charges and are reasonable and appropriate for their level of experience, the type of skills involved, and the practice of law in Phoenix, Arizona.

**C. Reasonableness of Time Spent and Expenses Incurred**

41.    I have reviewed and approved the time and charges set forth in the task-based itemized statement that is attached as Exhibit B1 to the Declaration of Maria Crimi Speth and the time spent and expenses incurred were reasonable and necessary under the circumstances.

42.    In deciding what to include in the task-based itemized statement that was sent to Ms. Madsen each month, I exercised "billing judgment" taking into consideration Ms. Madsen's budget and ability to pay.

43.    I assisted Ms. Speth in identifying adjustments that were made and ensuring that unnecessary, duplicative and excessive time was deleted.

44.    After removing those itemized entries that relate solely to Madsen's claims against Defendants Ostreicher and Graci as individuals and claims Graci asserted against Madsen, Madsen has calculated her attorney fees to be $480,770  and non-taxable expenses to be $21,608.45. *See* Exhibit B1 to Speth Declaration.

45.    The timekeepers on this matter expended significant time and effort in pursuing Madsen's claims.

46.    Since I became involved in this matter in August 2019, nearly 21% of the hours I have billed to clients were on this case. This figure increased to nearly 24% in 2020, when the parties completed extensive discovery, and in 2022, when the parties completed pre-trial disclosures and motions, tried the case, and briefed post-verdict motions.

47.    As a result of the substantial amount of time I spent litigating this case, I was forced to turn away other cases that presented themselves while this case was being litigated.

6

48.     Throughout the course of this litigation, the City of Phoenix ("the City") refused to be reasonable in settlement negotiations.

49.     In July 2019, Madsen offered to settle all claims against all defendants in exchange for $225,000. In August 2019, the City offered to settle for $32,500. After several proposals, Madsen ultimately reduced her demand to $150,000, which the City declined. The City later reduced its offer to $25,000 and attempted to skirt the Court's order requiring the Parties to engage in good faith settlement discussions by December 2019.

50.     In November 2019, the City filed a Motion to Extend the Deadline to Participate in Good Faith Settlement Discussions, which Madsen opposed. (Doc. 55 at 3:19-21). The Court denied the motion before Madsen could file her response. (Doc. 56).

51.     During Court-ordered settlement discussions, Brad Holm, the City's then General Counsel, attempted to intimidate Madsen into dismissing her claims against the individual defendants by indicating the City would "take the $25,000 offer off the table and never put it up again" and by proclaiming, without any valid basis whatsoever, the Court would eventually order Madsen to pay the City's attorney's fees.

52.     Madsen is the primary breadwinner for her family and has limited means while the City's 2019-2020 budget was over $4.55 billion. (Doc. 119 at 6:9-18).

53.     The City used its superior financial position in an attempt to strongarm Madsen into compliance.

54.     The City's aggressive tactics did not end there. In April 2020, the City filed its Motion for Cost Bond, asking the Court to order Madsen to pay a cost bond amounting to over 20% of her gross annual income. (Doc. 115). In its reply filed in support of the motion, the City conceded it was requesting a $20,000 bond when it had incurred only approximately $6,000 in costs because Madsen "refused to narrow her claims." (Doc. 122 at 7:22-25).

7

55.     The City utilized the threat of imposing financial hardship upon Madsen to force her into complying with the City's demand that she dismiss her claims against the individual defendants. Indeed, she ultimately agreed to do so, which the Court acknowledged in its order denying the motion. (Doc. 157:22-25).

56.     In April 2020, the City again offered Madsen $25,000 to settle her claims. It never extended a higher settlement offer throughout the remainder of this litigation. Instead, the City occasionally re-extended the same $25,000 offer, including shortly before it filed its Motion for Summary Judgment in September 2020.

57.     Madsen obtained a verdict of $510,000, which is 20.4 times greater than the City's most recent offer. Importantly, every offer Madsen extended to the City before trial was well below the jury's verdict. The highest settlement offer Madsen ever extended was for $225,000 in July 2019, nearly three and a half years ago. However, this offer was for a global release of all claims against all defendants, and Madsen did not indicate it was a "best and final" offer. Instead, every settlement offer she extended after this was for a lower sum.

58.     In August 2022, after the City's Motion for Judgment as a Matter of Law had been fully briefed, Madsen again extended a settlement offer to the City. The City declined to respond to her offer.

59.     In October 2022, after the Court's denial of the City's Motion for Judgment as a Matter of Law and as part of the meet and confer process required by LRCiv 54.2, Madsen again extended a settlement offer to the City, specifically that the City would pay Madsen $300,000 plus attorney fees, reduced as submitted herewith. The City rejected the proposal and has indicated its intention to "exhaust its options for handling the judgment."

. . . .

. . . .

. . . .

I declare the foregoing to be true and correct under penalty of perjury

DATED this 1st day of November, 2022.

**Jaburg & Wilk, P.C.**

*/s/Alden A. Thomas*
Alden A. Thomas

EXHIBIT A1

3200 N. Central Avenue, 20th Floor, Phoenix, AZ 85012



jaburgwilk.com

**Kraig J. Marton**

**kjm@jaburgwilk.com**
**602.248.1017 - Direct Phone**
**602.297.5017 - Direct Fax**

September 13, 2018

*Via E-Mail gochrismadsen@gmail.com*

Christina Madsen

███████████████

           *Re:    Fee Agreement*

David L. Allen
Mark D. Bogard
Neal H. Bookspan
Mervyn T. Braude
Jason B. Castle
Roger L. Cohen
Beth S. Cohn
C. Cole Crabtree
Michael B. Dvoren
David N. Farren
Stephanie A. Fierro
Norman S. Fulton III
Lauren L. Garner
Douglas O. Guffey
Aaron K. Haar
Heather M. Hampstead
Laurence B. Hirsch
Amy M. Horwitz
Ronald M. Horwitz
Gary J. Jaburg
Janessa E. Koenig
Kraig J. Marton
Nathan D. Meyer
Thomas S. Moring
Micalann C. Pepe
Mitchell Reichman
Laura A. Rogal
Kathi M. Sandweiss
Carissa K. Seidl
Jeffrey A. Silence
Maria Crimi Speth
Vincent St. George III
Natalya Ter-Grigoryan
Alden A. Thomas
Lawrence E. Wilk
Nichole H. Wilk

Dear Christina:

        Thank you for looking to Jaburg Wilk for legal representation.  We are pleased to welcome you as a client of our firm. The relationship between lawyer and client is built on mutual trust, and we believe that it is helpful to such a relationship to have a clear understanding of each other's financial obligations.  We have therefore adopted a policy requiring that a Fee Letter be in effect with all new clients. Please review this letter carefully and, if you agree to its terms, sign where indicated below. THIS IS AN IMPORTANT AND BINDING LEGAL DOCUMENT. IF YOU HAVE ANY QUESTIONS ABOUT WHAT YOUR RIGHTS AND RESPONSIBILITIES ARE, DO NOT SIGN.

        1.    Parties.  The parties to this Fee Letter are Jaburg & Wilk, P.C. ("we" or "us") and Christina Madsen ("client" or "you").

        2.    Scope of Agreement.  You have hired us to provide legal services in connection with the following matter: *to assist you with employment issues as we mutually agree, including possibly representing your interests with regard to issues related to the Notice of Claim filed with the City of Phoenix by Michael Graci.* Unless we have some other agreement, you authorize us to take all reasonably necessary actions to represent your interests in that matter.  We are not obligated to represent you in any other matter, including any appeal, new trial or related case or transaction.  If we are requested, and agree, to represent you in any other matter, we may require that you sign a new Fee Letter, but if there is no new Fee Letter, this Fee Letter will remain in effect and cover all matters in which we act as your lawyer.

        3.    Payment of Fees and Costs.  You agree to pay us for our services, and to reimburse us for our out-of-pocket costs, in accordance with the following paragraphs.

        4.    Legal Fees.  You will be charged and billed for fees on an hourly basis.  In general, our billing rates run from $200 to $500 per hour for partners,

JABURG WILK
Attorneys at Law

Christina Madsen
September 13, 2018
Page 2

$150 to $300 per hour for associates, and $90 to $175 for legal assistants. Within those ranges, we determine specific rates based on the experience and area of expertise of the individual attorney or legal assistant and other relevant factors. Kraig Marton charges $450/hour**.** We charge for all time spent performing services on your behalf, specifically including telephone conversations and meetings with you and others, e-mail and written correspondence, investigation and analysis of relevant legal and factual issues, drafting of pleadings, court filings and discovery papers, legal research, court appearances, preparation of contracts and legal instruments, and other tasks as appropriate in a particular matter. We occasionally adjust our billing rates to reflect increased expenses and other factors. When such adjustments are made, you will be billed at the revised rates.

5.    Costs. You will reimburse us for all out-of-pocket costs ("costs") related to your matter. Costs include such items as court costs, service of process, travel expenses, investigative fees, photocopying, computer-assisted legal research, and expert witness fees. The amounts we charge for certain items, including in-house photocopying, will include overhead expenses and the cost of our administrative and clerical personnel, and will therefore exceed our actual direct expense. Any individual cost item greater than $150.00 may be forwarded to you for payment, and you agree to pay all such items directly to the billing party.

6.    Retainer. You will provide a retainer of **$ 3,500**, which will be applied against amounts due under this Fee Letter. We generally do not extend credit to our clients and may, from time to time, require you to provide additional security deposits or retainers, based upon your payment history, the nature and amount of services reasonably likely to be performed (for example, trial preparation and court proceedings), and other relevant factors. Any retainer not designated "earned on receipt," and any security deposit or other trust funds that we receive will be held in our trust account at Arizona Business Bank, which is a subsidiary of COBIZ bank and an affiliate of Colorado Business Bank. The FDIC insures qualified deposits at these banks up to $250,000.00 through December 31, 2018. The deposit insurance coverage limits refer to the total of all deposits that an accountholder has at each FDIC-insured bank. If you have deposits at Arizona Business Bank or Colorado Business Bank, including these trust funds, that exceed $250,000.00, the amount over $250,000.00 is not insured by the FDIC. If this is your situation, please notify us immediately.

7.    Billing and Payment Procedures. Our charges will be set forth in periodic statements, which will submitted on a monthly basis or as we otherwise elect. All invoices will be due upon receipt and will become delinquent if not paid in full by the last day of the month in which the bill is sent. All delinquent amounts will bear interest at the rate of 1.5% percent per month.

8.    Assignment and Authorization for Payment. In the event that we are holding a retainer or other money or property received from you, or in the event we recover money or property on your behalf, we will be entitled to apply any such money or property against amounts due to us under this Fee Letter. We will be entitled, at the time a billing statement is sent to you, to the extent funds are available, to pay ourselves from funds in our trust account held on your behalf.

9.    Obligation to Cooperate. Cooperation by the client is essential to the proper functioning of an attorney-client relationship and to the successful outcome of any legal matter. Accordingly, you will keep us advised of any change in your residence or business address, will appear upon reasonable notice for deposition and court appearances and will comply with all reasonable requests made to you

JABURG | WILK
Attorneys at Law

Christina Madsen
September 13, 2018
Page 3

for assistance in connection with your matter. In a litigation matter, your failure to cooperate may result in Court-imposed sanctions and our withdrawal from the case.

10. Withdrawal from Representation. If you fail to comply with your obligations under this Fee Letter, we will have the right, on written notice to you, subject to applicable court rules, to stop work on your behalf and, in a litigation matter, to withdraw as counsel of record in any pending proceedings or litigation. If we move to withdraw from representation under this paragraph, you will need to hire substitute counsel or otherwise make suitable arrangements to be prepared for any pending trial or hearing, and you agree to do so. You will remain obligated to pay our fees and costs incurred up to the date of withdrawal and for additional fees and costs incurred in transferring the matter to substitute counsel.

11. File Storage. We do not have sufficient storage facilities to store client files indefinitely. At the conclusion of any matter, we will return to you all papers and other materials provided by you, together with all of our hard-copy files relating to the matter. Unless otherwise agreed, all files and materials will be destroyed on or after the expiration of three years following the conclusion of the matter, without notice, and you expressly consent to such destruction. We may choose to preserve certain files and materials in electronic form, but are not obligated to do so.

12. Notification of Disputes. If you disagree with any billing statement, you must notify us in writing within 30 days of the billing date. If you do not object within that time period, we will be entitled to assume that the statement is correct and the fees and costs charged are reasonable and owed by you.

13. Attorney Fees. In the event of a dispute regarding a breach of this Agreement, the prevailing party shall be entitled to recover its reasonable attorney fees (including the value of time expended by us) and costs.

14. Miscellaneous. This Fee Letter will be binding on the named parties and their heirs, representatives, successors and assigns; however, neither party will be entitled to assign its rights under this Fee Letter, except that we will have the right to assign to a third party amounts you are obligated to pay us for fees and costs. This Fee Letter is governed by the laws of the State of Arizona, and any lawsuit of arbitration proceeding arising under this Fee Letter will be brought in Maricopa County, Arizona. This Fee Letter may be signed in counterparts.

Again, thank you for placing your confidence in our firm. If you are in agreement with the above terms, please sign where indicated below.

Very truly yours,

**JABURG & WILK, P.C.**

Kraig J. Marton

KJM:kmr

JABURG | WILK
Attorneys at Law

Christina Madsen
September 13, 2018
Page 4

**I HAVE READ AND UNDERSTAND THE ABOVE FEE LETTER
AND AGREE TO COMPLY WITH ITS PROVISIONS.**


Dated:  9 - 18 - 18

_Christina M. Madsen_
Christina Madsen

EXHIBIT A2

**David N. Farren**

dnf@jaburgwilk.com
602.248.1048 - Direct Phone
602.248.0522 - Main Fax

March 15, 2019

*Via E-Mail gochrismadsen@gmail.com*

Christina Madsen

Re:     *Fee Agreement – Litigation*

David L. Allen
Mark D. Bogard
Neal H. Bookspan
Mervyn T. Braude
Jason B. Castle
Roger L. Cohen
Beth S. Cohn
C. Cole Crabtree
Michael B. Dvoren
David N. Farren
Stephanie A. Fierro
Norman S. Fulton III
Lauren L. Garner
Douglas O. Guffey
Aaron K. Haar
Heather M. Hampstead
Laurence B. Hirsch
Amy M. Horwitz
Ronald M. Horwitz
Gary J. Jaburg
Janessa E. Koenig
Kraig J. Marton
Nathan D. Meyer
Thomas S. Moring
Micalann C. Pepe
Mitchell Reichman
Laura A. Rogal
Kathi M. Sandweiss
Carissa K. Seidl
Jeffrey A. Silence
Maria Crimi Speth
Vincent St. George III
Natalya Ter-Grigoryan
Alden A. Thomas
Lawrence E. Wilk
Nichole H. Wilk

Dear Christina:

Thank you for looking to Jaburg Wilk for legal representation. We are pleased to offer you a new fee arrangement, separate from the straight hourly arrangement we have been working under in the past. This fee agreement will cover all services starting March 1, 2019. PLEASE NOTE THAT BECAUSE THIS IS A NEW AND INDEPENDENT AGREEMENT BETWEEN YOU AND US, WE ASK THAT YOU HAVE IT REVIEWED BY INDEPENDENT COUNSEL OR ADVISORS OF YOUR CHOOSING. Please review this letter carefully and, if you agree to its terms, sign where indicated below. THIS IS AN IMPORTANT AND BINDING LEGAL DOCUMENT. IF YOU HAVE ANY QUESTIONS ABOUT WHAT YOUR RIGHTS AND RESPONSIBILITIES ARE, DO NOT SIGN.

1.     Parties. The parties to this Fee Letter are Jaburg & Wilk, P.C. ("we" or "us") and Christina Madsen ("client" or "you").

2.     Scope of Agreement. You have hired us to provide legal services in connection with the following matter: *To represent you in a lawsuit against the City of Phoenix, Deborah Ostreicher and Michael Graci.*[1] Unless we have some other agreement, you authorize us to take all reasonably necessary actions to represent your interests in that matter. We are not obligated to represent you in any other matter, including any appeal, new trial or related case or transaction. If we are requested, and agree, to represent you in any other matter, we may require that you sign a new Fee Letter, but if there is no new Fee Letter, this Fee Letter will remain in effect and cover all matters in which we act as your lawyer.

---

[1] We have not agreed to represent you in any appeal from the results of this civil lawsuit if that becomes necessary. The costs of any such appeal will have to be separately negotiated.

3.    <u>Modified Contingency Fee Agreement</u>.  We have agreed to accept this assignment on a modified contingency fee basis.  This means that we will charge you at one half of our usual hourly rate in exchange for a contingency portion of the proceeds.

a.    <u>The hourly portion of our fee will be one half of our usual hourly rates</u>.  We charge for all time we spend whether by way of trial, court appearances, research, drafting, telephone calls, emails, travel time, or otherwise.  You will be charged at half our usual rate.  For example, Kraig's rate is \$450/hour, so we will charge at \$225/hour for his time, and David's rate is \$325, so we will charge at \$162.50/hr. for his time.  This amount for hourly work is expected to be paid every month.

b.    <u>The contingency portion of our fee will be in addition to and separate from the hourly portion</u>.  In addition to the hourly amounts you will be paying us, we will also be entitled to receive a percentage of the gross (total) amount any recovery.  The gross recovery will be based on the total amounts recovered including all wages before deduction, all damages, as well as any sums for attorneys' fees, interest, and costs, without reduction for the fees, charges, or expenses you paid or advanced by us.

       i.    If your case settles within 120 days of suit being filed, we will be entitled to 20% of the gross recovery, in addition to the hourly amounts to be paid.

       ii.    If your case settles more than 120 days after suit is filed, but before a trial date has been set by the court, we will be entitled to 25% of the total recovery

       iii.    If your case requires a trial or settles after a trial date has been set, we will be entitled to 27.5% of the total recovery.

We will be seeking attorney fees as part of the litigation.  If fees are awarded, we will be entitled to the greater of (1) the amount of fees awarded; or (2) the above described percentage.  However, if the amount you receive is insufficient to at least reimburse you for the fees and costs you had paid us, we agree that the amount of our contingency portion will be reduced so that, at a minimum you are reimbursed for whatever you have paid us, before we receive any contingency portion of our fee.  By way of examples, using numbers that may never apply to this case:

- If we won a \$100,000 verdict at trial and the court found that an additional \$20,000 should be awarded in fees, we would be entitled to the 27.5% contingency of \$120,000 (=\$33,000), notwithstanding the \$20,000 fee award.  This would be in addition to the monies you had previously paid us.

- If we won a \$100,000 verdict at trial and the court also awarded \$120,000 in fees, we would be entitled to the entire amount of that court ordered award - \$120,000 - and you would be entitled to the \$100,000.

- If we won \$20,000 at trial, after your paying us \$50,000 in fees and costs, and the Court also awarded \$100,000 in fees, you would receive \$50,000 (\$20,000 verdict plus \$30,000 to cover amounts you had previously paid us) and we would receive \$70,000 in fees.

You agree that we may deduct from the proceeds of any recovery the applicable fee as agreed upon above, along with all other costs and expenses as described in Section 7 herein for which you are responsible. You hereby grant us a lien upon and security interest in the claims, and on any sum recovered to the extent of the sums due herein. Law Firm may, in its discretion, execute on Client's behalf and cause to be filed with appropriate agencies, UCC Financing Statements evidencing the foregoing security interest. Law Firm shall have all general, possessory, or retaining liens, and all special or charging liens known to the common law or available under law.

4.      Retainer. We will apply the amounts we hold on deposits for you as our retainer, but we reserve the right to ask for additional retainers as events unfold. You will also be responsible to pay each invoice as sent. You agree to pay all invoices sent to you within 30 days.

5.      Settlement. We agree to make no compromise or settlement in this Matter without your approval as to the specific settlement or compromise. We agree to notify you whenever an offer of settlement or compromise is received, and to inform you of the amount of that offer, and our recommendation as to the acceptability thereof. Likewise, you agree to make no compromise or settlement in this Matter without our approval. You further agree to notify us whenever an offer of settlement or compromise is received by you, and to tell us the amount and terms of any such offer.

In the event a settlement proposal is made to you with our affirmative recommendation, we shall have the right, if you reject that recommended settlement proposal, to withdraw from any further representation, upon written notice to you. If that happens, you agree to promptly pay us for all services rendered, calculated on the basis of the lower amount of (1) the percentage of the recommended settlement determined under paragraph 3(b) above, or (2) payment based on actual work hours expended times our normal schedule of hourly rates in effect at the time of withdrawal. You would also pay all costs and expenses incurred pursuant to Paragraph 7 hereof.

6.      Termination. In the event that you discharge us for any reason, you will be responsible to us for one and one quarter times (125%) our fees based on the time spent, measured at the highest hourly rate we regularly impose. For example, Kraig Marton's rate is currently $450.00 per hour, so that if you discharged us, you would be responsible for the number of hours Kraig spent up until the time of the discharge multiplied by $562.50.

We reserve the right to withdraw if you fail to honor this Agreement, or if we conclude at any time that your matter does not merit further prosecution, or if any other condition exists which would permit or require us to withdraw under the Arizona Code of Professional Responsibility or as permitted by the rules of the court. Notification of withdrawal shall be made in writing. In the event of such withdrawal, you agree to promptly pay us for all services rendered at our normal hourly rate and all costs and expenses incurred.

7.      Costs. Client will be responsible for, and will pay to Law Firm, all out-of-pocket costs incurred by Law Firm. Out-of-pocket costs may include, but are not limited to, long-distance telephone calls, investigative fees, photocopying, facsimile transmissions and receipts, computer-assisted legal research, deposition fees and expert witness fees. Law Firm discloses that the amounts charged by Law Firm for long distance telephone charges, in-house photocopying and facsimile transmissions/receipts

Christina Madsen
March 15, 2019
Page 4

including charges for the services of Law Firm's administrative and clerical personnel, calculated at Law Firm's established rates, and may therefore exceed Law Firm's actual out-of-pocket cost.

8.    Obligation to Cooperate.  Client agrees to notify Law Firm of any change in residence or business address, to cooperate in the preparation of the case, to appear upon reasonable notice for deposition and court appearances and to comply with all reasonable requests made to Client in preparation of the case.  Failure to so cooperate may result in Court-imposed sanctions and Law Firm's withdrawal from the case.

9.    File Storage.  Client understands that Law Firm lacks facilities to store indefinitely all closed files.  Upon Client's request, upon the conclusion of any matter, Law Firm will return to Client all papers and other material provided by Client, together with all of Law Firm's files relating to the matter.  Unless otherwise agreed, all such materials retained by Law Firm will be destroyed on or after the expiration of three years following the conclusion of the matter, without notice, and Client expressly consents to such destruction.

10.    Attorneys' Fees.  If Law Firm takes any action against Client to collect delinquent amounts, Client shall be liable to Firm for all costs and legal fees associated with collection activities.  It is agreed that the attorneys' fees referenced herein shall include all time spent by Jaburg & Wilk, P.C. employees, at their standard hourly rates, for time spent attempting to collect this debt.

11.    Entire Agreement.  This Fee Letter constitutes the entire agreement between Client and Law Firm and shall be binding upon the parties and their successors-in-interest, heirs and assigns.  This Fee Letter is governed by the laws of the State of Arizona.

12.    Counterparts.  This Fee Letter may be signed in counterparts, each of which when taken as a whole shall constitute one and the same Fee Letter.

Again, thank you for placing your confidence in our firm.  If you are in agreement with the above terms, please sign where indicated below.

Very truly yours,

JABURG & WILK, P.C.

Kraig J. Marton
David N. Farren

KJM:kmr

**I HAVE READ AND UNDERSTAND THE ABOVE FEE LETTER
AND AGREE TO COMPLY WITH ITS PROVISIONS.**

Dated: 4.9.19

*Christina M. Madsen*

Christina Madsen

# Important Communication Instructions

During the course of our representation we may communicate with you by mobile or regular telephone and email. No form of communication is completely secure and these forms of communication have some risk of improper interception even though our Firm maintains reasonable security measures to assure the confidentiality of your information. We will be discussing matters that are protected by attorney client privilege. To keep the information between just us, we request the following:

- The **email address** that you provide to our Firm **MUST** be one for which **ONLY YOU** are authorized to view the contents. Most work email addresses are accessible by your employer. Please be certain that your email is private.

- Do not share emails that we send to you about your case with others. If you forward an email to a friend or family member, the contents of the email are no longer covered by the attorney/client privilege.

- We highly discourage any text messaging between you and your attorney. We are unable to easily capture those communications and they easily can be seen by others or shared. If you do text us, we will remind you of our no-texting policy.

- *Please* promptly notify us if your contact information changes. You will exercise best efforts to assure that no one else can access our communications to you.

EXHIBIT A3



3200 N. Central Avenue, 20th Floor, Phoenix, AZ 85012

jaburgwilk.com

**Alden A. Thomas**

aat@jaburgwilk.com
602.248.1010 - Direct Phone
602.248.0522 - Main Fax

July 18, 2022

**Via E-Mail** gochrismadsen@gmail.com

Christina Madsen

████████████████

Gary J. Jaburg
Lawrence E. Wilk
Roger L. Cohen
Mitchell Reichman
Beth S. Cohn
Kraig J. Martin (1949-2022)
Maria Crimi Speth
Neal H. Bookspan
Laurence B. Hirsch
Nathan D. Meyer
Kathi M. Sandweiss
Mervyn T. Braude
Lauren L. Garner
Mark D. Bogard
David N. Farren
David L. Allen
Douglas O. Guffey
C. Cole Crabtree
Thomas S. Moring
Carissa K. Seidl
Stephanie A. Fierro
Micalann C. Pepe
Jeffrey A. Silence
Lisa M. Paine
Echo A. Reynolds
Nichole H. Wilk
K. Michelle Ronan
Alden A. Thomas
Kelly A. Hedberg
David P. Uffens
Ian M. Fischer
Jonathan D. Brooks
Aaron K. Haar
Ilya Prokopets
Lisa I. Streu
Corrinne R. Viola
Nathan M. Gallinat
Philomena S. Patiño
Dana A. Dodd
Ian D. Haney
Dan A. Packard (of Counsel)
John J. DeWitt

Re:     *Revised Fee Agreement – Litigation*

Dear Chris:

Thank you for looking to Jaburg Wilk for legal representation. We are pleased to offer you a new fee arrangement, separate from the modified contingency agreement we have been working under in the past. This fee agreement will cover all services starting July 1, 2022. THIS IS AN IMPORTANT AND BINDING LEGAL DOCUMENT. IF YOU HAVE ANY QUESTIONS ABOUT WHAT YOUR RIGHTS AND RESPONSIBILITIES ARE, DO NOT SIGN.

PLEASE NOTE THAT BECAUSE THIS IS A NEW AND INDEPENDENT AGREEMENT BETWEEN YOU AND US, IT REPRESENTS A BUSINESS TRANSACTION BETWEEN LAWYER AND CLIENT. WE DO NOT REPRESENT YOU WITH RESPECT TO THE TERMS OF THIS AGREEMENT AND STRONGLY RECOMMEND THAT YOU HAVE IT REVIEWED BY INDEPENDENT COUNSEL AND OTHER ADVISORS OF YOUR CHOOSING.

Subject to the above, please review this letter carefully and, if you agree to its terms, sign where indicated below.

1.     Parties.  The parties to this Engagement Letter are Jaburg & Wilk, P.C. ("we" or "us") and Christina Madsen ("client" or "you"). If more than one individual or company is named as client, each of you is responsible for the full amount of our fees and costs.

2.     Scope of Agreement.  You have hired us to provide legal services in connection with the following matter: *pursue a settlement and/or take steps necessary to collect a judgment and fee award in Madsen v. City of Phoenix, filed In the United States District Court for the District of Arizona, Case number 2:19-cv-03182-GMS (the "Litigation").* Unless we have some other agreement, you authorize us to take all reasonably necessary actions to represent your interests in

Christina Madsen
July 18, 2022
Page 2

Case 2:19-cv-03182-GMS    Document 318-1    Filed 11/01/22    Page 24 of 29

LABURY WILK
LAW FIRM

that matter. We are not obligated to represent you in any other matter, including any appeal, new trial or related case or transaction.[1] If we are requested, and agree, to represent you in any other matter, we may require that you sign a new engagement letter, but if there is no new engagement letter, this Engagement Letter will remain in effect and cover all matters in which we act as your lawyer.

      3.    <u>Contingency Fee Agreement</u>.   We have agreed to convert this assignment to a contingency fee basis.  This means that that going forward, we will be paid only out of a recovery, whether it comes from a settlement, judgment, or otherwise. Our share in the recovery will be calculated pursuant to the terms outlined below.

          a.    <u>Our Contingency Portion of the Verdict or Damages Portion of the Judgment</u>. You obtained a $510,000 verdict in the Litigation. Due to Title VII's statutory cap, that award will be remitted to a maximum of $300,000. Regardless of whether you reach a settlement or obtain judgment, we will be entitled to the equivalent of 27.5% of the total sum recovered or allocated as to the verdict.

             i.    <u>Judgment</u>. In the event the Court enters judgment, we are entitled to 27.5% of the damages portion of the judgment sum. Our recovery from an award for attorney fees will be calculated separately, as discussed in greater detail below.

             ii.    <u>Settlement</u>. In the event you reach a settlement with the City and the settlement does not specifically designate a portion of the settlement sum as a recovery for the verdict, we agree to allocate a portion of the total sum to the verdict by dividing the sum of the settlement by the total sum of the verdict (calculated at the greater of $300,000 or the amount determined by the Court upon post-trial motion) and attorney fees incurred up to that date (calculated at full rate).

                1)    For example, if the total attorney fees we expend is $500,000 (calculated at full rate) and we settle for a total sum of $500,000, the $500,000 settlement recovery would be the equivalent of 62.5% of the $800,000 sum we could recover for the verdict and fees. Thus, we would allocate $187,500 to the verdict ($300,000 x 62.5%) and $312,500 to the attorney fees ($500,000 x 62.5%).

                2)    Under this example, we would be entitled, as our fee on the verdict component, to 27.5% of $187,500, which is $51,562.50.

          b.    <u>Our Contingency Portion of the Attorney Fees Recovery</u>. Because you prevailed at trial, you may seek a recovery of your attorney fees. Regardless of whether you reach a settlement or are awarded your attorney fees, we will be entitled to recover the sum of your Outstanding Balance (as defined below) plus ½ of any

---

[1] In the event that we later agree to represent you in an appeal and/or new trial, the costs of such appeal and/or new trial will have to be separately negotiated.

attorney fees incurred on or after July 1, 2022 (billed at full rate) from any recovery you obtain for your attorney fees. After we are reimbursed for these amounts, we will split any remaining recovery for your attorney fees equally with you.

    i.    <u>Outstanding Balance</u>. You acknowledge you have an outstanding balance of $35,639.25 in attorney fees that were incurred at half rate pursuant to our prior fee agreement dated May 15, 2019. You agree to pay $10,000, of which $7,879.95 will go toward your attorney fees. The remaining sum will be used to pay outstanding costs. This will leave your outstanding attorney fees balance at $27,759.30. For ease of reference, we refer to this sum as "the Outstanding Balance." Regardless of whether you ultimately settle with the City or collect an attorney fee award, we will be entitled to immediately deduct $27,759.30 from the gross recovery for the Outstanding Balance. In the event your recovery for attorney fees is less than $27,759.30, we will be entitled to keep the full recovery.

    ii.    <u>Attorney Fee Award</u>. In the event the Court awards you attorney fees, our share in that award will be calculated using the formula outlined above.

    iii.    <u>Settlement</u>. In the event you reach a settlement with the City and the settlement does not specifically designate a portion of the settlement sum as a recovery for your attorney fees, we will allocate a portion of the total settlement sum for your attorney fees by applying the same formula set forth in Paragraph 3(a)(ii) of the Agreement. After determining the portion of the settlement allocated to attorney fees, we will apply to formula set forth in Paragraph 3(b) to determine our respective recoveries from that sum.

    4.    <u>Retainer.</u> Other than the $10,000 you have agreed to pay pursuant to Section 3(b)(i) of this Agreement, you will not be required to pay a retainer. However, as set forth in Paragraph 7, you will be responsible for paying all out-of-pocket costs.

    5.    <u>Settlement.</u> We agree to make no compromise or settlement in this Matter without your approval as to the specific settlement or compromise. We agree to notify you whenever an offer of settlement or compromise is received, and to inform you of the amount of that offer, and our recommendation as to the acceptability thereof. Likewise, you agree to make no compromise or settlement in this Matter without our approval. You further agree to notify us whenever an offer of settlement or compromise is received by you, and to tell us the amount and terms of any such offer.

    In the event a settlement proposal is made to you with our affirmative recommendation, we have the right, if you reject that recommended settlement proposal, to withdraw from any further representation, upon written notice to you. If that happens, you agree to promptly pay us for all services rendered, calculated on the basis of the lower amount of (1) the percentage of the recommended settlement determined under paragraph 3(b) above, or (2) payment based on actual work hours expended

J A B U R G  W I L K

LAW FIRM

times our normal schedule of hourly rates in effect at the time of withdrawal. You would also pay all costs and expenses incurred pursuant to Paragraph 7 hereof.

6.      No Interest Charged.  We agree that you will not incur interest on the Outstanding Balance or on attorney fees billed on or after July 1, 2022 as long as we receive our portion of the total recovery in this Litigation, as set forth in Section 3 of this Agreement, at the Litigation's conclusion. However, you will not be required to pay interest on these sums in the event there is no recovery collected.

7.      Termination.  In the event that you discharge us for any reason, you will be responsible to us for one and one quarter times (125%) our fees based on the time spent, measured at the highest hourly rate we regularly impose, minus all amounts paid to the date of termination.  For example, Maria Speth's rate is currently $450.00 per hour, so that if you discharged us, you would be responsible for the number of hours Maria spent up until the time of the discharge multiplied by $562.50.

We reserve the right to withdraw if you fail to honor this Agreement, or if we conclude at any time that your matter does not merit further prosecution, or if any other condition exists which would permit or require us to withdraw under the Arizona Code of Professional Responsibility or as permitted by the rules of the court.  Notification of withdrawal shall be made in writing.  In the event of such withdrawal, you agree to promptly pay us for all services rendered at our normal hourly rate and all costs and expenses incurred.

8.      Costs.   Client will be responsible for, and will pay to Law Firm, all out-of-pocket costs incurred by Law Firm.  Out-of-pocket costs may include, but are not limited to, long-distance telephone calls, investigative fees, photocopying, facsimile transmissions and receipts, computer-assisted legal research, deposition fees and expert witness fees.  Law Firm discloses that the amounts charged by Law Firm for long distance telephone charges, in-house photocopying and facsimile transmissions/receipts including charges for the services of Law Firm's administrative and clerical personnel, calculated at Law Firm's established rates, and may therefore exceed Law Firm's actual out-of-pocket cost.

9.      Obligation to Cooperate.  Client agrees to notify Law Firm of any change in residence or business address, to cooperate in the preparation of the case, to appear upon reasonable notice for deposition and court appearances and to comply with all reasonable requests made to Client in preparation of the case.  Failure to so cooperate may result in Court-imposed sanctions and Law Firm's withdrawal from the case.

10.     File Storage.  Client understands that Law Firm lacks facilities to store indefinitely all closed files.  Upon Client's request, upon the conclusion of any matter, Law Firm will return to Client all papers and other material provided by Client, together with all of Law Firm's files relating to the matter.  Unless otherwise agreed, all such materials retained by Law Firm will be destroyed on or after the expiration of three years following the conclusion of the matter, without notice, and Client expressly consents to such destruction.

11.     Attorneys' Fees.  If Law Firm takes any action against Client to collect delinquent amounts, Client shall be liable to Firm for all costs and legal fees associated with collection activities.  It

Christina Madsen
July 18, 2022
Page 5

**JABURG WILK**

LAW FIRM

is agreed that the attorneys' fees referenced herein shall include all time spent by Jaburg & Wilk, P.C. employees, at their standard hourly rates, for time spent attempting to collect this debt.

12.    Entire Agreement.  This Fee Letter constitutes the entire agreement between Client and Law Firm and shall be binding upon the parties and their successors-in-interest, heirs and assigns.  This Fee Letter is governed by the laws of the State of Arizona.

13.    Counterparts.  This Fee Letter may be signed in counterparts, each of which when taken as a whole shall constitute one and the same Fee Letter.

Again, thank you for placing your confidence in our firm.  If you are in agreement with the above terms, please sign where indicated below.

Sincerely,

**JABURG & WILK, P.C.**

Alden A. Thomas

AAT:jjb

**I/WE HAVE READ AND UNDERSTAND THE ABOVE ENGAGEMENT LETTER AND AGREE TO COMPLY WITH ITS PROVISIONS.**

Dated: _July 19, 2022_

Christina Madsen

# Addendum: Communication Policies

During the course of our representation we may communicate with you by telephone or electronic means. No form of communication is completely secure and these forms of communication have some risk of improper interception even though our Firm maintains reasonable security measures to assure the confidentiality of your information. We will be discussing matters that are protected by attorney client privilege. To keep the information between just us, we request the following:

- Certain work email addresses may be accessible to others in your organization. If we will be representing you as an individual, it is therefore essential that the email address that you provide to us is a *personal (non-work) address*. In addition, it is essential that you are the *only person* authorized to view emails to and from our office. We will expect you to exercise best efforts to assure that no one else can access our communications with you.

- Please be certain that your email filters do not block emails from our office and that the allowable size of incoming emails is sufficient to accept emails from us with attachments.

- It is essential that you do not share with *anyone* our emails and other communications regarding your case. If you forward an email to a friend or family member, the contents of the email are no longer covered by the attorney/client privilege.

- We highly discourage text messaging between you and our attorneys and staff. We are unable to easily capture those communications and they sometimes can be accidentally shared or seen by others. If you do text us, please do not be offended if we remind you of our no-texting policy. It is important that you provide to us good contact information, including email addresses, telephone numbers, and street address and that you promptly notify us if your contact information changes.

- Because we may have personal information or medical information, we need to communicate with you in a secure method when we are transferring that information to you or other parties during your representation.

  o Our first choice is to communicate via secure mail when we are sending protected information. You will need to create a user ID and password to log on to the secure mail portal which will be used to access the portal. We can also transmit large documents, such as banking records or tax returns. These documents will be encrypted during transit.

  o Our second choice is to use Citrix File Share. We will create a folder to transfer documents. This is NOT a document storage platform and documents will be deleted once we have viewed them. While encrypted, there may be the ability for a party to have your Citrix File Share contents exposed using a subpoena.

  o If you are unable to use either one of the above options, we will send encrypted media. We will provide instructions, but not the key to unlock the data. The key will be communicated to you separately. This is the most complex method of secure communication.

  o You do not wish to communicate electronically and request that all information be sent to you on paper via USPS.

Please select how you would like us to communicate with you if we are transmitting protected data:

☐ No electronic communication
☒ Secure E-Mail          _gochris madsen@ gmail. com_
☐ Citrix File Share      _____
☐ Encrypted Media        _____
☐ Hard copy using USPS mail  _____
                             _____

- Please provide us with only copies of documents, unless we expressly request an original. We will scan and return to you any original documents that you send to us or that we create throughout the representation that have some intrinsic value (such as original stock certificates, estate planning documents, entity formation documents, etc.). We retain most file documents and data in electronic format only. These documents and data may be stored on a remote secure third party server hosted or backed up using the internet ("the cloud").

- It is important that you retain all communications from and to us, including emails and attachments to emails. These are being tendered to you as your copy of your file for this matter. You are responsible for maintaining your copy of the file that we send to you, which you will receive during the representation. At the conclusion of the representation we will confirm that you have a complete file. We will maintain our electronic copy of your file for at least three years, at which time it may be destroyed without further notice.