**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina M. Madsen, | No. CV-19-03182-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, | |
| Defendant. | |

Before the Court is Defendant City of Phoenix's Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for New Trial or Remittitur of Damages (Doc. 322). For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

This case concerns Christina Madsen's ("Plaintiff") hostile work environment ("HWE") claim against the City of Phoenix ("Defendant"). At issue is the workplace conduct of Michael Graci ("Mr. Graci"), an Assistant Aviation Director for the Defendant, toward Plaintiff, who served as the Deputy Director of Business and Properties ("B&P") for the Defendant. This Court held a four-day jury trial from April 19-22, 2022, on the HWE claim. At the conclusion of trial, Defendant filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Defendant based its motion on three grounds: (1) Mr. Graci's conduct was not "because of sex"; (2) Mr. Graci's conduct towards Plaintiff was not sufficiently severe or pervasive; and (3) the City is not liable

because it did not, and could not, have known about the alleged harassment. (Doc. 275.)

After briefing and oral argument, the Court denied the motion. (Doc. 315.) In denying the motion, however, the Court isolated the five-week time period for which a reasonable jury could have found that Plaintiff experienced a hostile work environment. (Doc. 315 at 16.) Following the Order, Defendant filed a renewed motion for judgment as a matter of law, or in the alternative, a motion for a new trial or remittitur. (Doc. 322.) Defendant bases its motion for judgment as a matter of law on the same grounds as its previous motion. In its motion for a new trial or remittitur, it raises four additional arguments: (1) that the verdict was against the clear weight of the evidence, (2) that Plaintiff's counsel engaged in misconduct throughout the trial, (3) that the jury instructions were erroneous, and (4) that the damages award was grossly excessive and unsupported by the evidence. (Doc. 322.)

## DISCUSSION

### I.   Legal Standard

On a Rule 50(a) motion for judgment as a matter of law, a district court may grant judgment as a matter of law only if a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000). In reviewing a Rule 50(a) motion, a court does not make credibility determinations or weigh the evidence. *Reeves*, 530 U.S. at 150. A court must review the entire record, "draw all reasonable inferences in favor of the nonmoving party," *id.* at 150, and "may not substitute its view of the evidence for that of the jury." *Krechman v. County of Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).

On a Rule 59 motion for a new trial, the court may grant a new trial only if the verdict is contrary to the clear weight of the evidence or "it is quite clear that the jury has reached a seriously erroneous result." *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir.

1987). On a Rule 59 motion, "the district court can weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 841 (9th Cir. 2014). "Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for a new trial, is not required to view the trial evidence in the light most favorable to the verdict." *Id.* A court may also grant a new trial based on the failure to give adequate jury instructions, erroneous jury instructions, or attorney misconduct. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990); *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1145 (9th Cir. 2001).

Additionally, the jury's determination as to the appropriate damages award is to be afforded "substantial deference." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 511 n.16 (9th Cir. 2000). Therefore, a damages award should only be set aside if the amount is clearly unsupported by the evidence or grossly excessive. *Id.*; *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999). "When the court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives. It may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur." *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983).

**II.    Analysis**

    **A.  Judgment as a Matter of Law**

The City's Motion for Judgment as a Matter of Law is denied. In its motion, the City renews its earlier Rule 50(a) motion without providing any reason that the Court should revisit its earlier order. Without any new argument or changed circumstances, the Court's analysis in the order denying judgment as a matter of law ("JMOL Order") (Doc. 315) remains the same. As such, Defendant's motion is denied.

    **B.  New Trial or Remittitur**

        **1.   Defendant's Notice and Remedial Response**

The jury's finding that Defendant was on notice of a hostile work environment and failed to remedy the harassment is against the clear weight of the evidence. To succeed on her hostile work environment claim, Plaintiff needed to show that Defendant "knew, or in the exercise of reasonable care should have known" of the hostile work environment and "fail[ed] to remedy or prevent it." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1119 (9th Cir. 2004). The employer's remedy should be "reasonably calculated to end the harassment." *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991). As the Ninth Circuit has said, "[a]n employer's remedy should persuade individual harassers to discontinue unlawful conduct. We do not think that all harassment warrants dismissal; rather remedies should be assessed proportionately to the seriousness of the offense." *Id.* (internal citations and quotations omitted).

The JMOL Order explains that a reasonable jury could not have found that Defendant was on notice of a hostile work environment any earlier than March 27, 2018, when Plaintiff alleges that she notified the City she was threatened or intimidated in meeting with Mr. Graci one-on-one. This is because "[t]o the extent that the City could reasonably expect Plaintiff to address Mr. Graci's behavior in her supervisory role, a jury could not conclude that Defendant was on notice of a hostile work environment." (Doc. 315 at 13.) Although Plaintiff may have rendered complaints to her supervisor, Ms. Reynolds, about Mr. Graci prior to March 2018, those complaints addressed insubordinate behavior by an employee, and did not indicate that Plaintiff felt fearful or harassed by Mr. Graci. (Doc. 315 at 14.) Having decided that no reasonable jury could have concluded Defendant was on notice of harassment prior to March 27, 2018, the Court now evaluates whether a finding that the City was on notice of a hostile work environment and failed to take curative measures from March 27, 2018, to May 1, 2018, is against the clear weight of the evidence.

Importantly, the ultimate question is not whether Defendant was on notice of Mr. Graci's insubordination or misbehavior, but rather if they were on notice, or reasonably should have been on notice, of sex-based harassment. *Nichols v. Azteca Rest. Enters., Inc.*,

256 F.3d 864, 875 (9th Cir. 2001). Because this inquiry is fact-intensive, the relevant facts and evidence presented at trial are described below.

Plaintiff testified that in late March 2018, after intervening in an altercation between Mr. Graci and another employee, Ms. Gomez, she expressed to HR that she was afraid to meet with Mr. Graci and deliver his upcoming performance review. (Tr. at 616:20-23.) She testified that she explained to HR representative Janice Pitts ("Ms. Pitts") that based on Mr. Graci's demeanor and reaction to her most recent confrontations with him, she did not feel safe. (*Id.*) Additionally, Plaintiff's personal notes taken contemporaneously with these incidents corroborate her testimony, recording that she told Ms. Pitts that Mr. Graci was intimidating her, threatening her, and creating a hostile work environment. (TX 7.) Ms. Pitts testified that she did not understand Plaintiff to say that she felt unsafe or threatened by Mr. Graci, however. (Tr. at 801:23-802:23.) Plaintiff's supervisor, Charlene Reynolds ("Ms. Reynolds"), also testified that she never understood Plaintiff to be fearful for her safety. (Tr. at 378:23-379:19.) A different HR representative, Ms. Bailey, remembers Plaintiff requesting assistance "so she could be safe" but does not recall that Plaintiff was afraid of Mr. Graci or harassed by him. (Tr. at 436:4-8; 459:14-24.) Ms. Bailey testified that Plaintiff requested support "in dealing with a subordinate." (Tr. at 444:18-19.) Plaintiff's notes indicate that she raised multiple issues with HR and Ms. Reynolds after the incident with Ms. Gomez: first, the issue of Mr. Graci's conduct toward Ms. Gomez, and second, Mr. Graci's subsequent comments toward Plaintiff. (TX 7.) Plaintiff did not indicate that Mr. Graci's comments toward her were sex-based or constituted harassment; rather, his comments critiqued Plaintiff's handling of the underlying dispute between Mr. Graci and Ms. Gomez. (TX 7 at 3.)

Following the incident with Mr. Graci and Ms. Gomez, the City had more involvement with Mr. Graci. After the March 22 incident with Ms. Gomez and the follow-up incident with Plaintiff on March 27, the City held a mediation. On April 3, 2018, Ms. Pitts, Ms. Gomez, Mr. Graci, and Plaintiff had a discussion about Mr. Graci's outburst at Ms. Gomez. The evidence shows that the meeting on April 3 ended in resolution. (Tr.

at 757:24-25; TX 7.)  Plaintiff's notes state that Mr. Graci and Ms. Gomez hugged and came to an agreement and Ms. Pitts testified that she understood the issue to have been resolved.  (TX 7.)  Plaintiff does not address this mediation in her briefing on the weight of the evidence.  Nevertheless, this meeting is evidence of prompt action on the part of the City to address the underlying issue that led to Ms. Gomez's and Plaintiff's concerns.  Presumably, Plaintiff alleges that although the mediation addressed issues between Ms. Gomez and Mr. Graci, Mr. Graci's harassment toward her went unresolved by the meeting.

However, the course of events after the April 3 mediation does not show as much. On April 11, 2018, Plaintiff delivered Mr. Graci's performance review ("PMG"), which contained multiple "not met" categories.  She delivered it in-person, seemingly without having further requested help or support from her supervisor or HR.  Plaintiff delivered the PMG to Mr. Graci without incident.  (Tr. at 682:8-13.)  On April 19, 2018, Plaintiff followed up on the performance review with Mr. Graci, requesting his comments on the report.  There was no negative interaction at that time between Mr. Graci and Plaintiff. Plaintiff had a one-one-one meeting with Mr. Graci on April 26.  (Tr. at 683:20-684:2.) There was no evidence of a confrontation or negative interaction in that meeting either, and Plaintiff testified that she would have documented it if there had been a negative interaction.  (Tr. at 683:20-685:8.)

The only incident involving Mr. Graci after the April 3 mediation was an incident with Tyler Maheu.  Mr. Maheu testified that Mr. Graci shouted at him because he believed that Plaintiff was circumventing the chain of command without keeping him in the loop. (Tr. at 287:3-288:2.)  Mr. Graci testified that he did not shout at Mr. Maheu.  (Tr. at 728:13-24.)  Both Mr. Maheu and Plaintiff discussed the incident with Plaintiff's supervisor, and they determined that Plaintiff would draft a Memorandum of Expectations as a form of discipline for Mr. Graci.  (TX 8.)  Plaintiff did not present any evidence that she informed the City that she felt threatened, intimidated, or harassed by Mr. Graci because of this incident.  Less than two weeks after the April 19 incident, on May 1, 2018, Mr. Graci was removed from Plaintiff's supervision.  Mr. Maheu, rather than Plaintiff, ultimately

delivered the MOE to Mr. Graci.  (Tr. at 294:19-25.)

Based on the events occurring in late March and April 2018, a finding that the City failed to take appropriate remedial measures is against the clear weight of the evidence. Plaintiff allegedly informed one or two City employees that she felt afraid or intimidated by Mr. Graci on March 27, 2018, when addressing his conduct toward Ms. Gomez. She did not describe her conflict with Mr. Graci as sex-based or harassment. Nevertheless, after that incident, the City had a mediation to address the underlying incident with Ms. Gomez. Although Plaintiff apparently alleges that the mediation left harassment toward her unresolved, after the mediation, Plaintiff herself did not have another negative interaction with Mr. Graci. The only evidence of a negative interaction was the interaction between Mr. Maheu and Mr. Graci, of which Plaintiff, as his direct supervisor, was made aware after the fact. (TX 8.) Following that incident, Plaintiff drafted a disciplinary MOE at the direction of her supervisor but did not request assistance or express fear or intimidation in doing so.

To illustrate that the City failed to take appropriate remedial actions, Plaintiff relies on expert testimony that the City should have investigated Plaintiff's complaints to determine if she experienced harassment. (Doc. 329 at 5.) This testimony, however, assumes that an investigation of whether harassment of Plaintiff occurred was the only appropriate response. Plaintiff's expert testified that Plaintiff's complaints are inconclusive as to whether Plaintiff experienced harassment. (Tr. at 494:19-23.) And, as the evidence above summarizes, the City did take action in light of Mr. Graci's behavior and Plaintiff's requests for assistance. Thus, while the City's failure to investigate is a piece of evidence that may be considered, and it addresses a remedial action that the City might have taken, it does not address the remedial actions the City did take.  This single piece of evidence concerning the City's failure to investigate is clearly outweighed by the actions the City did take, especially in light of the extent of the complaint vocalized by Ms. Madsen, her apparent intentions toward Mr. Graci at this point as his supervisor, and the absence of harassing incidents after the City's mediation.

The remaining evidence weighs heavily against a finding that the City failed to take adequate remedial steps. As noted above, Defendant's actions must be proportionate to the severity of the conduct of which it had notice. *Ellison*, 924 F.2d at 882. The evidence as to when Plaintiff sought to terminate Mr. Graci's employment is inconclusive at best. In her testimony, Plaintiff said that she "asked multiple times" to terminate Mr. Graci's employment and "they wouldn't let me." (Tr. at 623:2, 649:18-19.) Defendant pointed out that none of Madsen's notes, on which she testified she sought to write down her concerns and interactions with Mr. Graci in as much detail as possible, reflect such a request, and asked when Madsen alleges that she first made the request. (Tr. at 640:23-641:3, 649:20-24.) Plaintiff speculated that she first sought to terminate his employment "probably after the [March 27] incident with Christy Gomez," (Tr. at 649:24.) That statement, however, was contradicted several times. First Plaintiff's deposition testimony reflected that she never intended to terminate Mr. Graci's employment, plainly stating: "I never had the intention of terminating Mr. Graci." (Tr. at 659:12-16.) Additionally, Ms. Reynolds testified that she strongly suggested terminating Mr. Graci's employment after the March 27 incident, but refrained from doing so because Plaintiff, as his direct supervisor, did not make that recommendation. (Tr. at 368:18-369:10.) Mr. Maheu testified that he recommended to Plaintiff that she terminate his employment sometime in late April. (Tr. at 317:3-318:16.) The only evidence that Plaintiff's request to terminate Mr. Graci's employment was denied or ignored is Plaintiff's own speculation that she did, which was controverted by a prior inconsistent statement.

Further, the evidence is clear that to whatever extent the City was considering terminating Mr. Graci's employment in March or April 2018, it reasonably believed it needed further documentation before doing so, and it requested Plaintiff, as Mr. Graci's supervisor to initiate the necessary process to do so. Ms. Reynolds testified that although she believed Mr. Graci should be terminated in April 2018, "[y]ou are not just allowed to terminate someone on the spot. You must have a reason to terminate them, it must be documented, and it must be reviewed by HR." (Tr. at 232: 9-15.) She further stated that

she did not believe the City had a "valid documented basis" to terminate Mr. Graci's employment by April 19, 2018, which is why she instructed Plaintiff to begin the process of "progressive discipline." (Tr. at 232:9-18.) Ms. Reynolds clarified that while there are circumstances which, if sufficiently egregious, could warrant immediate termination, she did not believe any of Mr. Graci's behavior warranted such immediate action. (Tr. at 377:3-13.) She highlighted the fact that Plaintiff could have issued several types of disciplinary notices if she had chosen, but apparently elected not to do so. (Tr. at 376:3-377:2.)

Plaintiff did not deny that she received this instruction from Ms. Reynolds and her statement that "they wouldn't let me" terminate Mr. Graci in March 2018 is not evidence that she provided sufficient reasons to warrant immediate termination of Mr. Graci. (Tr. at 622:25-623:2.) At most, the statement supports the City's position that although Mr. Graci's behavior continued to worsen, it needed a valid, documented basis prior to terminating him. Plaintiff did not present evidence suggesting that the City did not need such a basis or documentation prior to terminating an employee. She further did not demonstrate that his conduct was so egregious as to warrant immediate termination under the City's policies. Thus, the weight of the evidence indicates that the City did successfully intervene in the dispute between Mr. Graci and Ms. Gomez in which Plaintiff played a role. The weight of the evidence further shows that when Ms. Reynolds directed Plaintiff to draft the MOE on April 19, 2018, the City began taking affirmative steps to discipline and terminate Mr. Graci for his behavior and performance. The MOE was "essentially a precursor to Mr. Graci's eventual termination." (Tr. 807:23-25.) In light of Plaintiff's controverted and inconsistent testimony about when she intended to terminate Mr. Graci's employment and the City's uncontroverted evidence that it needed a valid, documented basis to do so, the City's remedial actions beginning April 19 appear reasonable. Additionally, because between the April 3 mediation and the April 19 initiation of the MOE, there was no evidence of a conflict between Plaintiff and Mr. Graci, the great weight of the evidence is that the City's remedial actions were swift and appropriate.

The only remedy that Plaintiff was denied was assistance in conducting one-on-one meetings with Mr. Graci or delivering his PMG. Ms. Reynolds states that she declined to sit in on a one-on-one meeting between Plaintiff and Mr. Graci because it "could be deemed disciplinary, and, therefore, Mr. Graci would have the right to union representation." (Tr. at 379:8-13.) She further testified that Plaintiff was not required to meet with Mr. Graci in a one-on-one setting because she, as a supervisor, could determine how to meet with her subordinates. (Tr. at 380:1-11.) Plaintiff alleges that Ms. Pitts denied her support delivering the PMG because "that's not [HR's] job." (Tr. at 616:15-17.) Ms. Pitts testified that she does not recall Plaintiff asking her help in delivering the PMG and believes she would have taken notes to document it if Plaintiff had made such a request. (Tr. at 753:24-754:12.)

Nevertheless, the weight of the evidence demonstrates that even if Defendant declined to offer such support, it did not fail to adequately respond to notice of sex-based harassment. Here, Plaintiff likely requested support in some capacity to deal with Mr. Graci. However, the clear weight of the evidence shows that the City reasonably responded to the substance of Plaintiff's complaint by holding a mediation on April 3, and when an incident occurred on April 18 (albeit, not involving Plaintiff), initiating a disciplinary process that resulted in Mr. Graci's termination. Even if a reasonable jury could have believed that she put the City on notice of harassment and it failed to adequately respond, the great weight of the evidence says otherwise. As such, a new trial is required.

**2. Excessive Damages**

Additionally, even if the verdict was proper, the jury's damages award was excessive and unsupported by the evidence. "A jury's finding on the amount of damages will be upheld unless the amount is 'grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guess work." *Goddard v. DHL Exp. (USA), Inc.*, 357 F. App'x 80, 81 (9th Cir. 2009) (quoting *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1434-35 (9th Cir. 1996)). Although the jury originally awarded Plaintiff $510,000.00, both parties agree that the amount should be

reduced to $300,000.00 pursuant to the statutory cap under Title VII. (Doc. 329 at 17.) In making its determination as to excessive damages, the Court must "view[] the evidence concerning damages in a light most favorable to the prevailing party." *Ortega-Guerin v. City of Phoenix*, No. CV04-0289, 2006 WL 2403511, at \*3 (D. Ariz. Aug. 14, 2006).

Based on the evidence presented, the only types of damages the jury could have awarded are emotional distress damages. Plaintiff concedes that she should only receive non-economic damages. (Doc. 329 at 16.) Further, she may only recover damages that she proved were caused by the relevant harassment. *See Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 969 (9th Cir. 2004). In light of this causation requirement, most of the damages that Plaintiff argues that the jury could have considered are either not recoverable or too speculative. To be sure, the Ninth Circuit does not require "objective evidence" or "substantial evidence" to support emotional distress awards. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003). "[T]estimony alone is enough to substantiate the jury's award of emotional distress damages." *Id.* Nevertheless, the testimony must, if believed, support a finding of causation between the harassment and the emotional distress. *See Passantino*, 212 F.3d at 513.

Plaintiff did not provide sufficient evidence of causation as to a cardiac event, shingles, or reputational harm. The only testimony Plaintiff provided about a cardiac event is that some time after Mr. Graci left the City, she was hospitalized due to a cardiac event. (Tr. at 628:25-629:2.) Without any further evidence or explanation as to the potential cause of such an event, it is impermissible for the jury to attribute the medical condition to a hostile work environment caused by Mr. Graci. The same is true of Plaintiff's shingles. Plaintiff allegedly experienced shingles in October of 2018, months after Mr. Graci's employment was terminated. (Tr. at 342:16-343:11.) She did not provide any evidence linking that medical condition to harassment; Plaintiff herself did not testify about the condition, and no other witness who testified about Plaintiff's shingles had information about the cause. (Tr. at 347:2-6.) Plaintiff's coworker, Tyler Maheu, testified that after Mr. Graci was no longer employed with the City, Plaintiff experienced a "stress-related . .

. skin rash." (Tr. at 307:8-14.) That the symptom was associated with stress is not a sufficient causal link to attribute it to a hostile work environment for the purpose of awarding damages. Further, Defendant presented testimony that prior to any incidents with Mr. Graci, Ms. Reynolds had concerns about Plaintiff "being overly emotional" and "tak[ing] things personally." (Tr. at 359:4-11.) While that testimony does not, in itself, foreclose a causal link between a HWE and Plaintiff's symptoms, it suggests an additional or alternate explanation for the stress-related symptoms. Because Plaintiff presented little to no evidence of causation and Defendant presented a number of alternate explanations for the symptoms, the weight of the evidence suggests that neither of the conditions can or should be attributed to the hostile work environment.

Additionally, assuming reputational harms are recoverable under Title VII, Plaintiff did not provide sufficient evidence that any reputational harms were a result of a hostile work environment by Mr. Graci. The reputational harm must be caused by the harassment itself. *Elvig*, 375 F.3d at 966. Here, Plaintiff claims that Mr. Graci's conduct made it difficult for her to do her job, caused her to be shaken and flushed, and made it appear that she had an inability to manage because the City told her to "go be a manager" in response to her complaint. (Doc. 329 at 15.) Plaintiff did not, however, introduce evidence to suggest that her reputation was harmed as a result of Mr. Graci creating a hostile work environment. Plaintiff's evidence of city employees questioning her managerial skills dates to September or October 2017, months before a hostile work environment was created. (Tr. at 359:4-362:9.) Additionally, she did not present any evidence that when the City told her to "go be a manager," it maligned her reputation, or any other party took that view. Plaintiff's subjective concern that her reputation might be damaged is not sufficient to permit the jury to award such damages.

Further, any damages connected to the cost of her counseling sessions, or the cost of potential future counseling sessions are too speculative because Plaintiff did not present any evidence of the cost of those sessions. Although Plaintiff presented evidence that she would need a year of biweekly counseling sessions in the future, she only presented

1  evidence that she received five counseling sessions, and she did not present any evidence
2  as to the cost of past or future sessions. The jury was left to guess the cost, and it is clear
3  that juries may not award damages "based only on speculation or guesswork." *Del Monte*
4  *Dunes at Monterey*, 95 F.3d at 1435.

5  The jury, however, was instructed to consider reputational harm, the value of
6  medical treatment, and the value of future medical treatment in making its determination
7  on damages. Although two of these elements were never the subject of objections, if the
8  jury awarded damages based on any of those categories, it awarded damages for which it
9  had no evidence.

10 Even assuming the jury based its damages award solely on the Plaintiff's emotional
11 distress, the award was excessive. The period for which the City may be liable is five
12 weeks. (*See* Doc. 315.) The vast majority of Plaintiff's psychiatric social worker's
13 testimony stated that her conditions were caused by events long before or long after that
14 time period, including difficulties attributed to a previous marriage and a separate lawsuit
15 with Mr. Graci. (Tr. at 556:5-17.) Based on the above analysis and the timeline articulated
16 in the JMOL Order, the evidence supports a damages award for emotional distress caused
17 by Mr. Graci's creation of a hostile work environment between March 27, 2018, and early
18 May 2018. To be sure, Plaintiff did present some evidence as to emotional distress
19 damages resulting from that time frame. For example, her psychiatric social worker, Ms.
20 Bullock, explained that Plaintiff was experiencing several mental health concerns such as
21 difficulty sleeping, extreme stress, irritability, and feelings of abandonment. (Tr. at
22 531:18-532:6.) While the parties debate what was the cause of those mental health
23 challenges, Plaintiff presented testimony that her distress was, at least in part, attributed to
24 her concerns with Mr. Graci and the City's alleged failure to handle the situation properly.
25 (Tr. 531:22-533:14.) Yet, as is detailed above, Plaintiff testified to no stressful interactions
26 with Mr. Graci after the City's early April intervention.

27 Plaintiff cites multiple cases for the proposition that any testimony about pain and
28 suffering precludes a finding that the damages are excessive or unsupported by the

evidence. The Court evaluates those cases with caution, bearing in mind that "because courts have upheld or set aside jury verdicts in significantly differing amounts and in significantly different circumstances[,] [i]nvariably, one could find a case to support nearly any award of damages in nearly any amount." *Thronton v. Kaplan*, 958 F. Supp. 502, 505 (D. Colo. 1996). Those cases, however, illustrate testimony of much more significant emotional distress, and much stronger causal links between the emotional distress and the underlying conduct. *See, e.g.*, *Ortega Guerin*, 2006 WL 2403511, at *5 (finding that $300,000 was not excessive when Plaintiff testified about several physical manifestations of emotional distress resulting from eighteen months of constant harassment); *Velez v. Roche*, 335 F. Supp. 2d 1022, 1031, 1038-39 (N.D. Cal 2004) (finding that $300,000 was not excessive when Plaintiff suffered "frequent and constant" harassment and attributed several qualitative harms to the harassment). While there is evidence to support some monetary damages for Plaintiff's distress, an award of $300,000 is excessive such that it cannot be grounded in the evidence because Plaintiff presented minimal evidence of causation and the hostile work environment lasted, at most, for five weeks during which Plaintiff provided no testimony of stress caused her by Mr. Graci.

Considering the limited damages evidence connected to the relevant hostile work environment period and the potential that the jury considered awarded damages for which there was no evidence, the damages award was grossly excessive or clearly unsupported by the evidence. As such, the Court has two choices: "[i]t may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur." *Fenner*, 716 F.2d at 603. In light of the Court's determination that the liability determination was against the clear weight of the evidence on at least one element, a new trial, rather than remittitur, is warranted.

Defendant asserted other elements upon which it asserts the great weight of the evidence cuts against the verdict. But, having made the two determinations above, there is no need to evaluate Defendant's further arguments in granting the motion for new trial.

**CONCLUSION**

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial or Remittitur of Damages (Doc. 322) is **GRANTED** in part and **DENIED** in part. The Motion for Judgment as a Matter of Law is **DENIED**. The Motion for a New Trial is **GRANTED**. The Motion for Remittitur is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney Fees and Related Non-Taxable Expenses (Doc. 318) and Motion to Amend or Alter the Judgment or Alternatively, Motion to Correct Judgment to Include Post-Judgment Interest Rate (Doc. 319) are **DENIED** as moot.

**IT IS FURTHER ORDERED** directing the Clerk of Court to vacate the judgment (Doc. 316).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to reopen this case.

**IT IS FURTHER ORDERED** that an in-person scheduling conference will be conducted on **February 21, 2023, at 10:30 a.m.** in Courtroom 602, Sandra Day O'Connor U.S. Federal Courthouse, 401 West Washington Street, Phoenix, Arizona 85003-2151 to determine trial dates.

**IT IS FURTHER ORDERED** the counsel shall have access to their calendars for the purpose of setting a trial date and shall be prepared to discuss the availability of witnesses and experts to be called during trial.

Dated this 16th day of February, 2023.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge